# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

NORWICH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

v.

ROBERT F. KENNEDY JR., in his official capacity as Secretary of Health and Human Services; MARTIN M. MAKARY, in his official capacity as Commissioner of Food and Drugs; UNITED STATES FOOD AND DRUG ADMINISTRATION

*Defendants-Appellees,*

TEVA PHARMACEUTICALS USA, INC.; SALIX PHARMACEUTICALS, INC.,

*Intervenors-Appellees.*

———————————

On Appeal from the United States District Court for the
District of Columbia, No. 1:25-cv-00091, Hon. Beryl A. Howell

———————————

## BRIEF FOR INTERVENOR-APPELLEE
## TEVA PHARMACEUTICALS USA, INC.
## PUBLIC COPY – SEALED MATERIAL DELETED

———————————

Sierra J. Perez-Sparks
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
sperezsparks@goodwinlaw.com

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
bburgess@goodwinlaw.com

*Counsel for Teva
Pharmaceuticals USA, Inc.*

September 17, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

All parties and intervenors appearing before the district court and this Court are listed in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc. No amici have appeared before the district court or this Court in this case.

## B.    Rulings Under Review

Reference to the ruling at issue appears in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.

## C.    Related Cases

This case has not previously been before this Court. This case involves the same drug product as *Norwich Pharmaceuticals, Inc. v. Kennedy*, No. 23-5311 (D.C. Cir.); S*alix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.*, 98 F.4th 1056 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 567 *and* 145 S. Ct. 983 (2024); and S*alix Pharmaceuticals, Inc. v. Norwich Pharmaceuticals, Inc.*, No. 1:24-cv-7140 (D.N.J. filed June 20, 2024).

The Court denied Norwich Pharmaceuticals, Inc.'s motion to consolidate this case with No. 23-5311, but ordered that oral argument in both cases be coordinated to occur on the same day. Order, *Norwich*

*Pharmaceuticals, Inc. v. Kennedy*, No. 23-5311 (D.C. Cir. May 21, 2025).

Dated: September 17, 2025      Respectfully submitted.

/s/ *Brian T. Burgess*
Brian T. Burgess

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellee Teva Pharmaceuticals USA, Inc., states that it is an indirect wholly owned subsidiary of Teva Pharmaceutical Industries Ltd., which is a publicly traded company. The aforementioned company owns at least 10% of the stock of Teva Pharmaceuticals USA, Inc.

Dated: September 17, 2025       Respectfully submitted.

                                /s/ *Brian T. Burgess*
                                Brian T. Burgess

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................1

Statement of the Issues .............................................................4

Statutes and Regulations ..........................................................5

Statement of the Case ...............................................................5

    I.    Legal Background ...........................................................5

        A.    Generic drugs, paragraph IV certifications, and 180-day exclusivity.........................................5

        B.    Congress amended the Act to clarify that 180-day exclusivity applies on a product basis and to adopt forfeiture rules. ...................9

    II.    Factual Background .....................................................14

        A.    Actavis is the "first applicant" for rifaximin 550 mg tablets...................................................14

        B.    FDA changes the requirements for rifaximin 550 mg tablets midway through Actavis's review period, causing Actavis to miss the 30-month deadline. ......................................15

        C.    Norwich submits later ANDAs for rifaximin tablets.......................................................17

        D.    FDA grants tentative approval to Norwich's '370 ANDA because Actavis has not forfeited its 180-day exclusivity...........................19

    III.    Procedural Background.........................................21

Standard of Review ...............................................................24

Summary of Argument...........................................................25

Argument ................................................................................. 26

I.    Actavis Has Not Forfeited Its 180-Day Exclusivity for
Failure To Market. .............................................................. 27

    A.    There has been no forfeiture event as to the '573
patent. ....................................................................... 28

    B.    A subsequent applicant's certifications are
irrelevant to whether a patent qualifies the first
applicant for 180-day exclusivity. ............................... 31

    C.    Norwich's patent-by-patent approach to
exclusivity is both irrelevant and wrong. .................... 36

    D.    Norwich's patent-matching approach to 180-day
exclusivity conflicts with the statutory history. ........... 39

II.    Actavis's Failure To Obtain Tentative Approval Within
30 Months Was "Caused By" a Change in the
Requirements for the Approval of Rifaximin Tablets. ......... 43

    A.    Approval delay is "caused by" a change that
prevents approval within 30 months, regardless
of whether it is the "but-for" cause of delay. ............... 44

    B.    Norwich's citizen-petition argument is both
waived and meritless. ................................................. 49

Conclusion ............................................................................. 52

# TABLE OF AUTHORITIES

**Page(s)**

Cases:

*Apotex Inc. v. FDA,*
414 F. Supp. 2d 61 (D.D.C. 2006) ................................. 9, 39

*Apotex, Inc. v. FDA,*
393 F.3d 210 (D.C. Cir. 2004) ....................................... 11, 40

*Bostock v. Clayton Cnty.,*
590 U.S. 644 (2020) ....................................................... 47

*Bufkin v. Collins,*
145 S. Ct. 728 (2025) .................................................... 38

*Burrage v. United States,*
571 U.S. 204 (2014) ....................................................... 47

*Citizens for Resp. & Ethics in Wash. v. FEC,*
971 F.3d 340 (D.C. Cir. 2020) ...................................... 37

*FTC v. Actavis, Inc.,*
570 U.S. 136 (2013) ........................................................ 7

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.,*
7 F.4th 1320 (Fed. Cir. 2021) ........................................ 8

*Harrington v. Purdue Pharma L.P.,*
603 U.S. 204 (2024) ....................................................... 52

*Institutional S'holder Servs., Inc. v. SEC,*
142 F.4th 757 (D.C. Cir. 2025) ..................................... 24

* *Kilburn v. Socialist People's Libyan Arab Jamahiriya,*
376 F.3d 1123 (D.C. Cir. 2004) ........................ 26, 44, 46, 49

*\* Authorities upon which this brief chiefly relies
are marked with asterisks.*

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004) ............................................................ 38

*Lissack v. Comm'r of Internal Revenue*,
    125 F.4th 245 (D.C. Cir. 2025) ......................................... 24

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .................................................... 24, 49

*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C. Cir. 1998) ........................................... 7

*Mylan Lab'ys Ltd. v. FDA*,
    910 F. Supp. 2d 299 (D.D.C. 2012) ............................. 14, 45

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ............................................................ 32

*Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth.*,
    598 U.S. 449 (2023) ............................................................ 27

*Oklahoma v. Castro-Huerta*,
    597 U.S. 629 (2022) ............................................................ 41

*Owens v. Republic of Sudan*,
    864 F.3d 751 (D.C. Cir. 2017) .......................................... 46

*Paroline v. United States*,
    572 U.S. 434 (2014) ............................................................ 47

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) .............................................................. 5

*S. Coast Air Quality Mgmt. Dist. v. EPA*,
    472 F.3d 882 (D.C. Cir. 2006) .......................................... 50

*Sinclair Wyoming Refining Co. LLC v. EPA*,
    114 F.4th 693 (D.C. Cir. 2024) ......................................... 47

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................ 49

*Takeda Pharms., U.S.A., Inc. v. Burwell,*
   78 F. Supp. 3d 65 (D.D.C. 2015) ........................................ 37

\* *Teva Pharms. USA, Inc. v. Sebelius,*
   595 F.3d 1303 (D.C. Cir. 2010) ...................................... 1, 6, 7, 42, 51

*TorPharm, Inc. v. FDA,*
   2004 WL 64064 (D.D.C. Jan. 8, 2004) ........................................ 10, 40

*TorPharm, Inc. v. Thompson,*
   260 F. Supp. 2d 69 (D.D.C. 2003) .................................................... 10

*United States v. McGoff,*
   831 F.2d 1071 (D.C. Cir. 1987) ........................................................ 42

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
   570 U.S. 338 (2013).......................................................................... 47

*Vanda Pharms., Inc. v. FDA,*
   766 F. Supp. 3d 85 (D.D.C. 2025) .................................................... 49

## STATUTES:

21 U.S.C. §355(b) ..................................................................................... 48

21 U.S.C. §355(b)(1)(A)(viii) .................................................................. 6

21 U.S.C. §355(c)(3)(E)(ii) ...................................................................... 33

21 U.S.C. §355(c)(3)(E)(iii) ..................................................................... 33

21 U.S.C. §355(c)(3)(E)(iv)....................................................................... 33

21 U.S.C. §355(j) ...................................................................................... 48

21 U.S.C. §355(j)(2)(A)(iv) ...................................................................... 5

21 U.S.C. §355(j)(2)(A)(vii) ..................................................................... 6

21 U.S.C. §355(j)(2)(A)(viii) .................................................................... 8

21 U.S.C. §355(j)(5)(B)............................................................................. 6

21 U.S.C. §355(j)(5)(B)(ii) .................................................................. 6

\* 21 U.S.C. §355(j)(5)(B)(iv)(I) ........................ 1, 8, 27, 35, 36, 38

21 U.S.C. §355(j)(5)(B)(iv)(II) ...................................................... 7, 25

21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb) ........................................... 10, 30

21 U.S.C. §355(j)(5)(D) ................................................................... 11

21 U.S.C. §355(j)(5)(D)(i)(I) ............................................................ 12

\* 21 U.S.C. §355(j)(5)(D)(i)(I)(bb) .................... 3, 12, 20, 25, 27, 29, 30, 32

21 U.S.C. §355(j)(5)(D)(i)(III) ......................................................... 34

\* 21 U.S.C. §355(j)(5)(D)(i)(IV) ............................. 4, 12, 13, 25, 43, 50, 51

21 U.S.C. §355(j)(5)(D)(ii) ............................................................... 11

21 U.S.C. §355(j)(5)(D)(iii) .............................................................. 12

21 U.S.C. §355(j)(5)(D)(iii)(I) ......................................................... 33

21 U.S.C. §355(j)(5)(D)(iii)(II) ........................................................ 34

21 U.S.C. §355(q)(1)(A) ................................................................... 50

21 U.S.C. §355(q)(1)(G) ...................................................... 23, 50, 51

21 U.S.C. §360cc(a) .......................................................................... 33

28 U.S.C. §1605(a)(7) (1996) .......................................................... 46

35 U.S.C. §271(e)(2)(A) ..................................................................... 6

Drug Price Competition and Patent Term Restoration Act,
    Pub. L. No. 98-417, 98 Stat. 1585 (1984) ............................... 5

Food, Drug, and Cosmetic Act, as amended,
    21 U.S.C. §301 *et seq.* .................................................................. 5

Medicare Prescription Drug, Improvement, and
 Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat.
 2066 ................................................................................................. 9

REGULATIONS AND RULEMAKING MATERIALS:

21 C.F.R. §314.3 ............................................................................ 13

21 C.F.R. §314.94(a)(12)(v) ......................................................... 15

21 C.F.R. §314.107(c)(1) (2002) ......................................... 10, 11

21 C.F.R. §314.127 ........................................................................ 48

80 Fed. Reg. 6802 (Feb. 6, 2015) ...................................... 11, 40

81 Fed. Reg. 69580 (Oct. 6, 2016) ...................................... 9, 11

LEGISLATIVE HISTORY MATERIALS:

149 Cong. Rec. S15670-03 (Nov. 24, 2003) (statement of Sen.
 Schumer) .................................................................................... 33

149 Cong. Rec. S15882-03 (Nov. 25, 2003) (statement of Sen.
 Kennedy) .............................................................................. 10, 12

H.R. Rep. No. 116-46 (2019) ..................................................... 51

S. 1114, 118th Cong. (1st Sess. 2023) ..................................... 51

OTHER AUTHORITIES:

Black's Law Dictionary (8th ed. 2004) .................................... 45

Erika King Lietzan, *A Brief History of 180-Day Exclusivity
 Under the Hatch-Waxman Amendments to the Federal
 Food, Drug, and Cosmetic Act*, 59 Food & Drug L.J. 287
 (2004) .......................................................................................... 10

Press Release, AAM, AAM Opposed the Lower Health Care
 Costs Act (Dec. 9, 2019),
 accessiblemeds.org/resources/press-releases/aam-opposes-
 lower-health-care-costs-act/ (last visited Sept. 15, 2025) .................. 52

Prosser and Keeton on The Law of Torts (5th ed. 1984) ........................ 46

Restatement (Third) of Torts §27............................................................ 48

Webster's New World Dictionary and Thesaurus
  (2nd ed. 2002)...................................................................................... 45

# GLOSSARY

| | |
|---|---|
| 2017 PSG | FDA's March 2017 Product-Specific Guidance for Rifaximin Tablets |
| ANDA | Abbreviated New Drug Application |
| FDA | Food and Drug Administration |
| FDCA | Food, Drug, and Cosmetic Act |
| Hatch-Waxman Amendments | Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) |
| HE | Hepatic Encephalopathy |
| IBS-D | Irritable Bowel Syndrome with Diarrhea |
| MMA | Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 |
| NDA | New Drug Application |
| Op.Br. | Opening Brief of Appellant Norwich Pharmaceuticals, Inc. |

## INTRODUCTION

Generic drugs benefit the public by lowering the cost of critical medicines, but they come at significant private expense. In addition to bearing the risks and costs associated with drug development, a generic drug manufacturer that submits a "paragraph IV" certification to patents listed for the corresponding brand product—and thus asserts that those patents are invalid or will not be infringed by the generic product—faces "the hazard of sparking costly litigation." *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1305 (D.C. Cir. 2010). The risk (and expense) is especially pronounced for the company mounting the first patent challenge. To nonetheless "induce challenges to patents claimed to support brand drugs," Congress established a special reward of 180 days of marketing exclusivity for first-filers. *Id.* at 1318. Until that exclusivity runs, FDA may not approve later applications for the same generic drug that also contain a paragraph IV certification. 21 U.S.C. §355(j)(5)(B)(iv)(I). This award is a "pro-consumer device." *Teva*, 595 F.3d at 1318.

Actavis Laboratories FL, Inc., a wholly owned subsidiary of Intervenor-Appellee Teva Pharmaceuticals USA, Inc., was the first applicant to submit an Abbreviated New Drug Application ("ANDA") for a generic

version of Xifaxan® (rifaximin) 550 mg tablets. Actavis submitted its ANDA in 2015 with paragraph IV certifications on all patents then listed by the brand manufacturer, Salix Pharmaceuticals, Inc. Predictably, a costly patent lawsuit ensued. After more than two years of litigation, Actavis and Salix entered into a settlement, which lets Actavis enter the market no later than January 2028—more than 22 months *before* the last Salix patent expires.

Norwich Pharmaceuticals, Inc., filed ANDAs several years after Actavis and after multiple other generic filers. A district court enjoined FDA from approving Norwich's original ANDA for rifaximin 550 mg tablets ("the '369 ANDA") until October 2029 after finding that a subset of the patents to which Norwich submitted paragraph IV certifications were valid and infringed. Norwich has tried to sidestep that ruling in several ways, including by amending a different ANDA originally filed for only 200 mg rifaximin tablets ("the '370 ANDA") to add the 550 mg strength while purporting to omit an infringing indication. And Norwich argues it is entitled to final approval *now*, before Actavis's 180-day exclusivity has been triggered. Both FDA and the district court correctly rejected

Norwich's assertions. None of the arguments Norwich puts forward provides any basis to overturn their judgment.

First, Norwich contends that Actavis forfeited exclusivity under the statute's "failure to market" provision. But that provision can only be triggered if an enumerated event has occurred "as to **each** of the patents with respect to which **the first applicant** submitted and lawfully maintained" a paragraph IV certification. 21 U.S.C. §355(j)(5)(D)(i)(I)(bb).[1] That has not happened. Norwich concedes there has been no such event as to at least U.S. Patent No. 8,642,573 ("the '573 patent")—indeed, Norwich lost its challenge to that patent. But Norwich insists the '573 patent does not count because **Norwich** dropped its paragraph IV certification. That is wrong. The statute dictates that forfeiture is assessed based on "each" patent submitted and lawfully maintained by "the first applicant"—*i.e.*, Actavis. Later applicants like Norwich cannot force a forfeiture merely by deciding to challenge fewer patents.

Second, Norwich argues that Actavis forfeited exclusivity because it did not secure tentative approval within 30 months of filing. But there is no forfeiture when the failure to obtain tentative approval by that

_____

[1] All emphasis is added unless otherwise noted.

deadline was "caused by a change in or a review of the requirements for approval" of the ANDA after it was filed. 21 U.S.C. §355(j)(5)(D)(i)(IV). That is the case here, as FDA imposed new requirements midway through Actavis's 30-month period and was still reviewing Actavis's revised submission as of the deadline. Norwich's contrary position depends on superimposing restrictive causation standards that conflict with this Court's precedent and would upend long-established agency practice.

For all these reasons, the Court should affirm. At a minimum, for reasons explained by Salix, Norwich's proposed remedy overreaches because it ignores alternative grounds for sustaining FDA's decision.

## STATEMENT OF THE ISSUES

1. Whether an applicant seeking to market a generic drug subject to a first applicant's 180-day exclusivity for the drug may bypass that exclusivity under the "failure to market" forfeiture provision if (a) the applicant's ANDA contains a paragraph IV certification, and (b) there has not been a forfeiture event as to "each of the patents" that qualified the first applicant for exclusivity.

2. Whether a first applicant forfeits its 180-day exclusivity for failure to obtain tentative approval within 30 months where a change in

approval requirements during the review period prevented approval before that deadline.

## STATUTES AND REGULATIONS

All pertinent statutes and regulations are contained in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc. ("Op.Br.").

## STATEMENT OF THE CASE

### I. Legal Background

#### A. Generic drugs, paragraph IV certifications, and 180-day exclusivity

The Food, Drug, and Cosmetic Act ("FDCA"), as amended, 21 U.S.C. §301 *et seq.*, establishes the framework for the review and approval of prescription drugs. As relevant here, Congress in the Hatch-Waxman Amendments, Pub. L. No. 98-417, 98 Stat. 1585, created a pathway for approval of generic drugs by allowing applicants to submit an abbreviated application to show the generic drug is the "same" as a previously approved "reference listed drug"—*i.e.*, the brand-name drug. 21 U.S.C. §355(j)(2)(A)(iv). This streamlined process lets the generic manufacturer establish safety and efficacy without "duplicating the clinical trials" conducted by the brand. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 (2011).

Since brand-name drugs are often protected by patents, the statute creates a process for resolving patent disputes. Brand-name manufacturers must identify the patents claiming their drug product or a method of using that drug product, and those patents are then listed in a compendium known as "the Orange Book." 21 U.S.C. §355(b)(1)(A)(viii). In turn, ANDAs must contain a certification or statement as to each patent listed for the relevant brand product. 21 U.S.C. §355(j)(2)(A)(vii). These certifications inform when FDA may approve an ANDA. *See id.* §355(j)(5)(B). For example, if an ANDA includes a "paragraph III" certification for a patent, FDA may not approve the ANDA until that patent expires. *Id.* §355(j)(5)(B)(ii).

Most relevant here, if a generic applicant seeks to market before a listed patent expires, it may submit a "paragraph IV certification," which asserts that the listed patent is invalid, unenforceable, or will not be infringed by the ANDA product. 21 U.S.C. §355(j)(2)(A)(vii). A paragraph IV certification "comes with a risk" because it qualifies as an act of patent infringement. *Teva*, 595 F.3d at 1305 (citing 35 U.S.C. §271(e)(2)(A)).

Recognizing that effective competition depends on companies incurring that risk, Congress created an "exclusivity incentive" of 180 days of

exclusive generic marketing for the first ANDA applicant willing to "stick out [its] neck" by submitting a paragraph IV certification for a product. *Id.* at 1318. Contrary to Norwich's insinuation (Op.Br.3), exclusivity is not tied to "successfully litigating" patent disputes. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (rejecting a "successful-defense requirement" as "inconsistent with the statutory text and structure"). Indeed, first applicants often accelerate generic competition by securing favorable settlements that allow generic entry before patent expiration. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 153, 158 (2013) (recognizing "the value of settlements" to early generic entry).

Under the statute, an ANDA applicant becomes a "first applicant" and secures 180-day exclusivity by "submit[ting] a substantially complete" ANDA that "contains and lawfully maintains a certification described in paragraph (2)(A)(vii)(IV) for the drug" (*i.e.*, a paragraph IV certification) on the first day such an application "is submitted for approval of a drug." 21 U.S.C. §355(j)(5)(B)(iv)(II). Although multiple applicants can share 180-day exclusivity if they submitted paragraph IV certifications for a product on the same day, there is only "one 180-day exclusivity for each drug product." [FDA_00397].

In the adjacent "Effectiveness of application" subparagraph, the statute instructs how 180-day exclusivity applies to subsequent ANDAs. 21 U.S.C. §355(j)(5)(B)(iv)(I). This "Effectiveness Provision" states that, "[s]ubject to" the forfeiture provisions—discussed pp. 11-14, *infra*—if a subsequent application:

> contains a certification described in paragraph (2)(A)(vii)(IV) [*i.e.*, a paragraph IV certification] and is for a drug for which a first applicant has submitted an application containing such a certification, the application shall be made effective on the date that is 180 days after the date of the first commercial marketing of the drug … by any first applicant.

21 U.S.C. §355(j)(5)(B)(iv)(I). Thus, absent forfeiture, if a drug is subject to a first applicant's 180-day exclusivity, a subsequent applicant that submits an ANDA with a paragraph IV certification may not obtain final FDA approval for that drug until the first applicant's exclusivity expires.

In addition, for method-of-use patents, generic applicants may try to "exclude a patented use from its label, by way of a 'section viii'" statement. *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1327 (Fed. Cir. 2021). Such a statement asserts that the method-of-use patent does not claim a use for which the generic applicant seeks approval. 21 U.S.C. §355(j)(2)(A)(viii). An ANDA may include paragraph

IV certifications on a subset of the patents listed for a brand drug and section viii statements to another subset. [FDA_00395].

### B. Congress amended the Act to clarify that 180-day exclusivity applies on a product basis and to adopt forfeiture rules.

In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066, which overhauled the 180-day exclusivity framework in two key respects.

First, Congress changed how 180-day exclusivity is defined and awarded. Under the Act's original version, there was confusion as to whether exclusivity operated patent-by-patent or was "drug-product specific, conferring a single 180-day exclusivity period in connection with the drug product upon the first ANDA applicant to make a paragraph IV certification as to any patent that is listed for that drug product." *Apotex Inc. v. FDA*, 414 F. Supp. 2d 61, 68-69 (D.D.C. 2006) (describing the competing positions). By regulation, FDA adopted a "patent-by-patent" approach under which a separate 180-day exclusivity entitlement would arise for each listed patent. *See* 81 Fed. Reg. 69580, 69600 (Oct. 6, 2016) (describing FDA's pre-MMA agency practice). Under this interpretation,

FDA believed that exclusivity would delay "approval only of later-submitted ANDAs containing a paragraph IV certification to **the same patent** to which a previous applicant has already offered such a certification." *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 73 n.2 (D.D.C. 2003) (citing 21 C.F.R. §314.107(c)(1) (2002)). But some courts concluded that FDA's interpretation was "contrary to the plain language" of the statute, which they believed compelled product-based exclusivity. *TorPharm, Inc. v. FDA*, 2004 WL 64064, at *1 (D.D.C. Jan. 8, 2004).

In the MMA, Congress eliminated any ambiguity by "restructur[ing]" the statute to establish "product-by-product exclusivity rather than a patent-by-patent exclusivity." 149 Cong. Rec. S15882-03, S15884 (Nov. 25, 2003) (statement of Sen. Kennedy). In particular, Congress adopted the "first applicant" definition described above, p. 7, which ties 180-day exclusivity to the submission of an ANDA "that contains and lawfully maintains **a** certification described in paragraph (2)(A)(vii)(IV)," *i.e.*, a paragraph IV certification, "**for the drug**." 21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb); *see* Erika King Lietzan, *A Brief History of 180-Day Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act*, 59 Food & Drug L.J. 287, 310 (2004)

(explaining that the "first applicant" definition was written to ensure "exclusivity would be product-by-product rather than patent-by-patent"). When FDA adopted regulations to implement the MMA, it rescinded the provision—21 C.F.R. §314.107(c)(1)—that "describe[d] a patent-by-patent analysis" for exclusivity, explaining that it had been "superseded by statute." 80 Fed. Reg. 6802, 6866 (Feb. 6, 2015); *see also* 81 Fed. Reg. at 69594-95 (finalizing the regulatory amendment).[2]

Second, Congress adopted a new provision governing "[f]orfeiture of 180-day exclusivity." 21 U.S.C. §355(j)(5)(D). The statute identifies six potential "forfeiture event[s]," and directs that "[t]he 180-exclusivity period" "shall be forfeited by a first applicant if a forfeiture event occurs with respect to the first applicant." *Id.* §355(j)(5)(D)(ii). Forfeiture is all-or-nothing: If the first applicant(s) forfeits 180-day exclusivity, then the

---

[2] Norwich's observation (Op.Br.33-34) that FDA continued to apply a patent-based approach to exclusivity "*after* the 2003 amendments" is misleading because the amendments only applied to new ANDAs filed after the MMA's effective date. *See Apotex, Inc. v. FDA*, 393 F.3d 210, 213 (D.C. Cir. 2004). Norwich's citations concern pre-2003 ANDAs or do not address the relevant issue. FDA finalized its regulations implementing the MMA in 2016. 81 Fed. Reg. at 69580. The agency never interpreted the post-2003 legislation in the manner Norwich suggests.

exclusivity lifts for "*any*" subsequent applicant and no other applicant is eligible for exclusivity. *Id.* §355(j)(5)(D)(iii).

Two potential forfeiture events are at issue: "Failure to market" and "Failure to obtain tentative approval." *Id.* §355(j)(5)(D)(i)(I), (IV).

*Failure to Market.* A first applicant will forfeit exclusivity if it fails to market its generic drug by a certain date, determined to be the later of an "item (aa) date" and an "item (bb) date." *Id.* §355(j)(5)(D)(i)(I). Only item (bb) is relevant here:

> with respect to the first applicant or any other applicant (which other applicant has received tentative approval), the date that is 75 days after the date as of which, *as to each of the patents* with respect to which *the first applicant* submitted and lawfully maintained a [paragraph IV] certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 [enumerated event] has occurred.

*Id.* §355(j)(5)(D)(i)(I)(bb). The enumerated events include a final court decision finding that a patent is invalid or not infringed or a court-entered settlement order or consent decree to the same effect. *See id.*

As reflected in the emphasized language, a triggering event under item (bb) must occur "as to *each* of the patents" that qualified "the first applicant" for exclusivity. *Id.*; *see also* 149 Cong. Reg. at S15885 (statement of Sen. Kennedy) (recognizing that the deadline cannot be triggered

until "a generic company has resolved patent disputes on **all** the patents that earned the first-to-file its exclusivity"). The provision thus creates a move-it-or lose-it ultimatum for the first applicant: If all the patent barriers identified in its own paragraph IV certifications have cleared, it must launch or lose exclusivity.

*Failure to receive tentative approval.* A first applicant may forfeit exclusivity if it fails to "obtain tentative approval of the application within 30 months after the date on which the application is filed." 21 U.S.C. §355(j)(5)(D)(i)(IV).[3] But an exception applies if such failure "is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed." *Id.* FDA has identified several qualifying changes, including a "change in approval requirements for demonstrating bioequivalence for a drug product." [FDA_00411].

FDA has long concluded that the exception is satisfied if "**one of the causes** of failure to get tentative approval by the 30-month forfeiture date was a change in or review of the requirements for approval imposed

---

[3] FDA grants tentative approval where a product satisfies the requirements for approval but final approval cannot be granted because of a patent barrier or unexpired exclusivity. *See* 21 C.F.R. §314.3.

after the application was filed." *Mylan Lab'ys Ltd. v. FDA*, 910 F. Supp. 2d 299, 302, 311 (D.D.C. 2012). "But-for causation is not required to meet this exception." *Id.* at 302, 311 n.7; *accord* [FDA_00002; FDA_00410].

## II.  Factual Background

### A.  Actavis is the "first applicant" for rifaximin 550 mg tablets.

Salix markets both 200 mg and 550 mg rifaximin tablets under the brand name Xifaxan®.  Its 550 mg product is approved to treat irritable bowel syndrome with diarrhea ("IBS-D") and reduce the risk of recurrence of overt hepatic encephalopathy ("HE").  [Op.9].

In December 2015, Actavis filed an ANDA to market generic 550 mg rifaximin tablets to treat both IBS-D and HE.  [FDA_00031].  Its ANDA contained paragraph IV certifications to 22 patents, which fit into three categories:  claims directed to the polymorph form of rifaximin ("the polymorph patents"), claims directed to using rifaximin to treat HE ("the HE patents"), and claims directed to using rifaximin to treat IBS-D ("the IBS-D patents").  [FDA_00383-84].  It is undisputed that, on the basis and timing of these paragraph IV certifications, Actavis is the sole "first applicant" for 550 mg rifaximin tablets.  [FDA_00014].

In March 2016, Salix sued Actavis for patent infringement. [Op.10]. In September 2018, after two years of hard-fought litigation, Salix and Actavis entered into a settlement, which granted a non-exclusive license to Actavis to market a generic version of 550 mg rifaximin tablets (in both approved indications) no later than January 1, 2028—almost two years *before* expiration of Salix's last-expiring patent. [Op.10-11]. In the stipulated consent judgment, Salix recognized that, as a licensee, Actavis is "entitled to maintain its Paragraph IV Certifications" to the non-expired patents. [Op.11] (brackets omitted); *see also* 21 C.F.R. §314.94(a)(12)(v).

B. **FDA changes the requirements for rifaximin 550 mg tablets midway through Actavis's review period, causing Actavis to miss the 30-month deadline.**

In parallel to the Salix-Actavis litigation, FDA began reviewing Actavis's ANDA. [FDA_00004]. But in March 2017, more than 15 months into the review period, FDA published a revised Product-Specific Guidance for Rifaximin Tablets ("2017 PSG"), which imposed new, more demanding approval standards by requiring additional comparative in-vitro dissolution studies for rifaximin ANDA applicants. [FDA_00014].[4]

---

[4] FDA adopted the new guidance after Salix filed a citizen petition directed to the standards for establishing bioequivalence for generic rifaximin. [FDA_00004; FDA_00049-50]. "There is no evidence in the record

Seeking to meet FDA's new requirements,

---

that FDA's consideration of the petition caused a delay in approval or tentative approval of Actavis's ANDA."  [FDA_00005].

███████████████████████████████████

███████████████████████████████████

█████████████████████

## C. Norwich submits later ANDAs for rifaximin tablets.

In December 2019, Norwich filed two ANDAs for different strengths of rifaximin: the '369 ANDA for the 550 mg strength, and the '370 ANDA for the 200 mg strength. [FDA 00014, 16-17]. Norwich's '369 ANDA sought approval for both the IBS-D and HE indications, and it included paragraph IV certifications to the listed polymorph, IBS-D, and HE patents. [FDA_00014]. Based on publicly available information, Norwich is one of at least eleven applicants (including Actavis) seeking approval for generic rifaximin 550 mg.

Salix sued Norwich for patent infringement. [FDA_00520-71]. To narrow the issues for trial, the parties stipulated to a judgment of noninfringement "with respect to Norwich's current ANDA No. 214369" for several listed patents and patent claims. [FDA_00580-81]. The parties' stipulation was limited to Norwich's '369 ANDA as it then existed, including "any amendments or supplements to the ANDA *that do not change the indications of use*." [FDA_00580] n.1.

After a bench trial, the district court found that Norwich's '369 ANDA infringed Salix's valid HE patents, including the '573 patent. [FDA_00015]. The district court entered an order precluding FDA approval of the '369 ANDA before the '573 patent expires in October 2029. [FDA_00015-16]. Norwich then filed a Rule 60(b) motion asking the court to revise its order to permit final approval of an amended '369 ANDA, which purported to omit the HE indication. [FDA_00607-08]. The district court denied the motion, which it described as an "unprecedented" request for "the trial loser" "to change course" after the fact. [FDA_00609-11].[5]

Stymied by the court order, Norwich pivoted, amending the '370 ANDA to add the 550 mg strength and the IBS-D indication (but not the HE indication). [FDA_00016-17]. Norwich's amendment included paragraph IV certifications to both newly listed Salix patents and certain

---

[5] Norwich challenged the adverse decision on two fronts. First, it sued to overturn FDA's decision to grant the '369 ANDA only tentative approval, but the district court granted summary judgment to the agency. [FDA_00660-99]. Norwich appealed, and oral argument in that appeal has been coordinated with this one. Second, Norwich appealed the Delaware court's judgment and denial of the Rule 60(b) motion, but the Federal Circuit affirmed. [FDA_00702-23]. Norwich did not appeal the judgment of validity for the '573 patent and is now precluded from ever challenging that patent.

previously listed polymorph and IBS-D patents—several of which had ***not*** been adjudicated because they were subject to the now-defunct stipulation limited to the original '369 ANDA. [FDA_00878]. The '370 ANDA also included section viii statements to the HE patent claims, including the '573 patent. [FDA_00758]. Salix sued Norwich for patent infringement, and that litigation is ongoing. [Op.17] n.4.[6]

### D. FDA grants tentative approval to Norwich's '370 ANDA because Actavis has not forfeited its 180-day exclusivity.

In January 2025, FDA granted tentative approval to Norwich's '370 ANDA, finding that final approval for the 550 mg strength was blocked by Actavis's 180-day exclusivity. [FDA_00890-95].

FDA determined that, absent forfeiture, Norwich would be blocked because Norwich was a "subsequent applicant" for rifaximin 550 mg tablets, *i.e.*, its later-filed ANDA "contains paragraph IV certifications," including for paragraph IV certifications that "overlap" with Actavis's certifications. [FDA_00023; FDA_00025].

---

[6] The district court admonished Norwich for its "hide-the-ball" strategy in "fail[ing] to mention" this "highly pertinent" litigation. [Op.17] n.4. Yet Norwich continues to skip over it on appeal.

FDA then concluded that Actavis had not forfeited exclusivity for failure to market because there had been no "item (bb) date" as to at least one of the patents to which Actavis had submitted and lawfully maintained a paragraph IV certification qualifying it for 180-day exclusivity: the '573 patent.[7]  [FDA_00022].  Norwich's section viii statement to that patent is irrelevant to forfeiture, FDA explained, because "[t]he failure to market forfeiture provision … clearly specifies that only a first applicant's certifications are relevant to the forfeiture analysis"; the statute requires a triggering event "as to *each of the patents* with respect to which *the first applicant* submitted and lawfully maintained" a paragraph IV certification, with "no exception for patents to which another applicant has submitted a section viii statement."  [FDA_00024] (quoting 21 U.S.C. §355(j)(5)(D)(i)(I)(bb)) (first emphasis added).  FDA reasoned that this interpretation "accords with the statutory scheme," since

_____

[7] FDA assumed that an enumerated event had occurred for all Actavis's qualifying patents other than the '573 patent, including patents that had been subject to the stipulation for the original '369 ANDA. [FDA_00021-22].  But FDA recognized this might be questioned given Norwich's decision to proceed under a different ANDA (the '370 ANDA), with the agency ultimately concluding it "need not decide whether" that mattered.  [FDA_00020] n.64.  The district court, "[l]ike the FDA," did not resolve the issue because the '573 patent certification alone defeats forfeiture.  [Op.24-25] n.5.

forfeiture clears the way for *all* subsequent generic applicants to gain final approval, not just for a particular ANDA. [FDA_00027].

Finally, FDA also concluded that Actavis had not forfeited for failure to obtain tentative approval within 30 months, reaffirming an earlier determination by the agency. [FDA_00001-07, 17-19]. FDA found that the 2017 PSG calling for additional in-vitro dissolution studies represented a change in review requirements that was "a cause of Actavis's failure to obtain tentative approval or approval by the 30-month date." [FDA_00018]. FDA also "agree[d]" with Norwich that Salix's citizen petition did not cause any delay. [FDA_00019].

## III. Procedural Background

Norwich sued FDA, challenging the agency's decision that Actavis's unexpired 180-day exclusivity bars final approval of the '370 ANDA. Teva and Salix intervened. [Op.20]. The district court granted summary judgment to FDA, Teva, and Salix.

To start, the district court highlighted matters that are undisputed: (1) "Actavis is a 'first applicant' eligible for the 180-day exclusivity"; and (2) that exclusivity "bars Norwich's '370 ANDA unless a forfeiture event with respect to Actavis has occurred." [Op.23] (citations omitted).

The court then dispensed with Norwich's contention that Actavis forfeited its exclusivity for failure to market, concluding that "[a]ll tools of statutory interpretation point, like a compass, in one direction." [Op.23]. The court reasoned that Actavis's paragraph IV certification for the '573 patent is among the certifications qualifying Actavis for 180-day exclusivity for rifaximin 550 mg, and that patent "has not been subject to a forfeiture event." [Op.25-27]. The district court explained that Norwich's contrary view, under which a subsequent applicant's certifications limit the qualifying patents, lacks textual support. Norwich "conflat[ed] different statutory provisions to confuse the issue," relying on an interpretation of the phrase "such a certification" from the Effectiveness Provision that is irrelevant to forfeiture and flawed on its own terms. [Op.27-29] & n.6, [30] n.7. The court further reasoned that Norwich's position conflicts with statutory structure: There is only *one* 180-day exclusivity period, and forfeiture events may occur even without identifying any subsequent applicant. [Op.29-30]. The court also observed that Norwich's heavy reliance on pre-MMA agency practice was a "giant cautionary red flag" since Congress restructured exclusivity in the 2003 MMA to adopt an unambiguously product-based approach. [Op.31].

The district court next held that Actavis had not forfeited exclusivity under the tentative-approval provision because "a change in or review of the requirements for approval of [its] ANDA imposed after the application was filed is one of the causes of failure to get tentative approval" within 30 months. [Op.39, 41]. Relying on dictionary definitions of "cause" and this Court's interpretation of the same "caused by" language, the district court explained that "there is no textual warrant for but-for causation" in the statute. [Op.39] (brackets omitted). The court also observed that Norwich's arguments cited "tort and criminal law cases" that interpreted different causal language and relied on inapplicable background presumptions ill-suited to the drug-approval process. [Op.40-41]. Finally, the district court concluded that Norwich had "waived" its contention that approval timing and causation should be evaluated under a statutory provision applicable to "delay[] because of a [citizen] petition," 21 U.S.C. §355(q)(1)(G). *See* [Op.35] n.10.

In reaching its decision, the district court acknowledged Norwich's policy-based complaints about delayed entry, though the court noted they "may be overstated" since Actavis had secured full generic entry almost two years before the last Salix patent expires whereas Norwich had

23

abandoned the HE indication and remains mired in patent litigation. [Op.3]. Regardless, the court explained that Congress had "created the 180-day exclusivity" provision to incentivize generic competition, and the debate about whether it strikes the right balance as written "lies with Congress and not the courts." [Op.3, 33-34].

## STANDARD OF REVIEW

This Court "review[s] the district court's grant of summary judgment *de novo.*" *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 766 (D.C. Cir. 2025). The Court must exercise "independent judgment in determining the meaning of statutory provisions," but in doing so "may … seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (quotation marks omitted). In evaluating an agency's interpretation, the Court looks to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Lissack v. Comm'r of Internal Revenue*, 125 F.4th 245, 249, 259 (D.C. Cir. 2025) (quotation marks omitted).

# SUMMARY OF ARGUMENT

**I.** Actavis did not forfeit 180-day exclusivity on rifaximin 550 mg for failure to market. Exclusivity is not forfeited under that provision unless there has been a triggering event for "each" of the patents to which the first applicant submitted qualifying paragraph IV certifications. 21 U.S.C. §355(j)(5)(D)(i)(I)(bb). Actavis's paragraph IV certification to the '573 patent is one of the certifications qualifying Actavis as the "first applicant," 21 U.S.C. §355(j)(5)(B)(iv)(II), and there has been no forfeiture event as to at least that patent. Norwich's contention that the '573 patent ceases to be qualifying if later applicants omit a paragraph IV certification for the patent conflicts with the statutory text and structure, which forecloses Norwich's "purely relational" approach. Op.Br.45-46. Norwich's arguments also seek to revive a patent-based view of exclusivity that Congress unambiguously rejected in the MMA.

**II.** Actavis did not forfeit exclusivity under the tentative-approval provision. That provision recognizes an exception to the 30-month deadline if the failure to secure approval by then "is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application [was] filed." 21 U.S.C.

§355(j)(5)(D)(i)(IV).  FDA correctly found that exception applies because the requirement for new in-vitro dissolution testing announced midway through Actavis's review period prevented Actavis from securing tentative approval by the deadline.  Norwich's attempt to superimpose a "but-for" standard conflicts with this Court's interpretation of the same "caused by" phrase, *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004), and would upend longstanding agency practice.  Norwich's alternative argument premised on delay from review of Salix's citizen petition is forfeited and meritless.

## ARGUMENT

Despite Norwich's effort to complicate this case via an "algorithm," which Norwich illustrates with a multi-step flowchart of its own creation, Op.Br.11-13, the issues are straightforward.  All agree that Actavis qualified as the "first applicant" for rifaximin 550 mg.  Op.Br.18; [Op.23].  There is likewise no question that the Effectiveness Provision applies to Norwich's ANDA:  It (1) "contains a certification described in" paragraph IV (*i.e.*, Norwich's paragraph IV certifications to several IBS-D and polymorph patents), and (2) "is for a drug" (rifaximin 550 mg) "for which a first applicant" (Actavis) "has submitted an application containing such

a certification." 21 U.S.C. §355(j)(5)(B)(iv)(I).  *See* Op.Br.38, 40 (conceding the point).

Thus, as FDA recognized, "only a forfeiture event would allow for final approval" of Norwich's ANDA before Actavis's 180-day exclusivity expires.  [FDA_00025].  FDA and the district court correctly determined that no such forfeiture event has occurred.

## I.    Actavis Has Not Forfeited Its 180-Day Exclusivity for Failure To Market.

"Interpretation of a statute both begins with the statutory text, and ends there as well if the text is unambiguous." *Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth.*, 598 U.S. 449, 463 (2023) (quotation marks omitted).  That is the case here.  Approval of Norwich's ANDA is blocked under the Effectiveness Provision by the 180-day exclusivity awarded to Actavis for rifaximin 550 mg unless Actavis forfeited that exclusivity.  Actavis did not do so because there has not been a forfeiture event for "each" patent to which Actavis submitted a qualifying paragraph IV certification. 21 U.S.C. §355(j)(5)(D)(i)(I)(bb).  End of story.

On appeal, Norwich invents new categories of "direct" and "indirect" exclusivity, ascribing its novel framework to the district court. *E.g.*, Op.Br.25-26.  But no such framework appears in the decision below.

Rather, both the district court and FDA correctly applied the same two-part test drawn directly from the statute:

(1) Is Norwich's ANDA subject to the 180-day exclusivity period for rifaximin 550 mg secured by Actavis? ***Yes***, Norwich's ANDA contains paragraph IV certifications.

(2) Did Actavis forfeit the 180-day exclusivity for rifaximin 550 mg? ***No***, there has not been a forfeiture event as to at least one patent qualifying Actavis for the 180-day exclusivity period on that drug product.

[Op.23; FDA_00023-24].  It is only because those answers are obvious that Norwich tries to mix-up the questions, "consistently conflat[ing] different statutory provisions to confuse the issue."  [Op.30] n.7.  Norwich cannot evade Actavis's non-forfeited exclusivity for rifaximin 550 mg.

## A. There has been no forfeiture event as to the '573 patent.

After much windup, Norwich concedes it relies on failure-to-market forfeiture to avoid Actavis's otherwise applicable 180-day exclusivity for rifaximin 550 mg. *See* Op.Br.38, 40.  That forfeiture provision consists of a multi-part checklist of triggering conditions, but only subparagraph (bb) of section 355(j)(5)(D)(i)(I) is at issue.  *Id.*  Subparagraph (bb) requires an enumerated event to have occurred "as to ***each*** of the patents with respect to which ***the first applicant*** submitted and lawfully maintained a certification qualifying the first applicant for the 180-day

exclusivity period under subparagraph (B)(iv)." 21 U.S.C. §355(j)(5)(D)(i)(I)(bb).

The term "each" is fatal to Norwich's position because, at a minimum, no enumerated event has occurred as to the '573 patent.[8] Indeed, Norwich *lost* its challenge to that patent. *See* p. 18, *supra*. Therefore, there has been no failure to market so long as the '573 patent is a patent "with respect to which the first applicant [Actavis] submitted and lawfully maintained a certification qualifying [Actavis] for the 180-day exclusivity period." 21 U.S.C. §355(j)(5)(D)(i)(I)(bb). It is.

As the district court explained, this result follows from the ordinary meaning of "qualify" and the statutory definition of "first applicant." [Op.26-27]. "Qualify" refers to whether an applicant possesses the necessary qualities or properties to be a "first applicant." *Id.* (collecting dictionary definitions). And "first applicant" means an applicant that "submits a substantially complete application that contains and lawfully

---

[8] As discussed, pp. 17-19, *supra*, there are several other patents to which Actavis submitted paragraph IV certifications that also have not experienced forfeiture events because they were subject to a defunct stipulation applicable to a version of the '369 ANDA that Norwich abandoned. These patents provide an independent ground to affirm or alternatively would be left to address on remand. *See* Salix Br., § I.

maintains a certification described in [paragraph IV]" on the "first day" any such application for the drug product is submitted. 21 U.S.C. §355(j)(5)(B)(iv)(II)(bb). Putting these terms together, an applicant is a "first applicant" if it submits the first ANDA for a drug product that contains paragraph IV certifications. The "qualifying" patents are those for which paragraph IV certifications were included in the first-filed ANDA, provided the certifications remain lawfully in place. *Accord* [FDA_00394-95] (FDA Guidance).[9]

In short, the '573 patent is one "qualifying" Actavis for 180-day exclusivity because Actavis's paragraph IV certification for the patent was included in its first-filed rifaximin 550 mg ANDA, and no one disputes that Actavis has lawfully maintained that certification. [FDA_00014]. Since there has not been an enumerated event "as to **each**" of the qualifying patents, 21 U.S.C. §355(j)(5)(D)(i)(I)(bb), there is no forfeiture for

---

[9] Norwich tries to resist this plain meaning with an obscure, multi-step argument relying on a dizzying number of cross-references. Op.Br.44-45. The upshot appears to be that 180-day exclusivity functions by preventing FDA from approving certain later ANDAs with paragraph IV certifications, which Norwich insists shows that "a certification is only 'qualifying' if it is made by **both** applicants." Op.Br.45. But as explained below, pp. 31-35, this conclusion does not follow from the text, and it conflicts with the structure of the forfeiture provisions, which are not purely relational in the manner Norwich argues.

failure to market. This two-step syllogism disposes of Norwich's argument without any need to run an "algorithm" or consult Norwich's custom-made, multi-step flowchart.

### B. A subsequent applicant's certifications are irrelevant to whether a patent qualifies the first applicant for 180-day exclusivity.

Norwich insists the '573 patent can be ignored because *Norwich* dropped its paragraph IV certification to the patent. Op.Br.42-48. That argument conflicts with the statutory text and structure.

A first applicant's entitlement to 180-day exclusivity, and the patents "qualifying" it for such exclusivity, does not change based on the certification decisions of later applicants. Actavis qualified as the first applicant for rifaximin 550 mg based on its paragraph IV certification to the '573 patent (among others) long before Norwich came along. Norwich's choice in 2025 to submit something other than a paragraph IV certification for the '573 patent does not change that. Its section viii statements "are not" "relevant to the … forfeiture analysis." [FDA_00026].

Norwich's contrary argument relies on the premise that 180-day exclusivity is "purely relational," such that it cannot be recognized (or lost) unless measured against certifications in later ANDAs. Op.Br.45-46. On

this applicant-by-applicant view, a first applicant could have as many different 180-day exclusivity periods as there are subsequent applicants, with the qualifying patents changing as to each later applicant. *See* Op.Br.38. Here, for example, Norwich is one of at least ten subsequent applicants seeking approval for rifaximin 550 mg, and those applicants have made different certification decisions. *See* p. 17, *supra*; [ECF.35 ¶24] (describing licensing agreement for the HE patents by two applicants). Under Norwich's theory, the question of whether Teva has forfeited exclusivity for failure to market has no fixed answer, with the result changing depending on who asks and when. This Schrodinger's cat approach to forfeiture is wrong.

The statute refers to "***the*** 180-day exclusivity period under subparagraph (B)(iv)," 21 U.S.C. §355(j)(5)(D)(i)(I)(bb), indicating there is a ***single*** exclusivity period (though one that can be shared). *See Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021) ("using a definite article with a singular noun" implies a single, "discrete thing"); *see also* Op.Br.35 (conceding Congress intended "to allow only a single potential 180-day exclusivity period for a given drug product"). Consistent with this understanding, forfeiture of "the 180-day exclusivity period" is all-or-nothing, applying

equally to *any* subsequent applicant. [FDA_00027]. If all first applicants "forfeit the 180-day exclusivity period," then "approval of *any* application" with a paragraph IV certification is permitted (if other conditions are met). 21 U.S.C. §355(j)(5)(D)(iii)(I); *see also* 149 Cong. Rec. S15670-03, S15746 (Nov. 24, 2003) (statement of Sen. Schumer) ("If [the first applicant] forfeits, then the exclusivity is lost and *any other* generic applicant that is ready to be approved and go to market can go.").

Other features of the statute further undermine Norwich's relational approach. Norwich suggests that "[t]he 180-day exclusivity period can only potentially come into existence" when later applicants submit ANDAs with paragraph IV certifications. Op.Br.45-46. But that is wrong. True, the *value* provided by 180-day exclusivity is that it precludes approval of certain later applications, but that merely reflects how exclusivity operates and is not unique to the 180-day context. *See, e.g.*, 21 U.S.C. §355(c)(3)(E)(ii)-(iv) (creating exclusivities for new-chemical entities or for conducting new clinical trials by restricting FDA from accepting or approving a competing application); *id.* §360cc(a) (same for orphan-drug exclusivity). The fact that exclusivity works by blocking later ANDAs does not imply that submission of those ANDAs *creates* the

exclusivity.  To the contrary, "forfeiture events can occur without any subsequent applicant asserting Paragraph IV Certifications."  [Op.29] (providing multiple examples).  And that matters because once the 180-day exclusivity is forfeited by the first applicant, no later applicant may receive it.  21 U.S.C. §355(j)(5)(D)(iii)(II).

Consider, for instance, subclause (D)(i)(III), which describes how "Amendment of certification" may cause forfeiture.  21 U.S.C. §355(j)(5)(D)(i)(III).  That provision recognizes a forfeiture event if "[t]he first applicant amends or withdraws the certification for all of the patents with respect to which that applicant submitted a certification qualifying the applicant for the 180-day exclusivity period."  *Id.*  Thus, if the first applicant's ANDA contained paragraph IV certifications on two patents, and the applicant withdraws both certifications, the applicant forfeits exclusivity regardless of the existence of other ANDAs.  By contrast, the first applicant would not forfeit exclusivity by amending just one of the two certifications, which again shows that whether a certification is "qualifying" is judged based on the first applicant's own ANDA.

A final example illustrates the point.  Consider a product with just one listed patent, to which the first generic filer submits a paragraph IV

34

certification. There is no doubt about which certification qualifies the applicant for exclusivity—there is one patent. And that would not change regardless of whether subsequent applicants file their own paragraph IV certification for the patent or adopt a different strategy, such as submitting a section viii statement or a paragraph III certification. In this one-patent example, a subsequent applicant that omits a paragraph IV certification might *avoid* the exclusivity, but that is because the Effectiveness Provision only applies to ANDAs that "contain[]" a "certification described in paragraph [IV]." 21 U.S.C. §355(j)(5)(B)(iv)(I). Submission of a later ANDA without a paragraph IV certification would not trigger *forfeiture*; the first-filer's exclusivity would still bar approval of later ANDAs with a paragraph IV certification.

The number of patents on Xifaxan® does not change the analysis. The qualifying certifications are determined by reference to the first applicant's ANDA; there must be a forfeiture event for each qualifying patent; and if forfeiture occurs, it lifts the 180-day exclusivity for everyone. Norwich's attempt to create a forfeiture rule tailored to each subsequent applicant conflicts with the statutory structure.

### C. Norwich's patent-by-patent approach to exclusivity is both irrelevant and wrong.

Rather than confront the text of the forfeiture provision, Norwich builds its argument on the "Effectiveness Provision." Op.Br.26-32. As outlined, p. 8, *supra*, that provision instructs that, "[s]ubject to subparagraph (D)" (addressing forfeiture), the 180-day exclusivity will block approval of an ANDA that "contains a certification described in paragraph [IV]" and is "for a drug for which a first applicant has submitted an application containing such a certification." 21 U.S.C. §355(j)(5)(B)(iv)(I). Norwich focuses on the phrase "such a certification," which it reads to apply only if the subsequent ANDA and the first-filed ANDA contain paragraph IV certifications for the same patent. Op.Br.30-32.

As FDA recognized, there is no need to decide whether Norwich's interpretation is correct because Norwich's ANDA is subject to the Effectiveness Provision even under Norwich's "matching" theory (Op.Br.37): Its ANDA includes paragraph IV certifications to the polymorph and IBS-D patents that "overlap" with Actavis's certifications. [FDA_00025]. Norwich's policy-based objections (Op.Br.37-38, 46-47) to what it refers to as "indirect[]" blocking based on these certifications cannot overcome the plain text of the forfeiture provisions. *See* Part I.B, *supra*.

In any event, as the district court held, Norwich's reading of "such a certification" is wrong, which eliminates any supposed tension between the Effectiveness Provision and the forfeiture rules. [Op.28-29] n.6.

"The term 'such,' when used as an adjective, … nearly always operates as a reference back to something previously discussed." *Takeda Pharms., U.S.A., Inc. v. Burwell*, 78 F. Supp. 3d 65, 99 (D.D.C. 2015) (Jackson, J.) (vacated in part as moot); *see also* [Op.28-29] n.6 (collecting additional authorities). Here, what was "previously discussed" is "a certification described in paragraph (2)(A)(vii)(IV)." Contrary to Norwich's assertion (Op.Br.29), the antecedent referenced is not a specific patent, but rather a *type* of certification (the type described in paragraph IV). That conclusion is reinforced by the statute's use of the indefinite article "a"—*i.e.*, "such *a* certification"—which typically describes "one of a class," "something not specifically identified." *Citizens for Resp. & Ethics in Wash. v. FEC*, 971 F.3d 340, 354 (D.C. Cir. 2020) (citation omitted). The phrase "such a certification" is thus most naturally read to encompass *any* paragraph IV certification for the drug—not just a paragraph IV certification for a "specific[]" patent. *Id.*

Resisting this conclusion, Norwich contends that because a "first applicant" has "by definition … already submitted some Paragraph IV certification," interpreting "such a certification" to refer to paragraph IV certifications generally renders the phrase "surplusage." Op.Br.31-32. But the "preference for avoiding surplusage constructions" does not justify departing from the statute's "plain meaning." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). And the canon "simply does not apply" when "both interpretations involve the same redundancy." *Bufkin v. Collins*, 145 S. Ct. 728, 742 (2025). That is true here. Norwich insists that "such a certification" refers to the subsequent applicant's specific paragraph IV certification, which is tied to a patent and drug product. Op.Br.30. Under that view, there would be been no need to instruct that 180-day exclusivity applies to an application that "contains a certification described in paragraph (2)(A)(vii)(IV) ***and is for a drug for which a first applicant has submitted an application***." 21 U.S.C. §355(j)(5)(B)(iv)(I). According to Norwich, the emphasized text is already implicitly conveyed by "such a certification." Norwich's interpretation thus creates surplusage while purporting to avoid it.

Norwich does nothing to bolster its argument with its discussion of what it labels "timing rules" for patent certifications. Op.Br.26-30. Norwich devotes pages of its brief to the unremarkable point that when FDA determines when to approve an ANDA, it reviews each certification "individually" because the last applicable date dictates the timing for approval. *Id.* That observation does not distinguish between interpretations: FDA reviews each patent certification even if a single paragraph IV certification on any patent listed for the drug suffices to trigger the first applicant's 180-day exclusivity, just as a single paragraph III certification on the latest-expiring patent may alone dictate the approval timeline. As the district court recognized, the prefatory text in section 355(j)(5)(B) "does not speak" to the questions presented here. [Op.30] n.7.

### D. Norwich's patent-matching approach to 180-day exclusivity conflicts with the statutory history.

Norwich's attempt to establish a relational, patent-specific approach to 180-day exclusivity and forfeiture is contrary to the statutory history. As discussed, pp. 9-11, *supra*, in the 2003 MMA, Congress decisively rejected a patent-by-patent approach to 180-day exclusivity in favor of a "drug-product approach." *Apotex*, 414 F. Supp. 2d at 73 n.6. Yet Norwich's argument employs the very patent-specific approach that

Congress discarded, even relying (Op.Br.33-34) on a rescinded FDA regulation that the agency explained, more than a decade ago, had been "superseded by statute." 80 Fed. Reg. at 6866. No wonder the district court commented that Norwich's claims require "a time machine." [Op.1].

Seeking to explain away the statutory history, Norwich argues that the MMA was intended only to address a "wholly distinct problem" involving "multiple, sequential 180-day exclusivity periods for a single drug." Op.Br.34-35. Norwich insists that Congress did not otherwise intend to disturb the agency's patent-based approach to 180-day exclusivity, even going so far as to argue that Congress "ratified" FDA's pre-2003 construction of "such a certification" by leaving that text in place. Op.Br.32, 35-36. This revisionist account is deeply flawed.

To start, Norwich's premise that the pre-2003 legislation clearly prescribed a patent-based approach to exclusivity is wrong. FDA itself vacillated on the issue pre-MMA, *see Apotex*, 393 F.3d at 214 (describing the agency's shifting positions), and at least one court concluded that a patent-based approach to exclusivity was "contrary to the plain language" of the statute, *see TorPharm*, 2004 WL 64064, at *1; *see* p. 10, *supra*. Because there was no clear backdrop against which Congress was

legislating, Norwich's contention the MMA changes should be interpreted to "preserve[]" some imagined *status quo ante* is unfounded and the cases it cites involving reaffirmation of a "longstanding administrative construction" are off-point.  Op.Br.36.[10]

In any event, Norwich's speculation about Congress's reasons for adopting product-based exclusivity are beside the point.  "Congress expresses its intentions through statutory text," which "controls over purported legislative intentions." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022).  Even assuming Congress's overhaul of the 180-exclusivity provisions was motivated by a desire to preclude "multiple, sequential 180-day exclusivity periods," Op.Br.34, what matters is **how** Congress addressed that issue—by adopting a new definition of "first applicant" that establishes a single 180-day exclusivity period for a drug product and forecloses the type of patent-by-patent exclusivity that Norwich anachronistically defends. *See* pp. 10-11, *supra*.

---

[10] The district court recognized this unsettled backdrop.  [Op.31] n.8. Norwich's assertion (Op.Br.47) that the district court "acknowledged that Norwich's ANDA would have been approvable under the pre-2003 statute" thus mischaracterizes the court's reasoning.

Norwich fares no better with its related argument that FDA's plain-language construction supposedly undermines Congress's objective in adopting the forfeiture provisions to accelerate generic competition and prevent "bottleneck[s]." Op.Br.47-48. Once again, Norwich relies on assumptions about what "the statute allowed" "[p]rior to 2003," Op.Br.48, that were contested and unsettled, *see* pp. 40-41, *supra*. And once again, Norwich tries to detach a general legislative goal from the text "Congress has chosen to implement its legislative objectives." *United States v. McGoff*, 831 F.2d 1071, 1093 (D.C. Cir. 1987).

That approach is particularly misguided here because Norwich ignores the other side of the balance. As discussed, pp. 1, 6-7, *supra*, Congress adopted 180-day exclusivity as a "pro-consumer device," which "deliberately sacrifices the benefits of full generic competition at the first chance allowed by the brand manufacturer's patents, in favor of the benefits of earlier generic competition, brought about by the promise of a reward" to the first-filer. *Teva*, 595 F.3d at 1318. Norwich assumes that Congress could not have intended to allow Teva's paragraph IV certification on the '573 patent for rifaximin 550 mg to block Norwich from receiving final approval on that product despite its section viii statement.

But as FDA explained, it was reasonable for Congress to structure the failure-to-market provision to "create[] an incentive for subsequent applicants" to bring "patent challenges as to *all* of the patents" underlying the first applicant's exclusivity, [FDA_00027], which would clear the way for the broadest possible generic approvals.

In any event, the Court's role is not to assess the policy "pros and cons" of how the MMA structures forfeiture rules. [Op.33]. Congress did not provide any role for section viii statements to trigger forfeiture, and there is no basis to rewrite the statute as if it did. *Accord* [FDA_00024].

## II. Actavis's Failure To Obtain Tentative Approval Within 30 Months Was "Caused By" a Change in the Requirements for the Approval of Rifaximin Tablets.

FDA and the district court also correctly determined that Actavis has not forfeited 180-day exclusivity under the tentative-approval provision. As outlined pp. 13-14, *supra*, a first applicant's failure to secure tentative approval within 30 months does not result in forfeiture if that "failure is caused by a change in … the requirements for approval of the application imposed after the date on which the application [was] filed." 21 U.S.C. §355(j)(5)(D)(i)(IV). Here, FDA made such a change midway into Actavis's review period by requiring additional in-vitro dissolution

studies to show bioequivalence between Xifaxan® and rifaximin ANDAs. [FDA_00004-05]. And FDA found that change prevented Actavis from securing tentative approval within 30 months. [FDA_00007, 18-19]. Indeed, although Actavis promptly complied with the new testing requirement, FDA was still "considering Actavis's efforts to address th[e] change" as of the 30-month cutoff. [FDA_00006-07, 19].

Unable to dispute any of this, Norwich tries to add requirements to the statute. Its attempt to read in a but-for causation rule has "no textual warrant": "[T]he words 'but for' simply do not appear; only 'caused by' do." *Kilburn*, 376 F.3d at 1128. Nor may Norwich establish forfeiture based on the tolling rule for delays resulting from review of citizen petitions. That argument is both waived and meritless.

### A. Approval delay is "caused by" a change that prevents approval within 30 months, regardless of whether it is the "but-for" cause of delay.

There is no dispute that FDA's mid-review change in requirements imposing new dissolution testing obligations was sufficient to prevent tentative approval of Actavis's ANDA as of the June 2018 cut-off date. In response to FDA's new requirement, Actavis needed to conduct additional in-vitro dissolution testing, ██████████████████████; FDA

did not complete review of that submission until after the 30-month period. [FDA_00007; FDA_00333-34]. There is thus no doubt that FDA's new requirements were "one of the causes of [Actavis's] failure to get tentative approval" by the deadline. [Op.39].[11]

Norwich argues that is insufficient, ███████████████████████████████████████████████████████████████████████████████. Op.Br.50-52. But FDA has long understood that "[b]ut-for causation is not required to meet this exception," *Mylan*, 910 F. Supp. 2d at 302, and the district court correctly held that the agency's interpretation aligns with the plain text of the statute, [Op.39]. "Cause" is defined simply as "[t]o bring about or effect." Black's Law Dictionary, 235 (8th ed. 2004); *see also* Webster's New World Dictionary and Thesaurus, 96 (2nd ed. 2002) ("to be the cause of; bring about"). Under this ordinary meaning, there can be more than one "cause" of an event—a condition sufficient to "bring about" an outcome is

---

[11] Norwich criticizes ████████████████████████████████████ ███████████████, but both the district court and FDA explained that actions after the 30-month deadline are irrelevant to the forfeiture exception. [Op.36-37; FDA_00019]. Norwich does not challenge that interpretation on appeal. ███████████████████████████████████████ ████████████████████████████████ a finding Norwich declined to challenge.

a cause. *E.g.*, Prosser and Keeton on The Law of Torts 266-267 (5th ed. 1984).

This Court's decision in *Kilburn* interpreting the identical phrase "caused by" confirms that the ordinary meaning of this phrase is not limited to but-for causation. 376 F.3d at 1127. In *Kilburn*, the Court addressed a provision of the Foreign Sovereign Immunities Act, which provides an exception to sovereign immunity in any case where damages are sought for an injury or death "that was ***caused by***" certain terrorism-related acts. 376 F.3d at 1127 (quoting 28 U.S.C. §1605(a)(7) (1996)). The Court rejected the defendants' argument that the statute required not only "a causal connection, but that it specifically requires 'but for' causation." *Id.* As the Court explained, "a moment's inspection of" the text dispensed with that position because "the words 'but for' simply do not appear; only 'caused by' do." *Id.* at 1128. "Caused by" required only proximate cause, which is met when an event is at least a "substantial factor" in producing a result. *See Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (applying *Kilburn*'s "caused by" standard).

Norwich quickly skips over *Kilburn* without acknowledging that the decision interpreted the same "caused by" phrase at issue here.

Op.Br.54. Instead, Norwich features (Op.Br.53-54) cases interpreting different phrases. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020) ("because of"); *Burrage v. United States*, 571 U.S. 204, 210-212 (2014) ("results from"); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-48 (2013) ("because of"); *Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693, 708 (D.C. Cir. 2024) ("if required" and "would impose"). Moreover, as the district court recognized, Norwich relies on cases "creating causes of action for tort liability or criminalizing conduct," in which Congress "legislates against the backdrop" of a common-law presumption of but-for causation. [Op.41] (citing *Burrage* and *Nassar*).[12] No such background presumption applies to the forfeiture rules in the MMA.

Even in tort and criminal cases where a background presumption of but-for causation applies, courts recognize there may be "textual or contextual indications" that support a contrary meaning. *Burrage*, 571 U.S. at 212; *see also Paroline v. United States*, 572 U.S. 434, 451, 452 (2014) ("[C]ourts have departed from the but-for standard where circumstances warrant."). In particular, "[t]here is near-universal recognition

---

[12] The only exception is *Sinclair Wyoming,* and there the Court merely rejected EPA's creation of a "sole cause" requirement as overly restrictive. 114 F.4th at 709.

of the inappropriateness of the but-for standard for factual causation when multiple sufficient causes exist." Restatement (Third) of Torts §27, Reporter's Note cmt. *a*.

Here, as FDA has long explained, but-for causation would be an overly restrictive standard for forfeiture given the complex nature of ANDA review. FDA_00410. "[W]hen reviewing whether a drug is safe and effective to be marketed, numerous independent and sufficient causes may hinder tentative approval. Each of the independent, potential problems with an ANDA is a cause that may delay its approval." [Op.40] (citing 21 C.F.R. §314.127 and 21 U.S.C. §355(b), (j)). A causal test based on sufficiency (rather than necessity) "best effectuates the policy underlying the exception" to the 30-month tentative approval deadline by "not penaliz[ing] applicants for FDA's reviews of, or changes in, approval requirements" and "incentiviz[ing] ANDA applicants to challenge patents by preserving in many instances the opportunity to obtain 180-day exclusivity." [FDA_00410].

FDA's longstanding interpretation—dating back to when the agency first implemented the MMA—emerges from "a body of experience and informed judgment to which courts … may properly resort for

guidance." *Loper Bright*, 603 U.S. at 394 (quotation marks omitted). "FDA's expertise and practice … supply ample 'power to persuade'" that the agency's casual standard is correct*, Vanda Pharms., Inc. v. FDA*, 766 F. Supp. 3d 85, 98 (D.D.C. 2025) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), particularly since it aligns with this Court's interpretation of the identical "caused by" phrase, *Kilburn*, 376 F.3d at 1128. By contrast, adopting Norwich's interpretation would undermine industry expectations, causing first applicants to lose valuable statutory rights based on an interpretive shift that postdates FDA review of their respective applications.

## B. Norwich's citizen-petition argument is both waived and meritless.

Norwich argues in the alternative that, even under FDA's understanding of "caused by," FDA should have found forfeiture. Op.Br.55-57. The argument relies on a distinct statutory provision, which directs that FDA "shall not delay approval" of an ANDA because of a citizen petition unless FDA determines "delay is necessary to protect the public health" and provides notice to the applicant; the statute further provides that if an ANDA's approval "was delayed because of a [citizen] petition," then "the 30-month period … is deemed to be extended by a period of time

equal" to the time the petition was under review "without regard to" outcome. 21 U.S.C. §355(q)(1)(A), (G). Norwich now argues (Op.Br.56) that the delay caused by FDA's new review requirements should be judged under this provision rather than under section 355(j)(5)(D)(i)(IV).

As the district court found, Norwich "waived this argument" because it advanced the opposite position before FDA, telling the agency "there was never any delay 'because of' Salix's petition." [Op.35] n.10 (brackets omitted) (citing [FDA_00591; FDA_00819]). FDA "agree[d]" with Norwich on this point. [FDA_00019]. Norwich ignores its concession, and the case law it cites on "exhaustion" is off-point. Op.Br.56-57. Norwich did not simply omit an argument—it advanced the opposite position to FDA and convinced the agency it was right. "It is settled law that a party that presents a winning opinion before the agency cannot reverse its position before this court." *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 891 (D.C. Cir. 2006).

In any event, the citizen-petition provision is inapplicable. That provision grants an extension for delay resulting from the citizen-petition review ***process***, as reflected by the fact that the extension is measured by the length of the review period and applies "without regard to" the

petition's outcome.  21 U.S.C. §355(q)(1)(G).  By contrast, section 355(j)(5)(D)(i)(IV) provides the rule for delay caused by changed requirements, and it creates an exception from forfeiture rather than a tolling rule—a point the district court explained at length and which Norwich has not challenged on appeal.  [Op.36-37].

*****

Norwich's complaints about delayed approval "betray[] a misunderstanding of the exclusivity incentive," as Congress determined that the value of incentivizing patent challenges outweighs the cost of deferring entry by later applicants.  *Teva*, 595 F.3d at 1318.  In the years since the MMA's passage, some have questioned that balance.  Members of Congress have proposed legislation that would modify forfeiture rules, such as by removing exceptions from the 30-month deadline.[13]  Meanwhile, others—including the leading trade association for generic manufacturers—have urged rejection of such proposals, cautioning that changes would "reduce generic firms' incentives to pursue patent challenges," resulting in "fewer affordable generic medicines being available to

---

[13] *See, e.g.*, S. 1114, 118th Cong. (1st Sess. 2023); H.R. Rep. No. 116-46 (2019).

patients."[14]

"Either way," whether the framework for 180-day exclusivity and forfeiture should be modified is a judgment "for Congress to make." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 226 (2024). Norwich's policy grievances provide no basis to depart from the statute's text and structure.

## CONCLUSION

The Court should affirm the district court's decision.

September 17, 2025

Respectfully submitted.

/s/ *Brian T. Burgess*

Sierra J. Perez-Sparks          Brian T. Burgess
GOODWIN PROCTER LLP          GOODWIN PROCTER LLP
100 Northern Avenue          1900 N Street, NW
Boston, MA 02210          Washington, DC 20036
(617) 570-1000          (202) 346-4000
sperezsparks@goodwinlaw.com          bburgess@goodwinlaw.com

*Counsel for Teva Pharmaceuticals USA, Inc.*

---

[14] Press Release, AAM, AAM Opposed the Lower Health Care Costs Act (Dec. 9, 2019), accessiblemeds.org/resources/press-releases/aam-opposes-lower-health-care-costs-act/ (last visited Sept. 15, 2025).

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Court's July 7, 2025, Order regarding briefing because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 9,979 words and, together with Salix Pharmaceuticals, Inc.'s brief, does not exceed 13,000 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

September 17, 2025

/s/ *Brian T. Burgess*
Brian T. Burgess

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that the confidential version of the foregoing brief was also served on counsel for all parties by email.

September 17, 2025          /s/ *Brian T. Burgess*
                           Brian T. Burgess