# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
# 𝕗𝕠𝕣 𝕥𝕙𝕖 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 𝕠𝕗 ℂ𝕠𝕝𝕦𝕞𝕓𝕚𝕒 ℂ𝕚𝕣𝕔𝕦𝕚𝕥

NORWICH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant*,

v.

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES; DR. MARTIN A. MAKARY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF FOOD AND DRUGS; UNITED STATES FOOD AND DRUG ADMINISTRATION,

*Defendants-Appellees*,

TEVA PHARMACEUTICALS, INC.; SALIX PHARMACEUTICALS, INC.;

*Intervenors-Appellees*,

On Appeal from the United States District Court for the District of Columbia,
No. 1:25-cv-91 (Hon. Beryl A. Howell.)

## FINAL REPLY BRIEF OF APPELLANT
## NORWICH PHARMACEUTICALS, INC.
## PUBLIC COPY—SEALED MATERIAL DELETED

Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
mmurphy@axinn.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
(737) 910-7314
nicholas.schlossman@lw.com

October 29, 2025

Andrew D. Prins
Rachael L. Westmoreland
Lia Rose Barrett
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.prins@lw.com
rachael.westmoreland@lw.com
lia.barrett@lw.com

*Counsel for Plaintiff-Appellant*
*Norwich Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

GLOSSARY ............................................................................................ vi

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 4

I.    ACTAVIS'S CERTIFICATION TO THE HEPATIC
ENCEPHALOPATHY PATENT DOES NOT BLOCK APPROVAL
OF NORWICH'S APPLICATION EXCLUDING THAT
PATENTED USE ..................................................................................... 4

    A.    Actavis's Hepatic Encephalopathy Patent Certification Does
Not Directly Block Approval Of Norwich's Application,
Because Norwich Did Not Certify To That Patent .............................. 4

    B.    Actavis's Hepatic Encephalopathy Patent Certification Does
Not Indirectly Block Approval Of Norwich's Application,
Because Norwich Did Not Certify To That Patent .............................. 9

    1.    The Statute's Text And Structure Require A Forfeiture Only As
To Certifications Delaying Approval Of The Subsequent
Applicant's ANDA Under § 355(j)(5)(B)(iv) .................................... 10

    2.    The Statute's History and Purpose Also Support Norwich's
Interpretation ...................................................................................... 17

II.    ALTERNATIVELY, ACTAVIS FORFEITED ANY EXCLUSIVITY
BECAUSE ███████████████████████████
PRECLUDED APPROVAL OF ITS APPLICATION FOR OVER 30
MONTHS ................................................................................................. 20

    A.    Actavis Forfeited Exclusivity By Failing To Obtain Tentative
Approval By June 18, 2018 ................................................................. 20

    B.    Even Under FDA's Incorrect Causation Standard, Actavis
Forfeited Any Exclusivity By Failing To Obtain Tentative
Approval By November 16, 2018 ........................................................ 24

III.  SALIX'S FOUR NEW ISSUES ON APPEAL SHOULD NOT BE
      CONSIDERED ............................................................................................25

CONCLUSION .........................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
781 F.3d 1356 (Fed. Cir. 2015) .........................................................18

*Apotex, Inc. v. Food & Drug Administration*,
414 F. Supp. 2d 61 (D.D.C. 2006) ........................................................7

*Burrage v. United States*,
571 U.S. 204 (2014) ...................................................................21, 22

*United States ex. rel. Cairns v. D.S. Medical LLC*,
42 F.4th 828 (8th Cir. 2022) .............................................................23

*Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S*,
566 U.S. 399 (2012) .........................................................1, 2, 4, 8, 18

*Cyan, Inc. v. Beaver County Employees Retirement Fund*,
583 U.S. 416 (2018) .......................................................................13

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
376 F.3d 1123 (D.C. Cir. 2004) .....................................................21, 22

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......................................................................23

*Pfizer, Inc. v. Shalala*,
182 F.3d 975 (D.C. Cir. 1999) ...........................................................25

*Sandoz, Inc. v. Becerra*,
57 F.4th 272, 274 (D.C. Cir. 2023) ....................................................24

*Sinclair Wyoming Refinery Co. v. Environmental Protection Agency*,
114 F.4th 693 (D.C. Cir. 2024) ..........................................................23

*Teva Pharmaceuticals USA, Inc. v. Sebelius*,
595 F.3d 1303 (D.C. Cir. 2010) .........................................................18

## STATUTES AND REGULATIONS

21 U.S.C. § 355(j)(5)(A) ................................................................20

21 U.S.C. § 355(j)(5)(B) ..............................................................1, 5

21 U.S.C. § 355(j)(5)(B)(iv) .........................................................4, 5

21 U.S.C. § 355(j)(5)(B)(iv)(I) ..........................3, 7, 8, 12, 13, 14

21 U.S.C. § 355(j)(5)(B)(iv)(II) ...............................................12, 16

21 U.S.C. § 355(j)(5)(B)(iv)(II)(aa) .........................................13, 16

21 U.S.C. § 355(j)(5)(D) ................................................................18

21 U.S.C. § 355(j)(5)(D)(i) ......................................................10, 11

21 U.S.C. § 355(j)(5)(D)(i)(I) ........................................................18

21 U.S.C. § 355(j)(5)(D)(i)(I)(bb) .......................................12, 13, 26

21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(BB) ..........................................25

21 U.S.C. § 355(j)(5)(D)(i)(II) .......................................................17

21 U.S.C. § 355(j)(5)(D)(i)(III) ......................................................17

21 U.S.C. § 355(j)(5)(D)(i)(IV) .......................................3, 17, 20, 21

21 U.S.C. § 355(j)(5)(D)(i)(V) .......................................................17

21 U.S.C. § 355(j)(5)(D)(ii) .....................................................10, 13

21 U.S.C. § 355(q)(1)(G) ..........................................................24, 25

21 C.F.R. § 314.107(c)(1) (1995 to 2016) .......................................8

## OTHER AUTHORITIES

149 Cong. Rec. S15746 (daily ed. Nov. 24, 2003) ....................................................22

149 Cong. Rec. S15884 (daily ed. Nov. 25, 2003) .............................................7, 17

Fed. R. Civ. P. 8(a) ................................................................................................25

# GLOSSARY

| Abbreviation/acronym | Description |
|---|---|
| '369 ANDA | abbreviated new drug application No. 214,369 |
| '370 ANDA | abbreviated new drug application No. 214,670 |
| Actavis | Actavis Laboratories FL, Inc. |
| ANDA | abbreviated new drug application |
| FDA | Food and Drug Administration |
| HE | overt hepatic encephalopathy |
| IBS-D | irritable bowel syndrome with diarrhea |
| Norwich | Norwich Pharmaceuticals, Inc. |
| Teva | Teva Pharmaceuticals USA, Inc. |
| Salix | Salix Pharmaceuticals, Inc. |

## INTRODUCTION

It may be helpful to step back and consider what is at stake in this case.

Congress enacted the Hatch-Waxman Act to facilitate rapid approval of generic drugs to treat patients "as soon as patents allow." *Caraco Pharm. Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 405 (2012). To determine that date, FDA must analyze "each certification made" in an ANDA under four statutory timing rules, derive the date associated with each certification, and select the "last applicable date" as the effective date. 21 U.S.C. § 355(j)(5)(B). In general, a branded drug's patent blocks approval of an ANDA certifying to that *same* patent, until the patent expires or is proven invalid or not infringed. *Id.* And Congress allowed first *and* subsequent ANDA applicants to prove patent invalidity and noninfringement, and then quickly come to market after making that showing.

FDA's Response Brief advances the remarkable proposition that Congress's reticulated statutory scheme does *not* provide for generic approval "as soon as patents allow," but many years later. On FDA's view, Congress granted non-patent-holding generic "first applicants" a statutory right to exclude that is far broader than the underlying patents. According to FDA, a certification made by a first applicant challenging *any* patent associated with a drug can block approval of all other ANDAs for that same drug, including for different, *unpatented* uses. Here, for example, FDA found that first-applicant Actavis's certification to a patent for the treatment of overt

1

hepatic encephalopathy ("HE") blocked approval of Norwich's ANDA for the non-patented treatment of irritable bowel syndrome with diarrhea ("IBS-D").

Crucially, FDA and the district court agree that the 180-day exclusivity did not reach *non*-patented uses *prior* to Congress's 2003 amendments: Then, a first applicant's certification could not block a subsequent ANDA unless the subsequent ANDA *also* made a certification to the same patent. Thus, the blocking reach of the 180-day exclusivity period did not extend beyond the underlying patents, and approval was possible "as soon as patents allow." *Caraco*, 566 U.S. at 405.

All parties also agree that Congress intended the 2003 amendments to do away with the problem of multiple exclusivity periods. Prior to 2003, FDA construed the Act to permit more than one 180-day exclusivity period for a single drug. For example, for a drug subject to 3 patents covering 3 indications (conditions/diseases), an applicant could benefit from the 180-day exclusivity period for the treatment of skin cancer in 1990; then, 5 years later, there could be another 180-day exclusivity period for the treatment of bone cancer; then, 5 years later, there could be another 180-day exclusivity period for the treatment of lung cancer. But, at least, once each 180-day exclusivity period expired, the market was open for ANDAs treating *that* (now-unpatented) indication. Congress's amendments foreclosed such multiple exclusivity periods, providing that each "drug product" could be subject to at most

one 180-day exclusivity period, running, and expiring, 180 days after initial marketing by "any first applicant."  21 U.S.C. § 355(j)(5)(B)(iv)(I).

The central question here is:  Is FDA correct that when Congress amended the statute to *eliminate* multiple exclusivity periods, it also massively *expanded* the reach of the exclusivity to block approval of *unpatented* uses?  That is, was Congress really *preserving and expanding upon* the pre-2003 multiple exclusivity periods, by providing that generics cannot be approved until *every single one* of the multiplicity of pre-2003 180-day exclusivity periods had expired?  To accept FDA's interpretation, the Court would need to find that in the very amendments that sought to accelerate generic entry and eliminate multiple exclusivity periods, Congress also *delayed* the entry of generics for unpatented uses years beyond the pre-2003 status quo.  The statute's text, structure, and history foreclose FDA's interpretation.

Alternatively, Actavis also forfeited any 180-day exclusivity period because it "fail[ed] to obtain tentative approval" within 30 months of filing its ANDA—or indeed, for nearly a decade.  *Id.* § 355(j)(5)(D)(i)(IV).  FDA's claim that this requirement should be excused because the delay in approval was "caused in part by" a change in FDA approval requirements is atextual and unavailing.

This Court should reverse, with instructions to grant Norwich summary judgment.

# ARGUMENT

## I. ACTAVIS'S CERTIFICATION TO THE HEPATIC ENCEPHALOPATHY PATENT DOES NOT BLOCK APPROVAL OF NORWICH'S APPLICATION EXCLUDING THAT PATENTED USE

The district court held that there were two distinct ways in which Actavis's HE patent certification blocked approval of Norwich's ANDA to treat IBS-D (not HE). It concluded that the HE patent certification blocked approval of Norwich's ANDA *directly* under the 180-day exclusivity period provision in § 355(j)(5)(B)(iv). Alternatively, the court concluded that the certification blocked approval *indirectly* under the forfeiture provision in § 355(j)(5)(D). FDA defends only the second conclusion, but both are wrong for the same reason: A first applicant's patent certification cannot block approval of a subsequent ANDA under either provision if the subsequent ANDA does not contain a certification to *that* patent. This is how Congress ensured approval "as soon as patents allow." *Caraco*, 566 U.S. at 405.

### A. Actavis's Hepatic Encephalopathy Patent Certification Does Not Directly Block Approval Of Norwich's Application, Because Norwich Did Not Certify To That Patent

As Norwich has explained, the district court concluded that Actavis's HE patent certification directly blocked approval of Norwich's ANDA under the 180-day exclusivity period provision, 21 U.S.C. § 355(j)(5)(B)(iv). JA794-95 (Dkt. 82 at 26-27). The court so-concluded because Norwich made a Paragraph IV certification to *any* (non-HE) patent, and Actavis made a Paragraph IV certification

4

to *any* (HE) patent. *Id.* So on the court's view, if a first applicant maintains *any* Paragraph IV certification for any use of a drug, that certification blocks approval of other *unpatented* uses of the drug in other ANDAs. *Id.* For example, Actavis, the first applicant, could have sought FDA approval *solely* to treat HE, and yet its ANDA would block approval of Norwich's ANDA *solely* to treat IBS-D. *See id.*

Norwich's Opening Brief explained (at 26-37) why that interpretation is incorrect: A first applicant's certification only directly blocks approval of a subsequent applicant's ANDA under § 355(j)(5)(B)(iv) where the subsequent applicant also certifies to *that* specific patent. 21 U.S.C. § 355(j)(5)(B)(iv). Congress directed FDA to apply four statutory timing rules to "each certification made" by the subsequent applicant. *Id.* § 355(j)(5)(B). This instruction informs the meaning of timing rule (iv), the 180-day exclusivity period, which provides that: "Subject to subparagraph (D), if the application contains *a certification* described in paragraph (2)(A)(vii)(IV) and is for a drug for which a first applicant has submitted an application containing *such a certification*, the application shall be made effective on the date that is 180 days after" the first applicant begins marketing. *Id.* § 355(j)(5)(B)(iv) (emphases added). The term "a certification" in each of timing rules (i)-(iv) refers to a specific certification with particular contents made by a subsequent applicant considered individually, one at a time, under each timing rule. Opening Br. 26-37. Thus, the 180-day exclusivity period can arise only from "a

certification" by a subsequent applicant under Paragraph IV if the first applicant also made "such a certification," *i.e.*, one to *that* patent. *Id.*

FDA does not dispute that Norwich's interpretation of "such a certification," which FDA itself maintained by regulation from 1994 to 2016, is the best reading of the statute. Instead, FDA argues that this Court need not reach this issue of whether the HE patent certification *directly* blocks approval of Norwich's ANDA for the treatment of IBS-D under § 355(j)(5)(B)(iv), because this Court could simply hold that Actavis's HE patent certification *indirectly* blocks approval of Norwich's ANDA under the distinct forfeiture provision in § 355(j)(5)(D). But as discussed below, FDA is wrong that the HE patent certification indirectly blocks Norwich's ANDA. *Infra* at 9-20.

Only Actavis (through its parent, Teva) attempts to defend the district court's direct-blocking rationale. Actavis does not dispute that Congress adopted Norwich's interpretation of "such a certification" with its original 1984 enactment, and readopted this same text in 2003 without pertinent change. Opening Br. 32-37. Actavis offers no real explanation for how Congress's 2003 amendments readopting this "such a certification" language somehow overturned the original meaning of that text *and* FDA's longstanding regulation implementing it. Nor does Actavis dispute that its reading renders much of timing rule (iv) surplusage. *Id.*

Instead, Actavis argues (at 39-40) that the 2003 amendments "rejected a

patent-by-patent approach to 180-day exclusivity in favor of a 'drug-product approach.'" Norwich agrees: Congress's 2003 amendments adopted a "drug-product approach," namely, they prohibited more than one exclusivity *period* for a given drug product like rifaximin. *See* 21 U.S.C. § 355(j)(5)(B)(iv)(I); 149 Cong. Rec. S15884 (daily ed. Nov. 25, 2003). Congress's change to a "drug-product approach" as a procompetitive, pro-entry reform shows why Norwich is correct.

FDA historically read the statute to mean that *each* Paragraph IV certification made by *any* previous ANDA applicant allowed a separate 180-day exclusivity period arising from *that* certification, repeatedly, over years, with FDA's expansive "multiple exclusivity period[]" interpretation known as "'patent based' exclusivity." *Apotex, Inc. v. FDA*, 414 F. Supp. 2d 61, 64 (D.D.C. 2006). In 2003, Congress provided a *single* "drug-product based" 180-day period of exclusivity for each drug product. *See id.*; 149 Cong. Rec. at S15884. Specifically, Congress provided that a single exclusivity period would run *once* for *all* first applicants upon the commencement of marketing by "*any* first applicant." 21 U.S.C. § 355(j)(5)(B)(iv)(I) (emphasis added). Tellingly, Actavis fails to address this pivotal text that implements this "product based" or "one-and-done" exclusivity.

By contrast, Congress in 2003 *maintained* without change its 1984 text providing for exclusivity only if the prior applicant made "such a certification," *i.e.*, the same certification to the same patent as the subsequent applicant. *Id.* So if there

was any doubt as to Congress's original meaning, Congress ratified FDA's longstanding regulation interpreting that same text in 2003. Opening Br. 32-37.[1]

There is good reason for Congress's "such a certification" text: It allows entry for *un*patented uses "as soon as patents allow." *Caraco*, 566 U.S. at 405. Namely, a subsequent applicant can make a Paragraph IV certification, show invalidity or noninfringement of *that* patent, then come to market for *that* use, irrespective of a first applicant making Paragraph IV certifications to *other* patents. 21 U.S.C. § 355(j)(5)(B)(iv)(I). As a result, the statute also incentivizes first applicants to maximize the breadth of their challenges to patents, since the breadth of the potential blocking effect of the 180-day exclusivity period expands with each additional patent that the first applicant challenges. *See id.* (This is not the same thing as *multiple exclusivity periods*, but rather the *scope* of the single exclusivity period is broader.)

By contrast, Actavis's interpretation *expands* the scope of exclusivity to allow a first applicant's single certification to *any* use of a drug to block approval of the *entire drug product* for unpatented uses unrelated to that certification. Opening Br. 35-37. That interpretation thus limits incentives for first applicants to bring broad

---

[1]    Actavis claims (at 40-41) that as of 2003, it was not fully settled whether FDA's multiple-exclusivity-period interpretation was permissible. Perhaps, but FDA's regulation interpreting "such a certification" to require the *same* certification was settled and unchallenged. *See* 21 C.F.R. § 314.107(c)(1) (1995 to 2016).

patent challenges. And in its practical effect, Actavis's interpretation maintains the old, pre-2003 multiple exclusivity periods, on steroids. *See id.* Before 2003, there could be multiple 180-day exclusivity periods spread over years for each patented use, after which each (now) unpatented use became available to patients. *Supra* at 7-8. According to Actavis, today, a first applicant can block *all* non-patented uses of that drug by certifying to a *single* patent, *i.e.*, benefit from *all* of the pre-2003 multiple exclusivity periods, and more. Thus, in Actavis's view, its certification to the HE patent blocks approval of Norwich's ANDA for the unrelated treatment of IBS-D—and any other unpatented uses. The text forecloses that result.

> **B.** **Actavis's Hepatic Encephalopathy Patent Certification Does Not Indirectly Block Approval Of Norwich's Application, Because Norwich Did Not Certify To That Patent**

FDA argues (at 29-43) that, even if Norwich were correct that Actavis's HE patent certification cannot *directly* give rise to the 180-day exclusivity delaying approval of Norwich's ANDA, Actavis's certification *indirectly* blocks approval of Norwich's ANDA under the forfeiture provision. Specifically, FDA argues that (1) *other* matching certifications made by Norwich and Actavis (to the IBS-D and polymorph patents) implicate timing rule (iv) (this is correct), which in turn (2) requires a forfeiture to occur with respect to any and all Paragraph IV certifications made solely by the first applicant, Actavis, *i.e.*, the HE certification (this is wrong).

Contrary to FDA's interpretation, Congress did not enact a *forfeiture* provision to block approval *more broadly* than the 180-day exclusivity provision itself does.

> 1.     **The Statute's Text And Structure Require A Forfeiture Only As To Certifications Delaying Approval Of The Subsequent Applicant's ANDA Under § 355(j)(5)(B)(iv)**

The statute's text and structure show that a forfeiture must occur only with respect to certifications "qualifying" a first applicant for the 180-day exclusivity period in § 355(j)(5)(B)(iv), *i.e.*, those that could delay approval of the subsequent ANDA under § 355(j)(5)(B)(iv). *See* 21 U.S.C. § 355(j)(5)(D)(i)-(ii). Because Norwich did not certify to the HE patent, Actavis's HE patent certification is not a "qualifying" certification, and no forfeiture was required as to that certification.

All parties agree that the relevant question is whether there has been an event giving rise to forfeiture for "each of the patents with respect to which the first applicant submitted and lawfully maintained a certification *qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv)*." *Id.* § 355(j)(5)(D)(i) (emphasis added). Since FDA found that Actavis's IBS-D and polymorph patent certifications are "qualifying" certifications that *have* been subject to forfeiture, the present dispute is whether Actavis's HE patent certification is a "qualifying" certification, given that it has *not* been subject to forfeiture.

FDA believes that the first applicant's "qualifying" certifications are *not* those that can actually delay approval of the subsequent ANDA subject to FDA review under § 355(j)(5)(B)(iv), but rather those certifications that could theoretically delay approval of *another hypothetical* ANDA under § 355(j)(5)(B)(iv). On FDA's view, then, Actavis's HE patent certification is "qualifying," even though Norwich did not certify to that patent, because *Actavis* certified to it in its first-day ANDA. So FDA believes the dispositive question is which certifications are those "qualifying the first applicant **as a first applicant** ~~for the 180-day exclusivity period under subparagraph (B)(iv)~~," *i.e.*, in its first-day application. *Id.* (as modified per FDA's interpretation).

To rewrite the statute this way, FDA reasons (at 30-33) that: (1) the sole condition for an applicant to qualify for the "180-day exclusivity period" is to qualify as a "first applicant," (2) the certifications that qualify an applicant as a "first applicant" are *any* Paragraph IV certifications contained in its first-day application, (3) hence, the certifications that qualify for the "180-day exclusivity period" are any Paragraph IV certifications contained in a first applicant's first-day application.

But FDA's first premise (1), that the sole condition for an applicant to qualify for the "180-day exclusivity period" is to qualify as a "first applicant," is an FDA invention, divorced from the text. In actuality, Congress chose a precise construction: Events giving rise to forfeiture must occur for "each of the patents with respect to which the first applicant submitted and lawfully maintained a

certification qualifying the first applicant for *the 180-day exclusivity period **under subparagraph (B)(iv)*.*"  21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)  (emphasis added). Tellingly, FDA chooses to delete throughout its brief (at 11, 19, 21, 25, 30, 31, 34, 35) this bolded text directing FDA to refer to "subparagraph (B)(iv)."  No wonder: Three textual clues in "subparagraph (B)(iv)" all point in the same direction, namely, that § 355(j)(5)(B)(iv)(**I**), the 180-day exclusivity period's operational provision, identifies the "certifications" "qualifying" the "first applicant" for the "180-day exclusivity period" under subparagraph (B)(iv).  *Id.*

  **1. The Operational Provision:**  Section 355(j)(5)(B)(iv) is labeled the "180-day exclusivity period," and contains two provisions, (I) the operational provision, § 355(j)(5)(B)(iv)(I), delaying approval by "180 days" based on a "certification" made by the "first applicant" when the subsequent application contains "such a certification," and (II) the definitional provision, § 355(j)(5)(B)(iv)(II), containing four definitions.  When the statute speaks of "*certification[s] … qualifying the first applicant* for the *180-day exclusivity period* under subparagraph (B)(iv)" in the forfeiture provision, *id.* § 355(j)(5)(D)(i)(I)(bb), that text maps directly onto the text of the operational provision, which describes *which* "certification[s]" made by a "first applicant" can delay effectiveness by "180 days," *id.* § 355(j)(5)(B)(iv)(I).

  **2. The Definitional Provision:**  Another clue leads back to the operational provision, § 355(j)(5)(B)(iv)(I):  The statute refers to certifications "qualifying the

first applicant for the *180-day exclusivity period* under subparagraph (B)(iv)." *Id.* § 355(j)(5)(D)(i)(I)(bb) (emphasis added). The "180-day exclusivity period" is defined as "the 180-day period ending on the day before the date on which an application submitted by an applicant other than a first applicant *could become effective under this clause*." *Id.* § 355(j)(5)(B)(iv)(II)(aa) (emphasis added). No one disputes that "this clause" is § 355(j)(5)(B)(iv). And the only portion of § 355(j)(5)(B)(iv) that discusses when an application "could become effective" is, again, the operational provision, § 355(j)(5)(B)(iv)(I), which describes when a subsequent application "shall be made effective," and *which* "certification[s]" can delay effectiveness by "180 days." *Id.* § 355(j)(5)(B)(iv)(I); *see also Cyan, Inc. v. Beaver Cnty. Emp. Ret. Fund*, 583 U.S. 416, 428 (2018) (explaining how Congress distinguishes between definitional and operational provisions).

**3. The Structure:** The forfeiture provision is structured to forfeit the 180-day exclusivity period under the operational provision, § 355(j)(5)(B)(iv)(I), when the operational provision is applied to "each" *specific* patent certification "made" in the subsequent application. *See* 21 U.S.C. § 355(j)(5)(B)(iv)(I) (making the 180-day exclusivity period "[s]ubject to subparagraph (D)," the forfeiture provision); *id.* § 355(j)(5)(D)(ii) ("The *180-day exclusivity period described in subparagraph (B)(iv)* shall be forfeited by a first applicant if a forfeiture event occurs with respect to that first applicant." (emphasis added)). The express cross-references between

13

§ 355(j)(5)(B)(iv)(I) and § 355(j)(5)(D) make clear that exclusivity needs to be forfeited if, and only if, it could arise from a specific patent certification made in *the subsequent ANDA* under § 355(j)(5)(B)(iv)(I).  Opening Br. 38-40.

So we know that the qualifying certifications are those that could give rise to the 180-day exclusivity period under the operational provision, § 355(j)(5)(B)(iv)(I).  And as explained, the only certifications that could give rise to the 180-day exclusivity period under § 355(j)(5)(B)(iv)(I) are those made by both the first applicant and the subsequent applicant.  *Supra* at 4-9.  That is, § 355(j)(5)(B)(iv)(I) cannot have any force or effect—it is entirely ineffectual and cannot be applied at all—without knowing the identity of each certification made in the subsequent ANDA, and whether the first applicant made "such a certification."  *Id.*

FDA acknowledges this expressly:  "The provision that is specific to the subsequent applicant is the one captioned '[e]ffectiveness of application'" that determines the approvability of "'the application' for which FDA is considering approval."  FDA Br. 39 (quoting 21 U.S.C. § 355(j)(5)(B)(iv)(I)).  FDA seemingly recognizes that, if § 355(j)(5)(B)(iv)(I) did provide the "qualifying" certifications, FDA would lose this case, because § 355(j)(5)(B)(iv)(I) analyzes the certifications made by the subsequent applicant.  *See id.*  But § 355(j)(5)(B)(iv)(I) *does* define the qualifying certifications.  *Supra* at 12.  That should be dispositive.

FDA overlooks another related, structural problem with its construction: That, on FDA's view, the "forfeiture" provision has broader *blocking* effect than the 180-day exclusivity period itself. On FDA's view, even if a first applicant's certification cannot give rise to the 180-day exclusivity period when § 355(j)(5)(B)(iv)(I) is applied to the subsequent ANDA under FDA consideration, that certification gives rise to a freestanding "first applicant" status under § 355(j)(5)(D) that *does* block approval of the ANDA. FDA cannot be right that the forfeiture provision indirectly blocks approval of a subsequent ANDA more broadly than "the 180-day exclusivity period" in § 355(j)(5)(B)(iv) itself blocks approval directly: The entire point of the forfeiture provision was to *limit* the impact of the exclusivity and *reduce* parking, not expand upon it. Opening Br. 47-48.

FDA's construction makes no structural sense for a second reason. If Congress really wanted to grant "first applicants" a freestanding status based solely on their certifications, it could have said so directly, by providing that no subsequent ANDA containing a Paragraph IV certification shall be approved unless "the first applicant(s) forfeit all of their first-day Paragraph IV certifications," *i.e.*, unless they "forfeit all certifications qualifying them as first applicants." Instead, Congress embedded the forfeiture provision *within* timing rule (iv), which runs on "each certification made" *by the subsequent applicant*, in a loop, potentially dozens of times for dozens of the subsequent applicant's certifications. Why would Congress

instruct FDA to loop through this "forfeiture" rule multiple times, if the subsequent ANDA's certifications are (allegedly) entirely irrelevant?

FDA also plucks some words out of the definition of the "180-day exclusivity period" (at 39) to argue that a first applicant's certification need not block *the* subsequent applicant under FDA review, but merely "could" block some other "applicant." But FDA is ignoring the definition's full text: "The 180-day period ending on the day before the date on which an *application submitted by an applicant* other than a first applicant *could become effective under this clause*." 21 U.S.C. § 355(j)(5)(B)(iv)(II)(aa) (emphases added). As explained, "this clause" refers to § 355(j)(5)(B)(iv), and in turn, the operational provision § 355(j)(5)(B)(iv)(I), which provides when an ANDA "could" (can) become effective "under this clause." *Id.* Again, the text leads back to the operational provision, which FDA again ignores.[2]

Finally, Actavis argues (at 31-35) that FDA's interpretation of "qualifying" certifications must be right because, Actavis alleges, events giving rise to forfeiture can supposedly occur without any subsequent ANDA at all. Actavis's argument is misdirected. For example, Actavis points out (at 34) that a forfeiture occurs if "[t]he first applicant amends or withdraws the certification for all of the patents with

---

[2]     FDA also overlooks that the statute defines "the 180-day exclusivity period" as a <u>180-day</u> period that only blocks an ANDA if and when a first applicant *timely begins marketing*. 21 U.S.C. § 355(j)(5)(B)(iv)(II). A "qualifying" certification thus is one that "could" potentially give rise to the 180-day exclusivity period delaying the subsequent ANDA *if, and only if, the first applicant timely came to market*.

respect to which that applicant submitted a certification qualifying the applicant for the 180-day exclusivity period." 21 U.S.C. § 355(j)(5)(D)(i)(III). But this provision, again, depends on which patents are those giving rise to certifications "qualifying the applicant for the 180-day exclusivity period." As explained, a certification made only by a first applicant is not such a "qualifying" certification. *Supra* at 13-14.[3]

### 2. The Statute's History and Purpose Also Support Norwich's Interpretation

FDA tellingly fails to respond to Norwich's arguments that FDA's view—that the forfeiture provision expands upon the blocking effect of the 180-day exclusivity provision—flouts the statute's history and purpose to *limit* delays caused by 180-day exclusivity and curtail the parking of exclusivity. Opening Br. 47-48; 149 Cong. Rec. at S15884 (The forfeiture provisions were enacted to "prevent parking," end this bottleneck to competition, and ensure "more timely" generic approval.).

Actavis, for its part, suggests (at 42-43) that its interpretation incentivizes first applicants to file—but not fully litigate—one or more Paragraph IV certifications. Perhaps, but that is not the balance Congress chose. Congress designed exclusivity

---

[3] There are other types of forfeiture events that do not refer to "qualifying" certifications, for example, arising where a first applicant fully withdraws its first-day application, fails to timely obtain tentative approval, or violates the antitrust laws. 21 U.S.C. § 355(j)(5)(D)(i)(II), (IV), (V). But, as Salix seems to recognize, these other types of forfeiture events do not elucidate the meaning of "qualifying" certifications with respect to the forfeiture provisions that *do* turn on the identity of the "qualifying" certifications.

as an incentive to first applicants for "successfully … showing the invalidity or inefficacy" of branded patents by *fully litigating* patents, not as an incentive for first applicants to certify, settle, and then block the entire market, as Actavis did here. *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1304, 1318 (D.C. Cir. 2010).

Actavis also ignores the incentives Congress provided *subsequent* applicants to show that their ANDAs are not subject to any valid, applicable patents, obtain favorable patent judgments, and thus "forfeit" the first applicant's exclusivity to leapfrog it onto market. 21 U.S.C. § 355(j)(5)(D)(i)(I). This is *how* Congress ensured approval of generic drugs "as soon as patents allow": By incentivizing *multiple* applicants to test if their specific ANDA use-cases are approvable. *Caraco*, 566 U.S. at 405. If so, the first applicant either needs to timely obtain approval for that *unpatented* use of the drug and enjoy its 180-exclusivity period, or subsequent applicants *as a whole* can leapfrog it to enter the market. 21 U.S.C. § 355(j)(5)(D).

By contrast, the incentives under FDA's interpretation are the *opposite* of Congress's text. On FDA's view, first applicants benefit from *delaying* entry by *settling*, assured that even *unpatented* ANDAs cannot gain approval. Why risk fully litigating, given that first applicants lose exclusivity if they litigate and *lose* on a given patent? *See Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1363 (Fed. Cir. 2015). Subsequent applicants lack incentives to prove that they seek approval of *unpatented* uses, since *any* first-applicant Paragraph IV certification bars their

approval.  And branded drugs benefit from maximizing the filing of *invalid* patents, and foreclosing the entire market via Paragraph IV certifications to these *invalid* patents (as occurred here, since the invalid IBS-D and polymorph patents are implicated by timing rule (iv) and require a forfeiture to every "qualifying" patent).

Making matters worse, FDA and Actavis do not dispute Norwich's showing that FDA's interpretation means that Congress's 2003 amendment to add the *forfeiture* provision effectively *preserves and expands upon* the multiplicity of pre-2003 exclusivity periods.  Opening Br. 47-48.  Prior to 2003, the statute allowed a series of different 180-day exclusivity periods, associated with each patented use, after which other ANDAs were approvable for *that* use.  *Id.*  Yet on FDA's current view, a first applicant can block entry in the same manner as (and more broadly than) the pre-2003 multiple periods of exclusivity.  That is, a first applicant can block all ANDAs for a drug product for all patients for all unpatented uses until all patents subject to the first applicant's Paragraph IV certifications expire or are forfeited, in effect, until *all* of the pre-2003 multiple exclusivity periods run out.  JA791-802 (Dkt. 82 at 23-34 & nn.6-8).  FDA has no explanation for why Congress, in seeking to eliminate multiple exclusivity periods, effectively preserved and expanded them.

Rather than addressing the "parking" problem that Congress was actually trying to solve in 2003, FDA's interpretation of the "forfeiture" provision effectively merges together and expands the multiplicity of pre-2003 exclusivities into a single

block of "super exclusivity" covering all conditions and all uses of a drug covered by the first applicant's Paragraph IV certifications, until the last patent governing any use expires or is subject to forfeiture. That is the opposite of Congress's text.

## II. ALTERNATIVELY, ACTAVIS FORFEITED ANY EXCLUSIVITY BECAUSE ███████████████████ PRECLUDED APPROVAL OF ITS APPLICATION FOR OVER 30 MONTHS

Alternatively, Norwich's ANDA is approvable because Actavis forfeited any 180-day exclusivity by failing to timely obtain tentative approval.

### A. Actavis Forfeited Exclusivity By Failing To Obtain Tentative Approval By June 18, 2018

A "first applicant" that fails to "obtain tentative approval of the application within 30 months after the date on which the application is filed" generally forfeits the 180-day exclusivity period. 21 U.S.C. § 355(j)(5)(D)(i)(IV). FDA does not dispute that ███████████████ approval of Actavis's ANDA within 30 months, and indeed, for over seven years. (For context, the statute contemplates that ANDAs shall be approved or denied within 180 days of filing. *Id.* § 355(j)(5)(A).)

FDA argues that Actavis's ███████████ ANDA should block all generic rifaximin ANDAs indefinitely because Actavis's failure to obtain tentative approval by June 18, 2018, was "caused at least in part[] by" FDA's change in review standards. JA358 (AR2). But that is not what the statute says. Actavis's failure to timely obtain tentative approval may only be excused if it "is *caused by* a change in

or a review of the requirements for approval of the application." 21 U.S.C. § 355(j)(5)(D)(i)(IV). The default meaning of "caused by" and similar causal language "require[s] but-for causality," *i.e.*, a necessary cause. *Burrage v. United States*, 571 U.S. 204, 210, 212 (2014). It is undisputed that FDA's change in review standards was *not* a but-for (necessary) cause of the delay in approval beyond June 18, 2018, because the ANDA ███████████████████████████████ ███████████

FDA instead argues that but-for causation is not required. Rather than meaningfully contend with the ordinary, public meaning of "caused by," or *Burrage*, or any of the other cases that Norwich cites, FDA relies on a single D.C. Circuit decision that, far from undercutting Norwich's theory of causation, reaffirms it. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004). Norwich does not contend "caused by" always requires but-for causation: Rather, "caused by" provides a default of but-for causation "[w]here there is no textual or contextual indication to the contrary." *Burrage*, 571 U.S. at 210-12.

In *Kilburn*, there were multiple such "contrary" textual indications: This Court interpreted "jurisdictional causation," *i.e.*, whether the court had jurisdiction over claims for transnational terrorism. 376 F.3d at 1129. The Court found that, in this more-expansive "jurisdictional" context, "caused by" simply connoted

"proximate cause," *i.e.*, non-remoteness, rather than factual but-for cause. *Id.* The issue of factual cause would be determined later as a matter of "substantive law," *e.g.*, tort law, which could supply a higher (*e.g.*, but-for) standard under its "own rules of causation." *Id.* But for *jurisdiction*, a looser standard applied. *Id.*

There was a second contrary textual indication: Requiring but-for causation where "multiple foreign states" are each a *sufficient* cause of a terrorist act would absolve all of the terrorist states of liability, since none would be a "but-for" (necessary) cause. *Id.* "Such a case, in which application of a 'but for' standard to joint tortfeasors could absolve them all, is precisely *the one* for which courts generally regard 'but for' causation as inappropriate." *Id.* (emphasis added). But this case involves nothing like risking absolving joint wrongdoers of liability.

Here, FDA fails to identify any such "textual or contextual" basis to depart from the ordinary meaning of "caused by" in § 355(j)(5)(D)(i)(IV). *Burrage*, 571 U.S. at 210, 212. Rather, Congress added this forfeiture provision to "ensure that the 180-day exclusivity period enjoyed by the first generic to challenge a patent cannot be used as a bottleneck to prevent additional generic competition." 149 Cong. Rec. S15746 (daily ed. Nov. 24, 2003). Congress did not authorize a first applicant to park a ███████████████ ANDA indefinitely after a change in FDA's review standards that, *whether or not it had occurred*, would not alter that the ANDA was ██████████████████████████████████. *See id.*

FDA asserts (at 48) that the default causation standard should differ between the criminal and tort context, on one hand, and other civil contexts. But if that is true (and it is not clear it is), it cuts against FDA. As described, in the criminal and tort contexts, causation is sometimes *more relaxed* than the "but-for" default, to avoid excusing joint wrongdoing. *Supra* at 22. By contrast, "but for" causation is the normal, default requirement even *more strongly* in other, civil contexts.[4]

Actavis suggests (at 48-49) that FDA's expertise can shed light on the statutory interpretation question. But FDA's interpretation is only "informative 'to the extent it rests on factual premises within [the agency's] expertise.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). The plain meaning of "caused by" hardly rests on a factual premise within FDA's bailiwick, like the chemical composition or safety of drugs.

The conventional but-for standard *also* protects first applicants. If an ANDA is otherwise scientifically approvable, a change in approval requirements that delays approval will not result in forfeiture. But a first applicant cannot foreclose the entire market for over seven years by effectively "squatting" on a ████████████ ████ ANDA that remained *undisputedly* ██████ , as occurred here.

---

[4]   *See, e.g.*, *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 708 (D.C. Cir. 2024) (per curiam) (Clean Air Act); *United States ex. rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 834-35 (8th Cir. 2022) (False Claims Act).

**B. Even Under FDA's Incorrect Causation Standard, Actavis Forfeited Any Exclusivity By Failing To Obtain Tentative Approval By November 16, 2018**

Even under FDA's own "caused in part" standard, Actavis *still* forfeited its exclusivity by failing to come to market by November 16, 2018, *i.e.*, the extended deadline the statute would provide assuming *arguendo* that this change in FDA review standards *did* in fact "cause" delay in tentative approval of Actavis's ANDA. *See* 21 U.S.C. § 355(q)(1)(G); Opening Br. 55-57.

FDA continues to argue that Norwich waived this argument (or made the opposite argument below), but fails to contend with Norwich's argument in the record below that "even if approval had been delayed 'because of' Salix's 2016 petition," it could "only extend the 30-month tentative approval deadline by just under five months," so "Teva [Actavis] had long-since forfeited any exclusivity," even if forfeiture had been "tolled" while the petition was pending. JA741-42 (AR819-20). That is the same argument Norwich maintains today. Moreover, under *Sandoz, Inc. v. Becerra*, no waiver *could* occur anyways. 57 F.4th 272, 274 (D.C. Cir. 2023).

On the merits, FDA simply tries to insert words into the statutory text. Section 355(q)(1)(G) states: "If … approval of the [first applicant's] application was *delayed because of a petition*, the 30-month [forfeiture] period … is deemed to be extended by …." FDA would have the statute read, instead, that the ANDA must be

delayed because of "*consideration*" of a petition. FDA Br. 50. But "consideration" was not included in the statute by Congress. If FDA is right about the causation standard, then it follows approval of Actavis's application was "delayed because of [Salix's] petition." 21 U.S.C. § 355(q)(1)(G). The statute requires no more.

## III. SALIX'S FOUR NEW ISSUES ON APPEAL SHOULD NOT BE CONSIDERED

Salix also raises four new issues on appeal, not subject to Norwich's Complaint and not addressed by the district court. These issues should not be considered. First, to the extent Salix, as a *competitor* to Norwich, has objections to FDA's tentative approval decision, it cannot be harmed, and its claims are not ripe, prior to a *final* FDA decision approving Norwich's ANDA. *See Pfizer, Inc. v. Shalala*, 182 F.3d 975, 980 (D.C. Cir. 1999). Second, Salix cannot bring additional challenges to FDA's decision by piggybacking on *Norwich's* Complaint, rather than filing its own complaint. *See* Fed. R. Civ. P. 8(a). Regardless, Salix's challenges all fail.

**"Judgment" of Non-Infringement:** Salix argues (at 7-10) that FDA erred in finding that the parties' stipulation of non-infringement in the '369 ANDA patent litigation is a "judgment" that results in forfeiture as to the polymorph patents. The statute is to the contrary. A forfeiture event occurs when "a court signs a settlement order … that enters a final judgment that includes a finding that a patent is … not infringed." 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(BB). Here, the Delaware court

signed a stipulated order providing that "[a] final judgment of noninfringement be entered with respect to Norwich's current ANDA No. 214369 … concerning each claim of ... the '196 Patents; the '949 Patent; [and] the '904 Patent." Stip. & Proposed Order 2-3, *Salix Pharm., Ltd. v . Norwich Pharm., Inc.*, No. 20-430 (D. Del. May 12, 2022), Dkt. No.180 ("Stip. & Order"). The statute requires nothing more.

**Amendment to '369 ANDA:** Salix argues (at 10-12) that FDA erred in finding that the Parties' stipulation of non-infringement in the '369 litigation results in a forfeiture with respect to the polymorph patents, because subsequent to that stipulation, Norwich amended its '369 ANDA. But again, that is not what the statute provides: It provides that forfeiture occurs as to a given certification, where, "with respect to … any … applicant … which … has received tentative approval," "in an infringement action [brought against the applicant with respect to the patent], a court signs a settlement order … that enters a final judgment that includes a finding that the patent is invalid or not infringed." 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb). Here, the Delaware court entered "[a] final judgment of noninfringement" in Norwich's favor on the polymorph patents with respect to the '369 ANDA. Stip. & Order 2-3. It is of no moment that Norwich subsequently amended the '369 ANDA: Norwich is an "applicant" who obtained a "final judgment" of noninfringement on the relevant patents and has obtained "tentative approval." The statute requires nothing more.

**30-Month Stay**:  Salix argues (at 12-14) that FDA must decide whether a 30-month stay delays approval of the '370 ANDA.  But as Salix acknowledges (at 13 n.3), FDA found already that a "stay does not attach to ANDA 214370."  JA762 (AR879).  Salix does not (and cannot) challenge that determination here.

**Paragraph III Certification:**  Salix argues (at 14-15) that FDA must decide whether a Paragraph III certification for the *200 mg product* somehow prevents approval of the *550 mg product* actually subject to the operative '370 ANDA.  Here, again, however, Salix attempts to rehash a determination FDA has already made.  When tentatively approving the 550 mg product, FDA reviewed all of the Orange Book patents for Salix's 550 mg product, which does not include the '115 patent, and did not find any obstacle to approval based on the '115 patent.  JA764-65 (AR891-92).  Again, Salix does not (and cannot) challenge that determination here.

# CONCLUSION

For the foregoing reasons, the Court should reverse and instruct the district court to grant Norwich summary judgment.

Dated: October 29, 2025

Respectfully submitted,

*/s/ Andrew D. Prins*

Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
mmurphy@axinn.com

Andrew D. Prins
Rachael L. Westmoreland
Lia Rose Barrett
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.prins@lw.com
rachael.westmoreland@lw.com
lia.barrett@lw.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Suite 2400
Austin, TX 78701
(737) 910-7314
nicholas.schlossman@lw.com

*Counsel for Plaintiff-Appellant Norwich Pharmaceuticals, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii), (f), and (g), and D.C. Cir. Rule 32(e), because it contains 6,298 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

*/s/ Andrew D. Prins*
Andrew D. Prins

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that the confidential version of the foregoing brief was also served on counsel for all parties by electronic transfer.

*/s/ Andrew D. Prins*
Andrew D. Prins
