ARGUED DECEMBER 11, 2025
No. 25-5137

# United States Court of Appeals
# for the District of Columbia Circuit

NORWICH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant*,

v.

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES; DR. MARTIN A. MAKARY, IN HIS
OFFICIAL CAPACITY AS COMMISSIONER OF FOOD AND DRUGS; UNITED STATES FOOD
AND DRUG ADMINISTRATION,

*Defendants-Appellees*,

TEVA PHARMACEUTICALS, INC.; SALIX PHARMACEUTICALS, INC.,

*Intervenors for Defendants-Appellees*.

On Appeal from the United States District Court for the District of Columbia,
No. 1:25-cv-91 (Hon. Beryl A. Howell)

## SUPPLEMENTAL BRIEF OF APPELLANT
## NORWICH PHARMACEUTICALS, INC.
## PUBLIC COPY—SEALED MATERIAL DELETED

Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
mmurphy@axinn.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
(737) 910-7314
nicholas.schlossman@lw.com

January 2, 2026

Andrew D. Prins
Rachael L. Westmoreland
Lia Rose Barrett
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.prins@lw.com
rachael.westmoreland@lw.com
lia.barrett@lw.com

*Counsel for Appellant*
*Norwich Pharmaceuticals, Inc.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.     Parties and Amici

Appellant Norwich Pharmaceuticals, Inc. was plaintiff in the case below.

Appellees Robert F. Kennedy, Jr., Secretary of the Department of Health and Human Services; Martin Makary, Commissioner of Food and Drugs; and the United States Food and Drug Administration were defendants in the case below. Individuals sued in their official capacities have been substituted.

Salix Pharmaceuticals, Inc. and Teva Pharmaceuticals USA, Inc. intervened in support of defendants below and remain intervenors in this appeal.

There were no other parties, intervenors, or amici before the district court, and no amici have appeared in this Court.

### B.     Ruling Under Review

The final judgment under review is the Order granting the Government Defendants' and Intervenor-Defendants' Cross-Motions for Summary Judgment and denying Plaintiff's Motion for Summary Judgment (Apr. 17, 2025), JA301-02 (Dkt. 81); *see also* JA303 (Dkt. 83) (Clerk's judgment). The judgment was supported by a Memorandum Opinion (Apr. 17, 2025), JA304-45, 769-810 (Dkts. 82, 86). The

district court's opinion is available at *Norwich Pharmaceuticals, Inc. v. Kennedy*, No. 1:25-cv-091, 2025 WL 1148463 (D.D.C. Apr. 18, 2025) (Howell, J.).

## C.    Related Cases

This case has not been previously before this Court.  This case involves substantially the same parties and similar issues as *Norwich Pharmaceuticals, Inc. v. Kennedy*, No. 23-5311 (D.C. Cir.).  Oral argument was held for both cases on December 11, 2025.

The following cases also involved the same parties and similar or related issues:  *Salix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567, *and* 145 S. Ct. 983 (2024); *Salix Pharmaceuticals, Inc., et al. v. Norwich Pharmaceuticals, Inc., et al.*, No. 1:24-cv-7140 (D.N.J. filed June 20, 2024).

/s/ *Andrew D. Prins*
Andrew D. Prins

*Attorney for Appellant*
*Norwich Pharmaceuticals, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellant Norwich Pharmaceuticals, Inc. certifies that the following are parent companies, subsidiaries, affiliates, or companies which directly or indirectly own at least 10% of the stock of Norwich Pharmaceuticals, Inc.:  Alvogen Pharma US, Inc.; Lotus Pharmaceutical Co., Ltd.

/s/ *Andrew D. Prins*
Andrew D. Prins

*Attorney for Appellant*
*Norwich Pharmaceuticals, Inc*

iii

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.................................. iii

TABLE OF AUTHORITIES ...................................................................v

GLOSSARY.................................................................................... vii

INTRODUCTION ...............................................................................1

ARGUMENT ....................................................................................5

I.     THE COURT CAN AND SHOULD DETERMINE THAT ACTAVIS
       FORFEITED ANY 180-DAY EXCLUSIVITY PERIOD ............................5

II.    THE RESULT OF ANY REMAND IS PREORDAINED ............................8

       A.     Any Argument That FDA's Change In Approval Requirements
              Was A But-For Cause Of Actavis's Failure To Obtain Tentative
              Approval Has Been Forfeited And Conceded.....................................10

       B.     There Was Good Reason For FDA's and Intervenors'
              Forfeitures And Concessions ............................................................14

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.L. Pharma, Inc. v. Shalala*,
    62 F.3d 1484 (D.C. Cir. 1995) .................................................................5

*American Federation of Government Employees, AFL-CIO v. Federal*
    *Labor Relations Authority*,
    778 F.2d 850 (D.C. Cir. 1985) ..............................................................8

*American Train Dispatchers Association v. ICC*,
    26 F.3d 1157 (D.C. Cir. 1994) ..............................................................6

*Banner Health v. Price*,
    867 F.3d 1323 (D.C. Cir. 2017) ..........................................................12

*BNSF Railway Co. v. Federal Railroad Administration*,
    105 F.4th 691 (5th Cir. 2025) ..............................................................8

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) ...............................................................................9

*Brock v. L.R. Willson & Sons, Inc.*,
    773 F.2d 1377 (D.C. Cir. 1985) ............................................................6

*Burrage v. United States*,
    571 U.S. 204 (2014) .............................................................................14

*Da Silva v. Attorney General*,
    948 F.3d 629 (3d Cir. 2020) .................................................................7

*Dole v. Williams Enterprises, Inc.*
    876 F.2d 186 (D.C. Cir. 1989) ..............................................................6

*Donovan ex rel. Anderson v. Stafford Construction Co.*,
    732 F.2d 954 (D.C. Cir. 1984) ..............................................................6

*Fogg v. Ashcroft*,
    254 F.3d 103 (D.C. Cir. 2001) ..............................................................6

**Page(s)**

*George Hyman Construction Co. v. Brooks*,
    963 F.2d 1532 (D.C. Cir. 1992)...........................................................7

*Grossmont Hospital Corp. v. Burwell*,
    797 F.3d 1079 (D.C. Cir. 2015).........................................................6

*Haselwander v. McHugh*,
    774 F.3d 990 (D.C. Cir. 2014).........................................................12

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969).......................................................................3, 5

*Physicians for Social Responsibility v. Wheeler*,
    956 F.3d 634 (D.C. Cir. 2020).........................................................14

*Prohibition Juice Co. v. FDA*,
    45 F.4th 8 (D.C. Cir. 2022)...........................................................5, 6

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)..........................................................................5

*Sinclair Wyoming Refining Co. v. EPA*,
    114 F.4th 693 (D.C. Cir. 2024)........................................................9

*Verizon v. FCC*,
    740 F.3d 623 (D.C. Cir. 2014).......................................................14

## STATUTES

21 U.S.C. § 355(j)(4)(A)...............................................................20, 21

21 U.S.C. § 355(j)(5)(D)(i)(IV) ........................................................1, 8

## OTHER AUTHORITIES

D.C. Cir. R. 38 ...............................................................................3, 10

FDA, Warning Letter, Actavis Laboratories FL, Inc., MARCS-CMS
    567857 (Feb. 1, 2019), https://tinyurl.com/24rrvt36.......................20

Fed. R. Civ. P. 11 ...........................................................................3, 10

## GLOSSARY

| Abbreviation/acronym | Description |
| --- | --- |
| Actavis | Actavis Laboratories FL, Inc. |
| ANDA | abbreviated new drug application |
| Norwich | Norwich Pharmaceuticals, Inc. |
| Salix | Salix Pharmaceuticals, Inc. |
| Teva | Teva Pharmaceuticals USA, Inc. |

## INTRODUCTION

Actavis Laboratories FL, Inc. ("Actavis") forfeited any 180-day exclusivity period because it "fail[ed] to obtain tentative approval" within 30 months of filing its abbreviated new drug application ("ANDA"). 21 U.S.C. § 355(j)(5)(D)(i)(IV). That forfeiture means that approval of Norwich Pharmaceuticals, Inc.'s ("Norwich") ANDA No. 214,370 is not blocked by Actavis's purported 180-day exclusivity period.

FDA concluded otherwise based on its erroneous interpretation of the narrow exception that such a forfeiture event is excused if the failure to obtain tentative approval within 30 months "is caused by a change in . . . the requirements for approval of the application imposed after the date on which the application is filed." *Id.* Specifically, FDA found that Actavis's failure to timely obtain tentative approval by June 18, 2018, was caused "at least in part" by FDA's added requirement in 2017 that ANDA applicants conduct comparative dissolution studies. JA358-60. As Norwich has explained, this exception applies only if the change is the *but-for* cause of the delay; that change was not the but-for cause of the delay here; and FDA's interpretation is contrary to law. Opening Br. 49-55; Reply Br. 20-23.

Following oral argument, the Court asked the Parties to address this question in supplemental briefs: "In the event a but-for standard of causation applies, was the change in FDA approval requirements a but-for cause of Actavis's failure to timely

1

obtain tentative approval of ANDA No. 208959 within 30 months of filing?"  Order (Dec. 12, 2025).  The answer is straightforward:  No.  FDA and Intervenors never disputed in briefing, and thus forfeited their ability to contest, Norwich's showing that FDA's new comparative-dissolution-study requirement was *not* a but-for cause of Actavis's failure to timely obtain tentative approval by June 18, 2018.  There is zero chance that Actavis would have obtained tentative approval by June 18, 2018, whether or not that new requirement was added.

The reason nobody contested Norwich's showing that but-for causation is absent is blindingly obvious:  Not only did Actavis fail to obtain tentative approval by June 18, 2018, it *still* has not obtained tentative approval over 7.5 years later in 2026.  For Actavis to prevail under a but-for causation standard, it would need to show that but-for (absent) the new 2017 requirement to conduct comparative dissolution studies *that it had already completed* by June 18, 2018—which remained under FDA review—Actavis would have obtained tentative approval by June 18, 2018.  That is nonsense.  Actavis's ANDA *still* lacks tentative approval today.

No amount of mental gymnastics can make comparative dissolution studies a but-for cause of the failure to obtain tentative approval, which Actavis still has not achieved to this day, and it remains unclear Actavis will ever achieve.  Such dissolution studies take a matter of days to complete, which is why Actavis was able

**MATERIAL UNDER SEAL DELETED**

to broadly revise and resubmit its entire ANDA, including adequate comparative dissolution studies, in less than a year, and *before* FDA's June 18, 2018 deadline.

Given the many longstanding and independent scientific deficiencies that precluded tentative approval as of June 18, 2018, and over more than 7.5 years thereafter, no one can credibly argue that Actavis's ANDA would have been scientifically approvable by June 18, 2018, but-for FDA's added requirement of comparative dissolution studies. And if anyone attempted to do so at this late stage, *contra* Fed. R. Civ. P. 11; D.C. Cir. R. 38, the issue was forfeited and conceded. FDA itself found that Actavis's ANDA was unapprovable as of June 18, 2018 due to multiple independent scientific deficiencies. Indeed, Actavis expressly conceded to this Court that there were " ████████████████████████████████████ ████████ " as of June 18, 2018. Teva Pharmaceuticals USA, Inc. ("Teva") Br. 45 (acknowledging these " ██████████████████ ").

Accordingly, remand to FDA to determine whether Actavis forfeited any 180-day exclusivity period is not merited because it would be "an idle and useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). No remand is necessary or appropriate because both the litigation and administrative record support only one result. *Id.* at 766. This Court can and should determine that Actavis forfeited any alleged 180-day exclusivity.

Exercising that power is particularly appropriate here: If this Court finds that a forfeiture event occurred under the failure-to-obtain-tentative-approval provision in § 355(j)(5)(D)(i)(IV), that would moot the need for this Court to also address the separate, more complex issue of whether a "failure to market" forfeiture occurred under § 355(j)(5)(D)(i)(I) with respect to each of Actavis's patent certifications "qualifying" it for the 180-day exclusivity period blocking Norwich's ANDA.

Each month of further delay costs patients millions of dollars for Salix Pharmaceuticals, Inc.'s ("Salix") higher-priced, branded rifaximin drug. Norwich is prepared to launch and deliver its lower-priced generic to patients immediately. In contrast, Actavis has agreed with Salix to "park" its alleged 180-day exclusivity until *at least* 2028. FDA cannot lawfully continue to block the approval of *all* generic rifaximin, based on an alleged 180-day exclusivity, over *7.5 years* after the relevant forfeiture event occurred. There is no reason for Norwich's ANDA to disappear back into an FDA black hole while FDA "reevaluates" what is obvious from the record.

The Court should conclude that a forfeiture event occurred under the failure to obtain tentative approval provision, and reverse with direction to grant Norwich summary judgment on that basis.

4

# ARGUMENT

No remand to FDA is necessary or appropriate because it is clear both from the Parties' litigation conduct and from the record that FDA's added requirement to conduct comparative dissolution studies was not a but-for cause of Actavis's failure to obtain tentative approval by June 18, 2018, and that Actavis therefore forfeited any 180-day exclusivity period.

## I.    THE COURT CAN AND SHOULD DETERMINE THAT ACTAVIS FORFEITED ANY 180-DAY EXCLUSIVITY PERIOD

As this Court has long held, remand is not warranted where the result of any remand is preordained.

In cases where an agency errs, courts often remand to permit the agency to exercise any discretion it may have to reevaluate the issue on remand.  *Prohibition Juice Co. v. FDA*, 45 F.4th 8, 24-25 (D.C. Cir. 2022) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  But that is not the rule where, as here, "'there is not the slightest uncertainty as to the outcome of a proceeding on remand.'"  *Id.* at 24; *accord A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995).  In such cases, "'*Chenery* does not require that we convert judicial review of agency action into a ping-pong game,' lobbing the matter from agency to court and back," because there is no discretion left for the agency to exercise on remand.  *Prohibition Juice*, 45 F.4th at 24-25 (quoting *Wyman-Gordon*, 394 U.S. at 766 n.6).

Accordingly, remand is unwarranted where only one conclusion would be supportable on remand. *Id.* That is the case either where the parties' litigation conduct forfeits arguments for a different outcome on remand, or where this Court's independent review of the record supports only one result. *Id.* (finding that parties "forfeited" arguments in favor of remand, and the record independently supported only one result); *see also Am. Train Dispatchers Ass'n v. ICC*, 26 F.3d 1157, 1163 (D.C. Cir. 1994) (declining to remand to agency, as outcome was "preordained" following party's concessions on appeal); *Fogg v. Ashcroft*, 254 F.3d 103, 111-12 (D.C. Cir. 2001) (explaining "remand would be futile" and is unwarranted where "'[o]nly one conclusion would be supportable'" on remand); *Grossmont Hosp. Corp. v. Burwell*, 797 F.3d 1079, 1086 (D.C. Cir. 2015) (similar).

This Court thus routinely exercises its power to determine an issue without resorting to such a futile and useless remand. *See, e.g., supra* at 5-6 (citing *Prohibition Juice*, *A.L. Pharma*, *Am. Train Dispatchers*, *Fogg*, and *Grossmont*); *Dole v. Williams Enters., Inc.* 876 F.2d 186, 190-91 (D.C. Cir. 1989) (reversing agency, declining to remand, and concluding that statutory standard was met by facts because court "s[aw] no other supportable conclusion from the record before [it]"); *Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1388-89 & n.12 (D.C. Cir. 1985) (reversing agency and requiring it to reinstate citation because "only one conclusion is supportable on the record"); *Donovan ex rel. Anderson v. Stafford Constr. Co.*,

732 F.2d 954, 961-62 (D.C. Cir. 1984) (reversing agency and remanding with instructions to assess damages because "all the [record] evidence" supported only one conclusion).  And courts have applied a new causation standard to the record, rather than remand for an agency to do so.  *See, e.g.*, *Da Silva v. Att'y Gen.*, 948 F.3d 629, 637-38 (3d Cir. 2020) (denying remand, finding that agency applied the wrong causation standard, and finding that facts satisfied corrected causation standard).

Consider this Court's decision in *George Hyman Construction Co. v. Brooks*, 963 F.2d 1532 (D.C. Cir. 1992).  There, the Court considered whether a decision of the Benefits Review Board, affirming an administrative law judge's ("ALJ") ruling, should be reversed.  *Id.* at 1534.  The Court first determined that the Board (and ALJ) had failed to apply a Supreme Court ruling requiring the Board to assess whether the claims before it were "interrelated."  *Id.* at 1539.  Having reached that conclusion, the Court then observed that "[o]rdinarily, we might at this point remand with instructions to the ALJ and Board to detail the reasons for the interrelatedness conclusion in th[e] case."  *Id.*  But the Court rejected that approach, as "remand would indeed be futile:  no rational factfinder conscientiously applying [the Supreme Court's teachings] could find" the claims "interrelated."  *Id.*  Because "only one disposition [wa]s possible as a matter of law," the Court reversed the ALJ's and the Board's rulings, held the claims were not interrelated, and found the respondent was, as a result, not entitled to any monetary relief (attorney's fees).  *Id.* at 1539-41.

As described below, here, too, there is "'only one rational course'" on remand. *Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Relations Auth.*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985); *accord BNSF Ry. v. Fed. R.R. Admin.*, 105 F.4th 691, 701 & n.10 (5th Cir. 2025). Remand is neither necessary nor warranted in this case. The Court should determine that but-for causation is absent and Actavis therefore forfeited any 180-day exclusivity period.

## II.    THE RESULT OF ANY REMAND IS PREORDAINED

Remand is unwarranted because the result of any remand is preordained.

No one has ever argued in *any* brief that under a but-for causation standard Actavis would have obtained tentative approval by June 18, 2018, if FDA had *not* added the new comparative dissolution studies requirement in 2017. The reason why is obvious: Actavis's ANDA was defective and unapprovable from the day it was filed in 2015, and *still* is not in a scientifically approvable form over a decade later. Actavis cannot show that in a but-for world it would have achieved tentative approval by June 18, 2018, that it still has not managed to obtain to this very day.

The statute provides that a forfeiture event occurs if "[t]he first applicant fails to obtain tentative approval of the application within 30 months after the date on which the application is filed, *unless the failure is caused by a change in or a review of the requirements for approval of the application* imposed after the date on which the application is filed." 21 U.S.C. § 355(j)(5)(D)(i)(IV) (emphasis added). Such a

8

**MATERIAL UNDER SEAL DELETED**

statutory requirement that an effect "must be caused by" an event "require[s] simple but-for causation." *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 708-09 (D.C. Cir. 2024). This "but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020); *accord Sinclair Wyo. Refin.*, 114 F.4th at 709 ("A 'but-for cause' is '[t]he cause without which the event could not have occurred.'").

Here, FDA has identified as the relevant "change in . . . the requirements for approval" of Actavis's ANDA that (1) FDA revised its draft product-specific guidance for rifaximin in March 2017 to "recommend[] additional dissolution studies meant to demonstrate bioequivalence"; (2) FDA "████████████████████ ██████████████████████████████████████████████████████████████"; and (3) FDA "was still reviewing" Actavis's May 2018 submission of the dissolution studies at 30 months, June 18, 2018. FDA Br. 43-44 (citing JA361-63).

So the but-for test is as follows: If FDA had not required new comparative dissolution studies from Actavis in 2017, would Actavis have obtained tentative approval by June 18, 2018? That might present a close question if Actavis had obtained tentative approval as of, say, December 1, 2018. That would require debating exactly how long the comparative dissolution studies delayed the ANDA between 2017 and May 2018, when Actavis submitted sufficient studies, JA361-63, particularly given that such studies take mere *days* to conduct. AR588 (Dkt. 78-2)

9

(for the Court's convenience, Norwich provides sealed district court docket entries and their corresponding unsealed versions in the attached addendum). The parties would then debate whether Actavis would have obtained tentative approval by June 18, 2018, had comparative dissolution studies not been required.

No close question is presented here. Today, over 7.5 years after Actavis's June 18, 2018 deadline, Actavis's ANDA still is not scientifically approvable, and still has not received tentative approval. To prevail, Actavis would need to show that, in the but-for world in which there was no added requirement to conduct dissolution studies, Actavis would have obtained over 7.5 years ago the very tentative approval that Actavis still has not obtained today, and may never obtain. That makes no sense. That is why no one has ever argued, in any brief before any court, that if FDA had *not* imposed a requirement of comparative dissolution studies in 2017, Actavis *would have* obtained tentative approval by June 18, 2018. If someone wanted to start arguing that incredible position today, *contra* Fed. R. Civ. P. 11; D.C. Cir. R. 38, that position has been forfeited and conceded. And even if this Court excused those problems, any such argument fails on its merits.

### A.  Any Argument That FDA's Change In Approval Requirements Was A But-For Cause Of Actavis's Failure To Obtain Tentative Approval Has Been Forfeited And Conceded

FDA and Intervenors forfeited multiple times over, and conceded, any contention that FDA's change to require comparative dissolution studies was a

but-for cause of Actavis's failure to obtain tentative approval by June 18, 2018.

In its motion for summary judgment before the district court, Norwich argued that under the correct causation standard, *i.e.*, but-for causation, "Actavis failed to obtain tentative approval in 30 months and forfeited its eligibility for 180-day exclusivity." Dkt. 38 at 32-33. Norwich argued that independent scientific deficiencies in Actavis's ANDA precluded tentative approval both as of June 18, 2018, and through to the present day, which precluded any showing of but-for causation. *Id.* at 37-40. Norwich thus requested that the district court determine that Actavis had forfeited its 180-day exclusivity and order final approval. *Id.* at 40.

FDA asserted a straightforward defense: FDA argued that but-for causation was not the correct statutory standard and that, under FDA's "caused at least in part by" standard, the "'acceptability of one aspect'" of Actavis's ANDA—dissolution studies—was "'delayed due to a change in . . . the requirements for approval.'" Dkt. 61 at 25-26. But FDA never argued that Actavis could satisfy but-for causation if that was the correct standard. *Id.* Indeed, in response to Norwich's arguments that the Court should order final approval of its drug, FDA argued that there was some possibility of FDA addressing *other unrelated* issues on remand, like any needed updates to "product labeling." *Id.* at 31. But FDA never suggested there was any potential for it to find that the change in requirements satisfied but-for causation on remand. Nor did Intervenors make these arguments. *See* Dkts. 67, 70, 72, 73.

11

By failing to argue that Actavis's ANDA would have been approvable by June 18, 2018 but-for the change in FDA approval requirements, FDA and Intervenors forfeited that argument. *See Banner Health v. Price*, 867 F.3d 1323, 1336 (D.C. Cir. 2017) (explaining that agency appellee "failed to make this argument in the district court, and it is forfeit[ed]"); *Haselwander v. McHugh*, 774 F.3d 990, 997-98 (D.C. Cir. 2014) (same). So too have they forfeited any argument that remand is warranted for FDA to apply a but-for causation standard to the dissolution studies. *See Banner Health*, 867 F.3d at 1336; *Haselwander*, 774 F.3d at 997-98.

FDA and Intervenors doubled down on their forfeitures on appeal. Before this Court, Norwich renewed its arguments that the correct, statutory but-for causation standard was not satisfied because Actavis's ANDA *still* was not approvable to this day, and was not approvable as of June 18, 2018, due to longstanding scientific deficiencies independent of FDA's comparative dissolution study requirement. Opening Br. 48-55. Accordingly, a forfeiture event occurred and Norwich was entitled to summary judgment. *Id.* at 48-49, 58.

In response, FDA argued that a but-for causation standard was inappropriate. FDA Br. 43-51. But FDA never argued that it could prevail under a but-for causation standard. *Id.* FDA never disputed Norwich's showing that *FDA itself found* that Actavis's ANDA was not approvable as of June 18, 2018, due to other independent

12

**MATERIAL UNDER SEAL DELETED**

deficiencies unrelated to any change in FDA requirements. *Id.* Nor did FDA argue that it would require remand to reevaluate whether a forfeiture occurred. *Id.*

Actavis's briefing was even more explicit, expressly conceding there were "███████████████████████████████████████" as of June 18, 2018, and arguing that these "████████████████" that precluded its timely approval were legally "irrelevant." Teva Br. 45 & n.11. Actavis stated that it has "████████████████████████████," receiving various "███████" from FDA while pursuing "███████████████████████." *Id.* at 16-17.

Salix, meanwhile, failed to address the failure-to-obtain-tentative-approval forfeiture event in its briefing to this Court.

And Actavis and Salix, while arguing for remand for FDA to address *other* issues, never argued that but-for causation could be found on these facts or that remand was necessary to determine whether a forfeiture occurred under the statute's failure-to-obtain-tentative-approval provision. *Id.* at 29 n.8; Salix Br. 12-15.

As a member of this Court correctly suggested at oral argument, the appellate briefs show "unanimous agreement that Actavis would have failed to meet the 30-month deadline independent of the FDA rule change." Oral Argument Tr. 50:1-4 (Dec. 11, 2025) ("Tr."). By failing to argue that Actavis's ANDA would have been approvable by June 18, 2018, but-for the change in FDA requirements, or that remand was necessary for FDA to address whether a forfeiture occurred, FDA and

13

Intervenors forfeited these arguments before this Court. *See Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 647 (D.C. Cir. 2020) (agency appellee's "'arguments raised for the first time at oral argument are forfeited'"); *Verizon v. FCC*, 740 F.3d 623, 656, 658-59 (D.C. Cir. 2014) (similar). And Actavis expressly conceded the issue as well. Teva Br. 45 & n.11.

Notably, the Supreme Court applied similar principles to resolve *Burrage v. United States*, 571 U.S. 204 (2014). Once the Supreme Court decided that but-for causation was the appropriate standard, it went on to apply that new causation standard and vacate convictions premised on the improper standard because "the Government concede[d]" in its appellate briefs that there was no evidence that the but-for test would be satisfied. *Id.* at 218-19. This Court, too, should conclude a forfeiture event occurred given FDA's and Intervenors' forfeitures and concessions.

## B. There Was Good Reason For FDA's and Intervenors' Forfeitures And Concessions

There was good reason for FDA's and Intervenors' forfeitures and concessions: Actavis's ANDA still has not obtained tentative approval. It is simply not credible to argue that Actavis would have obtained tentative approval by June 18, 2018, but-for the new comparative-dissolution requirement, *that it still has not shown any entitlement to today*. That makes no sense.

FDA correctly recognizes in its guidance that this forfeiture provision serves to "prevent first applicants' ANDAs that do not meet the substantive requirements

14

**MATERIAL UNDER SEAL DELETED**

for approval from delaying approval of subsequent applicants' ANDAs." JA580-81. Yet that is exactly what has occurred here for over 7.5 years. The record supports only one result: FDA's 2017 change in requirements was not a but-for cause of Actavis's failure to obtain tentative approval that Actavis *still* has not shown any entitlement to today. Indeed, *FDA itself* found Actavis's ANDA was not approvable as of June 18, 2018, due to multiple scientific deficiencies unrelated to any change in approval requirements. Opening Br. 50-52; JA362-63, 512, 566-67.

**Bioequivalence Studies With Clinical Endpoints**: As Norwich explained in its opening brief (at 50-52), FDA found that, as of June 18, 2018, Actavis had failed to submit a required bioequivalence study with a clinical endpoint in its then-operative May 2018 ANDA resubmission. ███████████████████

████████████████████████████████████████████████

████████████████████████ These "clinical endpoint" studies are costly, yearslong clinical trials, in which the drug is studied in humans, with a "clinical endpoint," *i.e.*, a primary outcome relevant to effects in the body. JA385.

FDA issued product-specific guidance for rifaximin in 2012 advising applicants to include a "BE [bioequivalence] study with Clinical Endpoint." JA385-86. Actavis's ██████████████████ knowingly omitted this clinical endpoint study, declining to follow FDA's guidance. ████████████████

████████████████████████████████████████████████

**MATERIAL UNDER SEAL DELETED**

███████████████████████████████████████████████████

████████████████████████████████ Indeed, it was only by deciding *not*

to conduct a lengthy clinical endpoint study that Actavis was able to cut the line and

file its ANDA first in 2015, thus obtaining "first applicant" status and alleged

exclusivity without submitting an approvable ANDA.  *See* JA360; JA389.

FDA's May 2017 Complete Response Letter identified this deficiency and

instructed Actavis to complete the required clinical endpoint study; but Actavis in

its May 2018 ANDA resubmission flatly refused to conduct the study.  ███████

███████████████████████████████████████████████████

██████████████████████████████████████ Rather than

do what FDA had told it to do in the May 2017 Complete Response Letter and prior

guidance, Actavis argued in its May 2018 ANDA resubmission that FDA's clinical

endpoint studies requirement should be ██████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**MATERIAL UNDER SEAL DELETED**

███████ Even today, Actavis still has not demonstrated that its ANDA is approvable, and it lacks tentative approval. *See* JA781.

The foregoing issue alone precludes any showing that but-for FDA's requirement to conduct additional dissolution studies, FDA would have tentatively approved Actavis's ANDA by June 18, 2018. That should end the Court's analysis.

**Quality Deficiencies**: There were also other deficiencies that independently preclude any showing that the comparative dissolution study requirement was a but-for cause of the failure to obtain tentative approval. As Norwich explained in its Opening Brief (at 50-51), FDA's ███████████████████████ also identified several ████████████████████████████ that existed as of June 18, 2018, pertaining to the quality of Actavis's drug identified in its May 2018 ANDA resubmission. JA565-66.

In briefing, no one disputed Norwich's showing that these quality deficiencies precluded approval of Actavis's ANDA as of June 18, 2018. Opening Br. 51. But at oral argument, Actavis raised a new argument that these quality deficiencies related to new inspectional issues FDA identified *after* June 18, 2018, and suggested that perhaps those issues might not have precluded approval *as of* June 18, 2018. Tr. 42:3-43:8, 52:24-53:4. Actavis's newfound argument is forfeited, *supra* at 10-14, but it is also facially incorrect. Contrary to Actavis's new argument, FDA found that Actavis's ANDA suffered ████████ pharmaceutical quality deficiencies

**MATERIAL UNDER SEAL DELETED**

*as of its May 2018 resubmission*, that persisted through the June 18, 2018 deadline to obtain tentative approval. Opening Br. 51; JA565-66.

Most prominently, FDA instructed Actavis in its May 2017 Complete Response Letter that Actavis needed to adopt ██████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ That problem, too, independently barred approval as of June 18, 2018, as FDA itself identified in its ██████████████████████████████. JA566.

Also contrary to Actavis's new claims at oral argument, there was yet another, distinct quality problem with Actavis's ANDA as of June 18, 2018. ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

**MATERIAL UNDER SEAL DELETED**



Finally, FDA's ████████████████████████ also referred to FDA's July 9-19, 2018 inspectional findings that Actavis's manufacturing facility was out of control (*i.e.*, did not assure Actavis's drugs' safety), as *still another* independent deficiency that barred approval.  JA566.  FDA found ████████ ████████████████████████████████████████ ████████████████████████████

Actavis speculated at oral argument that, since the inspection was dated July 9-19, 2018, a few weeks *after* the June 18, 2018 deadline, it was possible that, in the but-for world, FDA might have found Actavis's facility was *in control* as of June 18, 2018; or perhaps FDA might not have inspected and noticed Actavis's facility was out of control, and approved its drug by June 18, 2018.  Tr. 42:3-10, 43:1-8.  Putting aside that Actavis's new arguments are forfeited, *supra* at 10-14, there is not a shred of record evidence to support Actavis's speculation that its drug *might, perhaps* have been approved by June 18, 2018.  Zero.

**MATERIAL UNDER SEAL DELETED**

And there is a good reason that Actavis has been careful never to affirmatively argue that its facility *was* in control prior to June 18, 2018, or that its ANDA *would have or could have* been approved prior to June 18, 2018. FDA may not approve a drug if FDA finds "the methods used in, or the facilities and controls used for, the manufacture . . . of the drug are inadequate to assure and preserve its identity, strength, quality, and purity." 21 U.S.C. § 355(j)(4)(A); *see also* JA566 ████ ████████████████████ And Actavis knows it is a matter of public record that FDA identified in connection with its July 2018 inspection that Actavis's facility *was out of control as of each of FDA's 2013, 2016, and 2017 inspections*; the July 2018 inspection found these "*[r]epeat* [o]bservations" (deficiencies) over the previous 5 years *remained ongoing* in July 2018, including "fail[ure] to establish an adequate quality control unit" and lack of controls "to ensure stable manufacturing operations and consistent drug quality," rendering Actavis's drugs "adulterated." FDA, Warning Letter, Actavis Laboratories FL, Inc., MARCS-CMS 567857 (Feb. 1, 2019), https://tinyurl.com/24rrvt36. Actavis's "repeated failures" to remediate its multi-year violations and come into control showed "oversight and control over the manufacture of drugs is inadequate." *Id.* The facility was not in control or in an approvable condition before June 18, 2018, and Actavis knows it.

So that leaves Actavis's speculation that, even if its facility was out of control prior to June 18, 2018, perhaps FDA might have approved Actavis's ANDA anyway

in a but-for world.  There is *zero* record evidence supporting that speculation.  FDA found Actavis's facility was out of control over 5 years, *contra* 21 U.S.C. § 355(j)(4)(A), including in the November 2017 inspection *after* FDA's May 2017 Complete Response Letter.  *Supra* at 20.  *FDA* certainly has never argued that, but-for the change in dissolution study requirements, FDA would have somehow ignored all of these longstanding safety deficiencies that precluded approval as of June 18, 2018, and approved Actavis's drug anyways, *notwithstanding a multi-year history of ongoing, repeat violations*.

* * * * * *

FDA correctly recognizes that the point of this forfeiture provision is to "prevent[] first applicants' ANDAs that do not meet the substantive requirements for approval from delaying approval of subsequent applicants' ANDAs."  JA580-81.  Yet that is exactly what has occurred here.  It makes no sense to argue that but-for FDA's change in requirements for comparative dissolution studies, Actavis would have obtained a tentative approval by June 18, 2018 that it still has not shown any entitlement to.  But-for causation is clearly absent, and Actavis forfeited any 180-day exclusivity period.

## CONCLUSION

The Court should conclude that Actavis forfeited any 180-day exclusivity under the failure-to-obtain-tentative-approval provision, reverse with direction for the district court to grant Norwich summary judgment, issue the mandate forthwith, and order FDA to act on Norwich's '370 ANDA within 14 days of issuance of the mandate.

Dated: January 2, 2026

Respectfully submitted,

*/s/ Andrew D. Prins*

Matthew S. Murphy
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
mmurphy@axinn.com

Andrew D. Prins
Rachael L. Westmoreland
Lia Rose Barrett
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.prins@lw.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Suite 2400
Austin, TX 78701
(737) 910-7314
nicholas.schlossman@lw.com

*Counsel for Appellant Norwich Pharmaceuticals, Inc.*

22

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 32(f) and (g), D.C. Cir. Rule 32, and the Court's December 12, 2025 supplemental briefing order because it contains 4,998 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

*/s/ Andrew D. Prins*
Andrew D. Prins

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that the confidential version of the foregoing brief was also served on counsel for all parties by electronic transfer.

*/s/ Andrew D. Prins*
Andrew D. Prins