ARGUED ON DECEMBER 11, 2025

No. 25-5137

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––––––––––––––

NORWICH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

**v.**

ROBERT F. KENNEDY JR., in his official capacity as Secretary of Health and Human Services; MARTIN M. MAKARY, in his official capacity as Commissioner of Food and Drugs; UNITED STATES FOOD AND DRUG ADMINISTRATION

*Defendants-Appellees,*

TEVA PHARMACEUTICALS USA, INC.; SALIX PHARMACEUTICALS, INC.,

*Intervenors-Appellees.*

––––––––––––––––––

On Appeal from the United States District Court for the District of Columbia, No. 1:25-cv-00091, Hon. Beryl A. Howell

––––––––––––––––––

## SUPPLEMENTAL BRIEF FOR INTERVENOR-APPELLEE TEVA PHARMACEUTICALS USA, INC.
### Public Copy—Sealed Material Deleted

––––––––––––––––––

Sierra J. Perez-Sparks
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
sperezsparks@goodwinlaw.com

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
bburgess@goodwinlaw.com

January 23, 2026

*Counsel for Teva Pharmaceuticals USA, Inc.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

All parties and intervenors appearing before the district court and this Court are listed in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.  No amici have appeared before the district court or this Court in this case.

### B.    Rulings Under Review

Reference to the ruling at issue appears in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.

### C.    Related Cases

This case has not previously been before this Court.  This case involves the same drug product as *Norwich Pharmaceuticals, Inc. v. Kennedy*, No. 23-5311 (D.C. Cir.); S*alix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.*, 98 F.4th 1056 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 567 *and* 145 S. Ct. 983 (2024); and S*alix Pharmaceuticals, Inc. v. Norwich Pharmaceuticals, Inc.*, No. 1:24-cv-7140 (D.N.J. filed June 20, 2024).

The Court denied Norwich Pharmaceuticals, Inc.'s motion to consolidate this case with No. 23-5311, but ordered that oral argument in both cases be coordinated to occur on the same day. Order, *Norwich*

*Pharmaceuticals, Inc. v. Kennedy*, No. 23-5311 (D.C. Cir. May 21, 2025).

The Court heard oral argument for both this case and No. 23-5311 on

December 11, 2025.

Dated: January 23, 2026          Respectfully submitted.

/s/ *Brian T. Burgess*
Brian T. Burgess

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellee Teva Pharmaceuticals USA, Inc., states that it is an indirect wholly owned subsidiary of Teva Pharmaceutical Industries Ltd., which is a publicly traded company. The aforementioned company owns at least 10% of the stock of Teva Pharmaceuticals USA, Inc.

Dated: January 23, 2026          Respectfully submitted.

/s/ *Brian T. Burgess*
Brian T. Burgess

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................... 1

    I.    A But-For Test Would Require FDA To Make New
          Factual Determinations. ....................................................... 3

    II.   Teva Did Not Waive or Forfeit the Opportunity To
          Argue for Non-Forfeiture on Remand Under a But-For
          Test. ....................................................................................... 11

Conclusion .................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

* *Calcutt v. FDIC,*
   598 U.S. 623 (2023) .......................................................... 1, 11

*Dep't of Homeland Security v. Regents of the Univ. of Cal.,*
   591 U.S. 1 (2020) ................................................................. 2

*Hill Dermaceuticals, Inc. v. FDA,*
   709 F.3d 44 (D.C. Cir. 2013) .............................................. 10

*Estate of Insigna by Gilmore v. Comm'r of IRS,*
   149 F.4th 709 (D.C. Cir. 2025) .......................................... 1, 2

*PPG Indus., Inc. v. United States,*
   52 F.3d 363 (D.C. Cir. 1995) .............................................. 11

STATUTES:

21 U.S.C. §355(j)(5)(B)(iv)(II)(bb) ......................................... 6

* 21 U.S.C. §355(j)(5)(D)(i)(IV) ......................................... 1, 7, 8

REGULATIONS:

21 C.F.R. §314.110(a) ......................................................... 3

21 C.F.R. §314.110(b)(1) ..................................................... 3, 8

OTHER AUTHORITIES:

FDA, *Product-Specific Guidance for Generic Drug
   Development*, https://tinyurl.com/2p9w7em6 ......................... 7

Restatement (Third) of Torts §26 ......................................... 4

*\* Authorities upon which we chiefly rely
are marked with asterisks.*

v

# GLOSSARY

| | |
|---|---|
| 2017 PSG | FDA's March 2017 Product-Specific Guidance for Rifaximin Tablets |
| ANDA | Abbreviated New Drug Application |
| FDA | Food and Drug Administration |
| IBS-D | Irritable Bowel Syndrome with Diarrhea |
| Supp.Add. | Addendum to Supplemental Brief for Intervenor-Apellee Teva |
| Norwich Supp.Add. | Addendum to Supplemental Brief of Appellant Norwich |

## INTRODUCTION

Applying the causation test it has used for more than a decade, FDA found that Actavis did not forfeit its 180-day exclusivity as the first applicant for rifaximin 550 mg because a change in the requirements introduced in the 2017 PSG prevented Actavis from securing tentative approval within 30 months.  JA363, JA375.  FDA stopped there, recognizing that under the agency's test, it was "unnecessary to determine whether additional bases for non-forfeiture exist."  JA363.  FDA likewise had no occasion to decide—or develop a record to address—whether any "change in or review of" the approval requirements for rifaximin 550 mg, 21 U.S.C. §355(j)(5)(D)(i)(IV), was not only a sufficient but also a but-for cause of Actavis's inability to meet the deadline.  *See* JA358, JA375.

If this Court were to interpret "caused by" in section 355(j)(5)(D)(i)(IV) to require but-for causation, it should follow "the ordinary remand rule" and let FDA undertake the "additional investigation or explanation" needed to make a causation finding under the new standard.  *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023).  The Court should not prejudge the outcome.  "[T]he function of the reviewing court ends when an error of law is laid bare."  *Id.* (citation omitted); *see also Estate of*

1

*Insigna by Gilmore v. Comm'r of IRS*, 149 F.4th 709, 718-719, 721 (D.C. Cir. 2025).

Norwich insists this is the rare case where remand can be skipped as futile. But Norwich's argument relies on dubious factual assumptions and fails to engage with the full scope of issues that would become relevant under a but-for test, which may require further record development. *See Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (recognizing an agency's authority to "deal with the problem afresh" on remand, which may involve expanding the record). Indeed, Norwich implicitly recognizes the existing record is inadequate, as it improperly relies on extra-record material. *See* Norwich Supp.Br. 20-21. In doing so, Norwich makes assertions that are demonstrably wrong about Actavis's manufacturing facility.

Nor did Teva forfeit or waive the ability to argue for non-forfeiture on remand. Consistent with the *Chenery* doctrine, Teva defended FDA's decision based on the test the agency applied. But Teva also explained that if the reviewing court "identifies any error, it should apply the ordinary remand rule," including because "FDA declined to consider every potential basis for denying forfeiture based on the delay in tentative

approval." Norwich Supp.Add. 286. There is no justification for taking that factual question away from the agency and stripping Actavis of a valuable statutory right without process.

## I.    A But-For Test Would Require FDA To Make New Factual Determinations.

Urging an improperly restrictive view of but-for causation, Norwich contends (at 15-21) that "FDA's 2017 change in requirements" could not have been the but-for cause of Actavis's inability to meet the 30-month target because FDA identified "multiple deficiencies" in its November 2018 Complete Response Letter and has yet to approve Actavis's ANDA. Among other flaws, Norwich defines the scope of the 2017 PSG changes too narrowly, which Norwich wrongly assumes were limited to compara-tive dissolution studies.

Norwich also fails to account for the dynamic nature of a but-for inquiry, ignoring the impact that FDA's changes had on the timing for all aspects of review. FDA does not review ANDA components in isolation. Rather, FDA waits to issue a "complete" response after compiling several review disciplines and then compels applicants to address all outstanding issues in a single resubmission. *See* 21 C.F.R. §314.110(a), (b)(1); *see* JA568 (rejecting partial responses). Thus, seemingly discrete changes

may have cascading (and hard-to-predict) impacts on timing for other review components. Any but-for analysis must account for these collateral effects with careful attention to the practical realities of FDA review. *See* Restatement (Third) of Torts §26, Reporter's Note cmt. *e* (describing the "counterfactual inquiry" required for but-for causation).

**Bioequivalence Studies**: Norwich relies (at 15-17) on the false premise that Actavis ignored an unchanged requirement for a clinical endpoint study. In fact, the 2017 PSG altered requirements for bioequivalence studies in several respects, which Actavis worked to address in its May 2018 resubmission. The changes in the 2017 PSG included, ***but were not limited to***, the new dissolution-specification studies. JA 540-541. Even a casual comparison of the one-page 2012 PSG (JA50) and the twenty-page 2017 PSG (JA136-156) shows that the scope of changes is more substantial than Norwich assumes.

Most salient here, the 2012 PSG suggested that applicants should conduct a study with clinical endpoints using the 200 mg product (even if the application was only for the 550 mg product, like Actavis's ANDA). JA50. By contrast, the 2017 PSG created two distinct pathways: (1) show the ANDA uses a formulation that is qualitatively and quantitatively

**MATERIAL UNDER SEAL DELETED**

similar (Q1/Q2) to the reference product, in which case no clinical end-point study is required ("Option 1"), or (2) conduct a bioequivalence study with clinical endpoints ("Option 2").  JA136-137, 505, 511-512.  For Option 2, the 2017 PSG directed applicants (like Actavis) seeking approval of the IBS-D indication for the 550 mg strength to conduct studies using the 550 mg product—***not*** the 200 mg product, as in the 2012 PSG.  JA146; *see also* Supp.Add. 46 n.50, 60 (describing FDA's changed thinking).  The 2017 PSG also provided extensive new instructions for such studies.  JA146-155.  Given all these changes, FDA likely would not have accepted a clinical endpoint study from Actavis using the outdated 2012 PSG.

Actavis responded to the new 2017 PSG by ███████████████ ███████████████████████████████████████████████ ████████████████████████████████████████  After the 30-month deadline had passed, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

MATERIAL UNDER SEAL DELETED

[REDACTED]

[REDACTED].[1]

Norwich ignores the scope of FDA's changes and offers a misleading picture of the regulatory landscape.  Contrary to Norwich's assertion (at 16), there is no mandatory "clinical endpoint study" for rifaximin 550 mg that Actavis refused to conduct.  Indeed, ***Norwich itself*** [REDACTED]

[REDACTED]

[REDACTED] *See* Supp.Add. 70-71, 77.

Norwich's accusation (at 16) that Actavis "cut the line" is also baseless.  No one disputes that Actavis's ANDA was "substantially complete" when filed, 21 U.S.C. §355(j)(5)(B)(iv)(II)(bb), and first applicants often work with FDA in establishing the evidentiary framework for bioequivalence while the science is unsettled.  *Cf.* JA50 (2012 PSG stating that it reflected FDA's "current thinking" and that applicants could "use an alternative approach").  Indeed, first applicants serve as pioneers who ease

---

[1] [REDACTED]

**MATERIAL UNDER SEAL DELETED**

the pathway for later filers by educating FDA about a new generic product, often leading FDA to reconsider and sometimes change its approval requirements. *See* FDA, *Product-Specific Guidance for Generic Drug Development*, https://tinyurl.com/2p9w7em6 (noting the agency "routinely" "revises product-specific guidances" and "always seeks feedback" to "keep pace with the science of equivalence"). Congress anticipated this role by adopting the "caused by" protection against forfeiture. 21 U.S.C. §355(j)(5)(D)(i)(IV). If the Court rejects FDA's longstanding interpretation of "caused by," it should allow FDA to consider whether the full scope of changes initiated (or considered) by the agency were a but-for cause of Actavis's inability to meet the 30-month target.

**Quality Deficiencies**: Norwich's backup argument (at 17-21) that ███████████████████████████ would have prevented approval within 30 months irrespective of changed requirements relies on speculation and exaggeration while ignoring the complexity of genuine but-for analysis. There is no basis for this Court to decide this fact-intensive question on a record that was not developed to answer it.

    1.    Norwich contends (at 18) that ████████████████ ███████████████████████████████████████

**MATERIAL UNDER SEAL DELETED**

███████████████████████████████████████ In a rhetorical flourish, Norwich asserts that Actavis simply "refused to comply." *Id.* In fact, ████

████████████████████████████████████████████████████████

█████████████████████████████████████ but such standard interaction between an applicant and FDA is not defiance.

There is every reason to believe this minor discrepancy would have been promptly resolved well before the 30-month cutoff if had been addressed separately, as there is no evidence that it would have taken Actavis meaningful time merely ████████████████████████████████████

██████████[2] But Actavis ***could not*** resolve this issue in isolation: as noted, p. 3, *supra*, applicants must address "***all*** deficiencies identified in the complete response" in a single resubmission.  21 C.F.R. §314.110(b)(1).  And the ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████. JA509 (¶5(e)), JA511-512.

---

[2] The record also does not disclose whether FDA undertook any review of the requirements ████████████████████ which might have impacted the timing of the agency's response.  Such a "review" could also potentially qualify as a but-for cause of delay under the statute.  21 U.S.C. §355(j)(5)(D)(i)(IV).

**MATERIAL UNDER SEAL DELETED**



which FDA then considered collectively.  But-for analysis must account for this complex interaction, which Norwich ignores.

2.    Norwich's contention (at 18-19) that Actavis



3.    Norwich reaches most egregiously in asserting (at 19-20) that inspection issues at Actavis's Davie, Florida facility would have pre-vented Actavis from securing approval within 30 months.

MATERIAL UNDER SEAL DELETED

████████████████████████████████████████████

████████████████████████████████████

Undaunted, Norwich strays beyond the administrative record to cite a February 2019 warning letter that referenced earlier inspections. That is plainly improper. *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). It is also highly misleading. Nothing in the letter supports Norwich's remarkable assertion (at 21) that FDA would not have approved products manufactured in the Davie, Florida facility because it was "out of control over 5 years." That claim is false. Between 2016-2018, FDA approved numerous Actavis ANDAs designating that facility, including one on May 17, 2018 and another on July 3, 2018. *See* Supp.Add. 1-32. Thus, Norwich's surmise (at 20-21) that facility issues categorically prevented FDA from approving Actavis's product "prior to June 18, 2018" is just wrong.

Ultimately, Norwich tries to invert the remand standard by insisting (at 21) that the existing record does not prove FDA would have approved an ANDA using the Actavis facility. But the record does not conclusively answer that question because it ***was not relevant*** under FDA's causation test. If the Court rejects that test and imposes a but-for

standard that excludes multiple sufficient causes, FDA may need to conduct "additional investigation" to address newly relevant questions. *Calcutt*, 598 U.S. at 629; *see also PPG Indus., Inc. v. United States*, 52 F.3d 363, 366 (D.C. Cir. 1995) (recognizing an agency's ability to "reopen[] proceedings to take new evidence after the grounds upon which it relies are determined by a reviewing court to be invalid"). Norwich cannot bypass remand by arguing futility before the relevant record is even developed.

## II.   Teva Did Not Waive or Forfeit the Opportunity To Argue for Non-Forfeiture on Remand Under a But-For Test.

There is no waiver or forfeiture that could justify departing from the ordinary remand rule. Under *Chenery*, reviewing courts "must judge the propriety of agency action solely on the grounds invoked by the agency." *Calcutt*, 598 U.S. at 624 (citation modified). Norwich identifies no rule or precedent requiring parties supporting agency action to burden courts with hypothetical alternative grounds that cannot support affirmance under *Chenery* merely to preserve future arguments that might become relevant on remand.

In any event, Teva expressly argued that if "the Court identifies any error, it should apply the ordinary remand rule," which would let FDA decide questions it had deemed "unnecessary" to answer under its

11

longstanding causation test.  Norwich Supp.Add. 286, 318.  On appeal, Teva reiterated that Norwich's "proposed remedy" of immediate final approval "overreaches because it ignores alternative grounds for sustaining FDA's decision."  Teva Br. 4.

None of the statements in Teva's brief cited by Norwich (at 13) comes close to waiver.  The cited passage on page 45 was framed in terms of what "Norwich argues."  Teva's recognition (at 16-17) that Actavis has worked to address certain issues with its ANDA does not speak to whether the ongoing existence of such issues is connected to a change in or review of approval requirements.  And the fact that Actavis received extensions to pursue "voluntary[]" changes **after** the 30-month deadline to prepare for its commercial launch, *id.* at 16, is irrelevant.  Voluntary actions after the 30-month deadline have nothing to do with but-for causation.  FDA found that Actavis has pursued its ANDA with diligence, JA383-384, and Norwich abandoned its challenge to that finding, Norwich Supp.Add. 279 n.12.

## CONCLUSION

The Court should affirm the district court's decision.  But if the Court concludes that FDA applied the wrong legal standard for

causation, the Court should direct the district court to vacate FDA's non-forfeiture decision without constraining FDA's ability to decide the forfeiture issue on remand under the newly announced legal standard.[3]

January 23, 2026                          Respectfully submitted.

                                         /s/ *Brian T. Burgess*
Sierra J. Perez-Sparks                    Brian T. Burgess
GOODWIN PROCTER LLP                       GOODWIN PROCTER LLP
100 Northern Avenue                       1900 N Street, NW
Boston, MA 02210                          Washington, DC 20036
(617) 570-1000                            (202) 346-4000
sperezsparks@goodwinlaw.com               bburgess@goodwinlaw.com

                                         *Counsel for Teva Pharmaceuticals
                                         USA, Inc.*

---

[3] Norwich suggests (at 4) that the Court should bypass remand to avoid what Norwich describes as the "more complex issue" raised under the failure-to-market provision. Norwich's argument from convenience provides no lawful basis for discarding limits on the Court's authority under the remand rule. It is also wrong on its own terms: If the Court orders vacatur by adopting but-for causation but permits FDA to apply the new standard on remand, that would also resolve the appeal and the Court could stop there. Norwich's failure-to-market argument could not result in broader relief since a decision in Norwich's favor on that issue would also require remand. *See* Salix Br. 1-16; JA327 n.5.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Court's December 12, 2025, Order regarding supplemental briefing because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,496 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

January 23, 2026                              /s/ *Brian T. Burgess*
                                             Brian T. Burgess

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that the confidential version of the foregoing brief was also served on counsel for all parties by electronic transfer.

January 23, 2026                    /s/ *Brian T. Burgess*
                                    Brian T. Burgess