No. 25-5137
(argued on December 11, 2025)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

NORWICH PHARMACEUTICALS, Inc.,
*Plaintiff - Appellant*

v.

Robert F. KENNEDY, in his official capacity as Secretary of Health and
Human Services; Martin MAKARY, M.D., in his official capacity as
Commissioner of Food and Drugs; UNITED STATES FOOD AND
DRUG ADMINISTRATION,
*Defendants - Appellees*

&

TEVA PHARMACEUTICALS USA, Inc.;
SALIX PHARMACEUTICALS, Inc.,
*Intervenors - Appellees*

_____

On appeal from the
United States District Court for the District of Columbia

_____

## SALIX'S SUPPLEMENTAL BRIEF
## PUBLIC COPY—SEALED MATERIAL DELETED

_____

Michael J. Abernathy
Wan-Shon Lo
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Dr.
Chicago, Ill. 60606
T: 312-324-1000

Bryan Killian
Douglas A. Hastings
Brendan J. Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In accordance with Circuit Rule 28(a)(1), Intervenor for Defendant – Appellee Salix Pharmaceuticals, Inc. certifies:

## I. Parties and Amici

The Plaintiff – Appellant is Norwich Pharmaceuticals, Inc.

The Defendants – Appellees are Robert F. Kennedy Jr., in his official capacity as Secretary of Health and Human Services and Robert McKinnon Califf, M.D., in his official capacity as Commissioner of Food and Drugs; and the United States Food and Drug Administration.

Intervenors for Defendants – Appellees are Salix Pharmaceuticals, Inc. and Teva Pharmaceuticals USA, Inc.

There are no *amici curiae* in this case.

## II. Rulings Under Review

The rulings under review are the United States District Court for the District of Columbia's April 17, 2025 judgment (ECF No. 83), and April 17, 2025 order (ECF No. 81) and memorandum opinion (ECF No. 82) in *Norwich Pharmaceuticals, Inc. v. Kennedy, et al.*, No. 1:25-cv-00091.

## III. Related Cases

This case is related to *Norwich Pharmaceuticals Inc. v. Kennedy et. al*, No. 23-5311 (D.C. Cir.). This case is also related to *Salix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567 and 145 S. Ct. 983 (2024) and *Salix Pharmaceuticals, Inc. v. Norwich Pharmaceuticals, Inc.*, No. 1:24-cv-7140 (D.N.J. filed June 20, 2024) involving substantially the same parties and similar issues.

/s/ Bryan Killian

Bryan Killian
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Intervenor for Defendant – Appellee Salix Pharmaceuticals, Inc. certifies:

Salix Pharmaceuticals, Inc. is a pharmaceutical company specializing in prevention and treatment of gastrointestinal diseases and disorders.

The parent company of Salix Pharmaceuticals, Inc. is Bausch Health Companies Inc., which owns 10% or more of stock in Salix Pharmaceuticals, Inc.

/s/ Bryan Killian
Bryan Killian
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

# CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases.............................i

Corporate Disclosure Statement.............................................................iii

Contents......................................................................................................... iv

Authorities...................................................................................................... v

Glossary .......................................................................................................vii

Summary of Argument............................................................................... 1

Argument....................................................................................................... 2

I.   Patent-related timing rules, which FDA has not addressed, prevent immediate approval. ........................................................ 2

II.  Multiple sufficient causes satisfy but-for causation....................... 5

III. Norwich's arguments about but-for causation misconstrue the FTOTA forfeiture provision. ...................................................... 8

IV.  *Norwich's* administrative record lacks evidence necessary for a but-for analysis of *Actavis's* ANDA............................................ 10

V.   The available evidence supports Actavis...................................... 11

Conclusion ................................................................................................. 15

Certificate of Compliance....................................................................... 16

Certificate of Service .............................................................................. 17

# AUTHORITIES

Page(s)

CASES

*Burrage v. United States,*
   571 U.S. 204 (2014)...........................................................................5, 7

*FDA v. Wages & White Lion,*
   604 U.S. 542 (2025)..............................................................................5

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
   570 U.S. 338 (2013)...........................................................................5, 7

STATUTES

21 U.S.C. § 355(j)(5)(A)...............................................................................8

21 U.S.C. § 355(j)(5)(B)...............................................................................3

21 U.S.C. § 355(j)(5)(B)(ii)..........................................................................3

21 U.S.C. § 355(j)(5)(B)(iii).........................................................................3

21 U.S.C. § 355(j)(5)(D)(i)(IV).............................................................6, 8, 11

RULES & REGULATIONS

21 CFR 314.110(a)(1)..................................................................................13

21 CFR §314.110(b)(1)..................................................................................8

OTHER AUTHORITIES

180-Day Exclusivity: Questions and Answers (January 2017), available
   at https://www.fda.gov/media/102650/download................................13

*FDA's Activities Report of the Generic Drugs Program* (FY 2018),
  available at https://www.fda.gov/drugs/abbreviated-new-drug-
  application-anda/activities-report-generic-drugs-program-fy-2018-
  monthly-performance.............................................................................. 8

Restatement of Torts § 431, Comment *a* ................................................. 6

Restatement (Third) of Torts § 27 (2010) ................................................. 6

*Rethinking Actual Causation in Tort Law*,
  130 Harv. L. Rev. 2163 (2017) ............................................................... 6

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012)
  ................................................................................................................ 7

# GLOSSARY

<u>Names</u>

| | |
|---|---|
| ANDA | abbreviated new drug application |
| FDA | Food & Drug Administration |
| FDCA | Food, Drug & Cosmetic Act |
| FTOTA | failure to obtain tentative approval |
| HE | overt hepatic encephalopathy |
| IBS-D | irritable bowel syndrome with diarrhea |
| TD | traveler's diarrhea |
| Timing Rule *ii* | 21 U.S.C. §355(j)(5)(B)(ii) |
| Timing Rule *iii* | 21 U.S.C. §355(j)(5)(B)(iii) |

<u>Citations</u>

| | |
|---|---|
| AOB | Appellant's Opening Brief |
| RBS | Response Brief of Salix |
| REPLY | Appellant's Reply Brief |
| SUPP | Appellant's Supplemental Brief |

# SUMMARY OF ARGUMENT

ANDA '370 cannot be immediately approved. FDA withheld final approval after concluding that Norwich cannot market 550mg Rifaximin until 180 days after Actavis starts marketing 550mg Rifaximin. Separately, patent-related timing rules also block immediate approval of ANDA '370 (RBS 13–15). Remand is necessary for FDA to address those rules before approving ANDA '370. The Court, therefore, should not itself decide FTOTA forfeiture under a new standard, but should remand that matter to FDA.

Furthermore, the Court cannot itself decide FTOTA forfeiture because the administrative record for *Norwich's* ANDA lacks the information necessary to apply but-for causation to *Actavis's* ANDA. The missing information likely would demonstrate that FDA's change and review of approval requirements were a but-for cause of Actavis's failure to obtain tentative approval within 30 months. The limited evidence available strongly suggests as much.

# ARGUMENT

## I. Patent-related timing rules, which FDA has not addressed, prevent immediate approval.

Norwich's case and appeal falsely presume that Actavis's exclusivity is the only thing preventing ANDA '370's immediate approval. Norwich focuses on Actavis's actions because they direct the Court's attention away from Norwich's own actions—specifically, Norwich's Paragraph III and IV certifications to Salix's patents. Irrespective of Actavis's exclusivity, Norwich's certifications separately block immediate approval and dictate the earliest possible approval date of ANDA '370.

The relevant facts are simple. FDA approved Salix to market 200mg Rifaximin for TD and 550mg Rifaximin for HE and IBS-D. In the Orange Book, Salix listed patents covering Rifaximin's indications and polymorphic compositions, including the '115 patent for TD and the '912 and '571 patents for IBS-D. Norwich originally submitted two ANDAs, ANDA '369 for 550mg Rifaximin for HE and IBS-D and ANDA '370 for 200mg Rifaximin for TD. In 2019, when Norwich submitted ANDA '370 (JA373), Norwich didn't contest Salix's patents and made Paragraph III certifications for, *inter alia*, the '115 patent. In 2024, after failing to obtain immediate approval of ANDA '369, rather than submit a new ANDA for 550mg

Rifaximin for IBS-D only, Norwich amended ANDA '370 to seek approval for 550mg Rifaximin for IBS-D (JA372). With the amendment, Norwich made Paragraph IV certifications for the '912 and '571 patents (JA765), its first Paragraph IV certifications for ANDA '370.

Norwich's Paragraph III and IV certifications, which remain part of ANDA '370, underpin two statutory timing rules that, independent of Actavis's exclusivity, block immediate approval:

- Pursuant to Timing Rule *ii* (21 U.S.C. § 355(j)(5)(B)(ii)), FDA cannot approve ANDA '370 before the '115 patent expires because Norwich made a Paragraph III certification for that patent (JA764–765).

- Pursuant to Timing Rule *iii* (21 U.S.C. § 355(j)(5)(B)(iii)), if FDA treats Norwich's amendment as an application for 550mg Rifaximin approvable apart from the application for 200mg Rifaximin, Norwich's Paragraph IV certifications trigger a 30-month stay of approval.

Which Timing Rule applies depends on how FDA characterizes Norwich's 2024 submission and the relevant "application" (21 U.S.C. § 355(j)(5)(B)):

- If the submission *adds to* the existing application, Norwich's Paragraph III certification and Timing Rule *ii* block approval of the unitary application until **July 2029**.

- If the submission *constitutes* an application for 550mg only, Norwich's Paragraph IV certifications and Timing Rule *iii* block approval until **November 2026** (at the earliest).

Norwich's administrative record reflects inconsistent approaches to these issues. A memo-to-file expresses the Office of Generic Drugs' decision "not to apply a 30-month stay" (JA755), in which case Norwich's Paragraph III certification blocks approval of the unitary ANDA '370 until July 2029. Yet, in its decision, FDA discussed both strengths separately (JA765), implying it *doesn't* view ANDA '370 unitarily.

Ultimately, FDA avoided addressing and resolving the inconsistency by relying on Actavis's exclusivity to tentatively approve both strengths. So, if the Court rejects FDA's approach to FTOTA forfeiture and Actavis's exclusivity, the Court must remand for FDA to address these issues and resolve the inconsistency. Norwich concedes that Salix has diligently requested "remand for FDA to address [these] *other* issues" (SUPP 13) because, as Norwich also concedes, Salix "cannot … challenge" Timing Rules *ii* and *iii* "here" (REPLY 27).

"[E]xcept in rare circumstances," "remand to the agency for additional investigation or explanation" is "the better course when an agency error is identified." *FDA v. Wages & White Lion*, 604 U.S. 542, 587 (2025) (internal quotation marks omitted). Here, it's the *necessary* course. Because of Timing Rules *ii* and *iii*, FDA cannot immediately approve ANDA '370, and the Court likewise cannot order FDA to approve ANDA '370 immediately. So, if the Court adopts a new approach to FTOTA forfeiture, the Court must remand for FDA to consider all timing issues in the first instance.

## II.   Multiple sufficient causes satisfy but-for causation.

If the statutory exception for FTOTA forfeiture requires more than substantial-factor causation, it would be satisfied by multiple sufficient causes. The Court should remand for FDA to evaluate that possibility.

At issue are the following competing "actual" or "factual" cause tests:

- <u>Substantial-factor test</u>: Something can be a factual cause if it affects the result, even if it was neither a necessary nor sufficient cause. *See Burrage v. United States*, 571 U.S. 204, 215–16 (2014).

- <u>But-for test</u>: Something can be a factual cause if "'the harm would not have occurred' in the absence of [the event]." *Univ. of Texas Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013) (quoting Restatement of Torts § 431, Comment *a* (negligence)).

"[N]otwithstanding its apparent simplicity, the but-for—or counterfactual—conception of actual causation has well-recognized problems," most notably the problem of multiple sufficient causes. *Rethinking Actual Causation in Tort Law*, 130 Harv. L. Rev. 2163, 2164 (2017). As such, it's well-established that a situation presenting multiple sufficient causes satisfies a law that requires more than substantial-factor causation. *See* Restatement (Third) of Torts § 27 (2010).

Norwich accuses FDA of using substantial-factor causation and argues the FDCA requires more (AOB 54). At the same time, Norwich contends the FDCA forbids FDA from considering multiple sufficient causes as satisfying an elevated standard (AOB 55). That latter contention lacks merit.[1] Supreme Court decisions *rejecting* substantial-factor causation and *requiring* but-for causation have simultaneously expressed that a "party can prove the existence of multiple, independently sufficient

---

[1] Salix maintains that substantial-factor causation is the best interpretation of 21 U.S.C. § 355(j)(5)(D)(i)(IV) because constructing the but-for world accurately is overly complex, inadministrable, and certain to spawn emergency litigation in every FTOTA forfeiture determination going forward.

factual causes." *Nassar*, 570 U.S. at 347 (citation omitted). *Burrage*, for example, entertained the government's contention that multiple sufficient causes would satisfy the statute, then found the government lacked evidence of multiple sufficient causes. 571 U.S. at 215–16.

None of the authorities Norwich cites holds that Congress's use of words like "because of" or "cause" forbids courts or agencies from considering multiple sufficient causes. That would be anomalous. Multiple sufficient cause is part of the background rules of factual causation. *See Nassar*, 570 U.S. at 347. Congress would presumably use special words to prohibit courts and agencies from using that common-law standard. *See Burrage*, 571 U.S. at 211; *see also* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012) ("A statute will be construed to alter the common law only when that disposition is clear.")

Per the Court's order, the remainder of this brief focuses on but-for cause. But, if the Court determines that FTOTA forfeiture requires more than substantial-factor causation, it would be satisfied by multiple sufficient causes, and the Court should remand for FDA to evaluate that possibility.

## III. Norwich's arguments about but-for causation misconstrue the FTOTA forfeiture provision.

The FDCA's timetables establish that, during the 30-month period following submission of an ANDA, a First Applicant may make *multiple* attempts to secure approval. FDA is supposed to approve or disapprove an ANDA within 180 days (21 U.S.C. § 355(j)(5)(A)). If FDA renders an unfavorable Complete Response letter and the Applicant doesn't pursue reconsideration (*id.* § 355(j)(5)(E)), the Applicant can respond to a Complete Response letter and/or resubmit its ANDA with changes (21 CFR §314.110(b)(1)). The process then restarts. FTOTA forfeiture becomes relevant only after 30 months—typically, after several go-rounds.[2]

In asserting that "Actavis's ANDA was defective and unapprovable from the day it was filed in 2015" (SUPP 8), Norwich wrongly implies that Actavis had only one shot at approval, such that any deficiency unrelated to a "change in or a review of the requirements for approval" (*id.* § 355(j)(5)(D)(i)(IV))) proves FDA wouldn't have approved Actavis's

---

[2] In 2018, only about 18% of ANDA approvals were "first cycle approvals" (*i.e.*, approved on the initial submission). *FDA's Activities Report of the Generic Drugs Program* (FY 2018), available at https://www.fda.gov/drugs/abbreviated-new-drug-application-anda/activities-report-generic-drugs-program-fy-2018-monthly-performance.

ANDA before the 30-month outer limit. During oral argument, the Court expressed a similar assumption, analogizing FTOTA forfeiture to moving goalposts during a field-goal attempt and asking, if the football is obviously going wide off the kick, how could moving the goalposts be a but-for cause of a miss?

Because First Applicants get multiple approval attempts over 30 months, the more relevant question is whether moving goalposts was a but-for cause of a team's failure *to win the game*. To answer that, one must consider, not just the first missed field-goal, but also how the team's strategy and performance changed *over the rest of the game*. Perhaps, because of the moved goalposts, the team stopped kicking, missed two-point conversions (that would've been extra-point attempts), and lost the game. With detailed evidence, one could reasonably conclude the team would've won the game but-for the moved goalposts.

As a football team has multiple plays to win the game, First Applicants have multiple tries to obtain FDA approval. So, assuming but-for cause is the standard, the question one must answer is whether, but-for the time FDA spent "review[ing]" approval requirements and but-for FDA "chang[ing]" approval requirements, Actavis would have resolved

any other deficiencies, satisfied the approval requirements, and obtained approval within 30 months.

## IV.  *Norwich's* administrative record lacks evidence necessary for a but-for analysis of *Actavis's* ANDA.

To determine what would've happened but-for FDA's change and/or review of approval requirements, one needs detailed evidence about Actavis, its ANDA, its capabilities, its reasons for doing (or not doing) things, FDA's capabilities and determinations, and more. Remand is required because that evidence is unavailable and/or not before the Court.

- Relevant evidence (if it exists) would be in the administrative record *for Actavis's ANDA.* FDA lodged the administrative record *for Norwich's ANDA* because Norwich challenges only the tentative approval of its ANDA. Norwich's administrative record includes only portions of Actavis's ANDA pertaining to FDA's non-forfeiture determination under its prevailing standard; it's inadequate for assessing forfeiture under a but-for standard.

- Necessary evidence may not yet be in the administrative record for Actavis's ANDA. Under its prevailing standard, FDA needed to find only one change of approval requirements to conclude that Actavis hadn't forfeited on FTOTA grounds—information FDA

necessarily possesses. To assess but-for causation, FDA would need substantial additional information—about Actavis—that FDA may not yet possess.

Because necessary evidence is unavailable, the Appellees cannot present a complete countertheory to Norwich's but-for world and thus could not possibly have forfeited any such arguments, as Norwich contends (SUPP 2, 8, 10–14). That alone requires remand.

## V. The available evidence supports Actavis.

Available evidence strongly suggests FDA could find that its change and/or review of approval requirements were a but-for cause of Actavis not obtaining tentative approval within 30 months:

- Norwich focuses exclusively on the one *change* to the March 2017 Rifaximin product-specific guidance FDA relied upon under its causation standard (SUPP 9). But FTOTA forfeiture also asks whether a failure was "caused by … *review*" of approval requirements (21 U.S.C. § 355(j)(5)(D)(i)(IV) (emphasis added)). FDA's lengthy review of approval requirements *also* contributed to the delays here. FDA missed the statutory 180-day target for approving or disapproving Actavis's first submission, sending its first

Complete Response letter 17 months into the 30-month period, after significantly revising guidance. After Actavis's response, FDA likely reviewed its approval requirements again because Actavis

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ JA 540–41.

- FDA considers bioequivalence based on the totality of the data presented. Thus, FDA's consideration of bioequivalence requirements for Rifaximin ANDAs extended beyond dissolution studies. The revised guidance establishes a bifurcated pathway to approval based on the specific formulation proposed by an ANDA applicant. How the guidance impacted FDA's evaluation of Actavis's specific formulation was front and center in Actavis's submissions to FDA. JA536–43.

- The evidence strongly suggests Actavis could have timely addressed FDA's remaining concerns. FDA's second Complete Response letter shows that Actavis addressed nearly all ███████ ███████████ deficiencies FDA identified in the first Complete Response letter. The relative size and scope of any remaining ██████ ██████ concerns strongly suggest that they would not have

prevented approval and that Actavis could have addressed them quickly.

- Inspectional issues that arose *after* the 30-month mark logically cannot be the cause of FDA's failure to tentatively approve the ANDA *before* that mark. Had FDA determined that inspectional issues precluded ANDA approval before the 30-month mark, it would have said so in its first Complete Response letter (21 CFR 314.110(a)(1)). It did not.

Emphasizing that 7.5 years have passed, Norwich infers that other, unresolvable deficiencies must be the true cause of Actavis's failure to obtain tentative approval (SUPP 2–3, 10). That inference is unwarranted, even based upon the evidence available. Under FDA's clearly articulated standard for FTOTA forfeiture, the agency *itself* believed it had no need to hurry its review of Actavis's ANDA after changing the guidance.[3] FDA's guidance changes caused FDA to delay reviewing Actavis's ANDA.

Norwich cannot fault Actavis for FDA's delay. FDA rejected Norwich's assertion that Actavis failed to diligently pursue approval (JA384), and

---

3  180-Day Exclusivity: Questions and Answers (January 2017), available at https://www.fda.gov/media/102650/download

Norwich abandoned its challenge of that finding at summary judgment (ECF No. 39). FDA's diligence finding thus binds Norwich.

In short, the existing record strongly suggests that, (1) had FDA promptly delivered a Complete Response letter by Day 180 limited to deficiencies unrelated to FDA's change or review of approval requirements, (2) Actavis would have addressed those deficiencies expeditiously, and (3) FDA would have tentatively approved Actavis's ANDA before 30 months. If the Court determines that but-for cause applies, remand is necessary for FDA to develop a full administrative record of Actavis's ANDA to evaluate this probability.

# CONCLUSION

If the judgment is not affirmed, the Court must remand to FDA.

Respectfully submitted,

/s/ Bryan Killian

Bryan Killian
Douglas A. Hastings
Brendan Anderson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

Michael J. Abernathy
Wan-Shon Lo
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Dr.
Chicago, Ill. 60606
T: 312-324-1000

January 23, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1), I certify that the foregoing meets the type-volume limitations of Rule 32(a)(7)(B) and Circuit Rule 32(e)(1) because it contains 2,414 words.

/s/ Bryan M. Killian

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

/s/ Bryan M. Killian