# EXHIBIT A

**ARGUED ON DECEMBER 11, 2025**

**No. 25-5137**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NORWICH PHARMACEUTICALS, INC.,
*Plaintiff-Appellant*,

v.

ROBERT F. KENNEDY JR., in his official capacity as Secretary of Health and Human Services; MARTIN M. MAKARY, in his official capacity as Commissioner of Food and Drugs; UNITED STATES FOOD AND DRUG ADMINISTRATION,
*Defendants-Appellees*,

TEVA PHARMACEUTICALS USA, INC.; SALIX PHARMACEUTICALS, INC.,
*Intervenors-Appellees*.

On Appeal from the United States District Court for the District of Columbia, No. 1:25-cv-00091, Hon. Beryl A. Howell

**BRIEF OF AMICUS CURIAE ASSOCIATION FOR ACCESSIBLE MEDICINES IN SUPPORT OF APPELLEES**

David Zimmer
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Dr.
Cambridge, MA 02139
(617) 676-9421

*Counsel for Amicus Curiae*

January 28, 2026

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

*Parties and Amici*: All parties and intervenors appearing before the district court and this Court are listed in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc. The Association for Accessible Medicines is the only amicus to have appeared before this Court.

*Rulings Under Review*: References to the ruling at issue appear in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.

*Related Cases*: To *amicus*'s knowledge, all related cases are listed in Plaintiffs-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

Date: January 28, 2026           */s/ David Zimmer*
                                 David Zimmer


# DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a), and D.C. Circuit Rule 26.1, counsel for *amicus curiae* states as follows: The Association for Accessible Medicines is a 501(c) nonprofit organization. It has no parent corporation and issues no stock, and no publicly held corporation owns a 10% or greater interest in it.

Date: January 28, 2026           */s/ David Zimmer*
                                 David Zimmer

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ..................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................3

ARGUMENT ..................................................................................................4

    I.    This Court Should Remand to FDA To Apply and Address the Implications of Any But-For Causation Standard. ....................................5

        A.    A But-For Standard Would Diminish the Incentive To Challenge Brand Patents. ..................................................................5

        B.    A But-For Standard Risks Serious Administrability Concerns. .......9

        C.    FDA Should Address Any But-For Standard in Light of These Issues in the First Instance. ..................................................................9

    II.    The Same Issues Weigh Against Adopting a But-For Standard. .............10

CONCLUSION .............................................................................................11

CERTIFICATE OF COMPLIANCE .................................................................13

CERTIFICATE OF SERVICE .........................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Calcutt v. FDIC*,
　　598 U.S. 623 (2023)......................................................................................9

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
　　376 F.3d 1123 (D.C. Cir. 2004)...................................................................11

*Loper Bright Enters. v. Raimondo*,
　　603 U.S. 369 (2024).................................................................................4, 10

*Teva Pharms. USA, Inc. v. Sebelius*,
　　595 F.3d 1303 (D.C. Cir. 2010).............................................................. 3, 5, 6

**Statute**

21 U.S.C. § 355(j)(5)(D)(i)(IV) ....................................................... 1, 2, 3, 4, 5, 6, 8

**Other Authorities**

Tsakiridou et al., *Challenges in the Investigation of Therapeutic Equivalence of
　　Locally Applied/Locally Acting Drugs in the Gastrointestinal Tract: The
　　Rifaximin Case*, Pharmaceutics (2025), available at
　　　　https://pubmed.ncbi.nlm.nih.gov/40733048/...................................................7

# GLOSSARY

| | |
|---|---|
| AAM | Association for Accessible Medicines |
| ANDA | abbreviated new drug application |
| FDA | Food and Drug Administration |
| Hatch-Waxman Act | Drug Price Competition and Patent Term Restoration Act of 1984 |
| MMA | Medicare Prescription Drug, Improvement and Modernization Act of 2003 |

# INTEREST OF AMICUS CURIAE[1]

The Association for Accessible Medicines ("AAM") is a nonprofit, voluntary association representing manufacturers and distributors of generic and biosimilar medicines and bulk active pharmaceutical chemicals, as well as suppliers of other goods and services to the generic pharmaceutical industry. AAM's members provide patients with access to safe and effective generic and biosimilar medicines at affordable prices. AAM's core mission is to improve the lives of patients by providing timely access to safe, effective, and affordable prescription medicines. Generic drugs constitute more than 90% of all prescriptions dispensed in the United States, yet generics account for only 12% of total drug spending.

AAM regularly participates in litigation as an *amicus curiae*. AAM and its members have a significant interest in the questions presented in this appeal, which directly impact the incentives for generic drug manufacturers to develop and market generic drugs, providing patients with a diverse supply of safe, effective, and lower-cost medicines. Whether FDA should have the first opportunity to implement any but-for causation standard under 21 U.S.C. § 355(j)(5)(D)(i)(IV)—as well as the underlying question whether this Court should apply such a but-for standard in the first place—will have a dramatic impact on the generic drug industry. Since

---

[1] No counsel for a party authored this brief in whole or in part, and no party, party's counsel, or person or entity other than AAM or its counsel contributed money that was intended to fund the preparation or submission of this brief.

1

Congress enacted the MMA in 2003, the generic drug industry has operated with the settled understanding that but-for causation is *not* required in determining whether a generic drug company's failure to obtain tentative approval (or final approval when tentative approval is not appropriate) within 30 months of ANDA submission was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV). Any change to that settled understanding—especially one implemented directly by this Court without allowing FDA to apply any new causation standard in the first instance—could significantly disrupt the generic drug industry.

A separate brief by AAM is appropriate. AAM is uniquely positioned to address the impact of this case on the generic marketplace and its amicus brief is addressed specifically to those issues where AAM's perspective will aid this Court.

AAM's perspective is particularly valuable because the question whether § 355(j)(5)(D)(i)(IV) requires but-for causation generally arises in disputes *between* generic drug companies. AAM therefore has members who have taken positions on both sides of this issue. Nevertheless, the risks to the generic drug industry as a whole from a but-for standard not carefully implemented by FDA have led AAM to submit this brief.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Hatch-Waxman Act's 180-day exclusivity period revolutionized the generic drug industry in the United States by creating the "the promise of a reward for generics that stick out their necks (at the potential cost of a patent infringement suit) by claiming that patent law does not extend the brand maker's monopoly as long as the brand maker has asserted." *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1318 (D.C. Cir. 2010). While Congress subsequently determined that a generic drug manufacturer forfeits eligibility for that exclusivity if it does not obtain tentative approval within 30 months of submission of its application, Congress included a crucial limitation on that forfeiture: It does not apply if the generic's failure to obtain approval was "caused by a change in or a review of the requirements for approval." 21 U.S.C. §355(j)(5)(D)(i)(IV).

Holding that a generic drug manufacturer must establish but-for causation to obtain the benefits of this limitation would jettison more than a decade of agency practice and guidance and risk dramatically undermining the value of 180-day exclusivity for those applicants who made product development and patent litigation decisions based on this historical practice—significantly disrupting the generic drug industry. To the extent this Court is nevertheless inclined to impose such a but-for standard, it should at least allow FDA to apply the standard in the first instance given

3

the importance of any change in causation to the industry and the potential difficulties involved in applying that standard at the agency level.

## ARGUMENT

If this Court adopts a but-for standard, AAM strongly urges this Court to allow FDA to apply any but-for causation standard in the first instance. Holding that § 355(j)(5)(D)(i)(IV) requires but-for causation would upend settled incentives in the generic drug industry and significantly undermine the value of 180-day exclusivity—potentially limiting incentives to develop generic drugs and hurting consumers. It would also impose a significant administrative burden on both generic drug companies seeking to argue that any delay was caused by a change in or review of the requirements for approval as well as FDA itself, which would have to resolve hundreds of complex factual disputes—past, present, and future—about what would have happened in a but-for world. To the extent this Court nevertheless holds that but-for causation is required, it should at least give FDA the opportunity to apply this Court's new standard in the first instance in light of these concerns. These concerns also weigh strongly in favor of adhering to FDA's settled understanding of the statute and avoiding a but-for standard in the first place. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

**I.     This Court Should Remand to FDA To Apply and Address the Implications of Any But-For Causation Standard.**

FDA should have the opportunity to apply any new but-for causation standard and address the significant impact that standard would have on incentives and administrability.

**A.     A But-For Standard Would Diminish the Incentive To Challenge Brand Patents.**

The Hatch-Waxman Act's 180-day exclusivity period has been a primary driver of the growth of the generic drug industry in the Untied States since Congress enacted that statute. While that exclusivity period limits full generic drug competition for 180 days, this Court has correctly recognized that the exclusivity provision is ultimately "a pro-consumer device" because it is needed "to induce challenges to patents claimed to support brand drugs." *Teva*, 595 F.3d at 1318. Absent the potential for some exclusivity period, there would be far less incentive to develop generic drugs in the first place.

In 2003, Congress limited the exclusivity provision by establishing that a generic drug company forfeits eligibility for exclusivity if fails to obtain tentative approval (or final approval when tentative approval is not appropriate) within 30 months of ANDA submission—but it included a critical exception to forfeiture for situations in which that failure was "caused by a change in or a review of the requirements for approval." 21 U.S.C. §355(j)(5)(D)(i)(IV). Since FDA first began

implementing this provision more than a decade ago, it has concluded that the phrase "caused by" does *not* require but-for causation. *See* Teva Br. 48-49; FDA Br. 45-46.

The settled expectations of the generic drug industry are based on FDA's longstanding guidance and practice. In deciding whether to take on "the potential cost of a patent infringement suit," *Teva*, 595 F.3d at 1318, a generic drug manufacturer must understand the likelihood that it will be remain eligible for exclusivity.

FDA's settled causation standard plays a critical role in evaluating that likelihood. FDA review of a generic drug application is always complex, time-consuming, and uncertain—and often involves FDA changing its requirements in its ongoing efforts to protect patients and consumers. That is particularly true in the context of the first application from a generic drug manufacturer to market a generic form of a particular brand drug. In the context of such a first application, FDA is often trying to work out the relevant science at the same time FDA evaluates the application, including sometimes issuing new product-specific guidance after application submission. As FDA's understanding of that science evolves, FDA necessarily (and appropriately) will "change" or "review" its "requirements for approval" after the first ANDA is submitted to the agency. 21 U.S.C. § 355(j)(5)(D)(i)(IV). Generic drug companies have long been able to rely on

FDA's causation standard, which ensures that, where such a change or review has delayed the FDA process in a relevant way, and the generic drug applicant diligently seeks to address that potential change, the generic drug applicant will not lose eligibility for the exclusivity period on which its decision to develop the generic drug turned.

Imposing a but-for causation standard would upend these settled expectations. Identifying a but-for world risks being incredibly complex and uncertain—in other contexts, like antitrust litigation, it involves detailed and highly contested expert reports and testimony to decide when FDA approval might have occurred but-for a particular development. Given the inevitable complexities of developing a generic drug product (and especially a *first* generic drug product), there could be different competing narratives as to why the first applicant would not have met the 30-month forfeiture deadline even absent FDA's change or review of its requirements for approval. Litigating that dispute before FDA will not only be costly but will add significant uncertainty to the first applicant's ability to obtain exclusivity—and, as a result, significantly diminish generic drug companies' incentives to challenge brand drug companies' patents in the first instance.

These problems will be the most severe in the context of the most complex drugs in which generics are most needed. Take, for instance, the context of complex generics that include a drug in a delivery system such as an asthma inhaler. Or even

7

this case, in which the locally acting nature of the drug posed particular challenges for evaluating bioequivalence.² Tentative approval in that context is incredibly complex and is rarely completed within 30 months. Those delays are caused in part by FDA inevitably (and, again, appropriately) changing the requirements for approval as it understands the product and the relevant science. But delays can also be caused, in part, by obstacles that the generics face in developing these highly complex products.

That uncertainty about the viability of an exclusivity award would make it far less likely that a generic drug company would seek to market a complex generic in the first instance and incur the expense not only of development, but also of costly patent litigation. Ex ante, the generic drug company knows that tentative approval is likely to take more than 30 months. It therefore knows it will likely have to show that the delay was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV). Under FDA's settled rule, a generic drug manufacturer can be relatively confident that, if FDA moving the goalposts sufficed on its own to prevent approval within 30 months, the first applicant will retain its eligibility for exclusivity. Under a but-for standard, however, it could be

---

² *See* Tsakiridou et al., *Challenges in the Investigation of Therapeutic Equivalence of Locally Applied/Locally Acting Drugs in the Gastrointestinal Tract: The Rifaximin Case*, Pharmaceutics (2025), available at https://pubmed.ncbi.nlm.nih.gov/40733048/.

8

far more difficult to predict the outcome as to exclusivity, even where, in reality, FDA's changing review criteria actually *were* the but-for cause of the failure to obtain approval within 30 months. That result risks fewer and less timely generic challenges to brand patents in the context of complex drugs—and significant delay of access to patients.

> B. **A But-For Standard Risks Serious Administrability Concerns.**

As discussed above, identifying what would have happened in a but-for world in which FDA made no changes in or reviews of the requirements for approval could be extremely difficult. In district court litigation, but-for causation issues in other contexts can be the subject of multiple expert reports, *Daubert* motions, and complex jury trials. Adjudicating similarly complex disputes—with similarly high stakes—before FDA could impose a significant burden on generic drug companies and the agency itself depending on how FDA implements a but-for standard. Indeed, the supplemental briefs before this Court highlight just how fact-intensive and uncertain these questions can be. *See, e.g.*, Teva Supplemental Br. 3-11.

> C. **FDA Should Address Any But-For Standard in Light of These Issues in the First Instance.**

While FDA would obviously be bound by this Court's interpretation of the statute, the agency should have the opportunity, in the first instance, to work out how to apply that holding in the context of this industry and the type of adjudicative process available to FDA. For this Court to simply resolve the intensely factual

disputes about but-for causation in the first instance would not only violate the "ordinary remand rule," *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023), but also unnecessarily hamstring FDA in identifying the best way to implement this Court's decision.

## II. The Same Issues Weigh Against Adopting a But-For Standard.

For the same reasons that AAM urges the Court to remand if it applies a but-for causation standard, AAM also urges the Court to avoid such a standard in the first place. AAM agrees with, but will not repeat, FDA's and Teva's arguments about why FDA's interpretation is the best reading of the statute. But for the reasons explained above, this is exactly the type of case in which, under *Loper Bright*, the agency's "longstanding practice" is a particularly valuable "interpretive aid." 603 U.S. at 386.

The Supreme Court held in *Loper Bright* that courts cannot defer to the agency's interpretation of a statute, but it emphasized both that courts can still "seek aid from the interpretations of those responsible for implementing particular statutes" and that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." 603 U.S. at 394. The Court similarly explained that an executive interpretation that "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time" was particularly

important because "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Id.* at 386 (cleaned up).

Here, the statute's vague reference to causation does not automatically require but-for causation, as can be seen from this Court's decision in *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004). And FDA has consistently interpreted the statute to *not* require but-for causation, dating back more than a decade to FDA's first implementation of the MMA. FDA's causation standard now forms a settled expectation on which generic drug companies routinely base their decisions. As discussed above, upending that settled expectation would create significant disruption to the generic drug industry and create administrability problems for generic drug companies appearing before FDA and for FDA itself. AAM urges this Court, consistent with *Loper Bright*, to view FDA's "longstanding practice" as a crucial "interpretive aid" in this case and affirm both the district court and FDA's causation standard.

## CONCLUSION

This Court should affirm or, if the Court requires a but-for standard, remand to allow FDA to apply that standard in the first instance.

Dated: January 28, 2026				Respectfully submitted,

				/s/ David Zimmer
				David Zimmer
				ZIMMER, CITRON & CLARKE LLP
				130 Bishop Allen Dr.
				Cambridge, MA 02139
				(617) 676-9421

				*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This brief contains 2,486 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point font for text and footnotes.


Dated: January 28, 2026                     */s/ David Zimmer*
                                            David Zimmer

# CERTIFICATE OF SERVICE

I, David Zimmer, certify that, on this date, I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.


Dated: January 28, 2026                     */s/ David Zimmer*
                                            David Zimmer