**ARGUED ON DECEMBER 11, 2025**

**No. 25-5137**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NORWICH PHARMACEUTICALS, INC.,
*Plaintiff-Appellant*,

v.

ROBERT F. KENNEDY JR., in his official capacity as Secretary of Health and Human Services; MARTIN M. MAKARY, in his official capacity as Commissioner of Food and Drugs; UNITED STATES FOOD AND DRUG ADMINISTRATION,
*Defendants-Appellees*,

TEVA PHARMACEUTICALS USA, INC.; SALIX PHARMACEUTICALS, INC.,
*Intervenors-Appellees.*

On Appeal from the United States District Court for the District of Columbia, No. 1:25-cv-00091, Hon. Beryl A. Howell

# BRIEF OF AMICUS CURIAE ASSOCIATION FOR ACCESSIBLE MEDICINES IN SUPPORT OF INTERVENOR-APPELLEE TEVA PHARMACEUTICALS USA'S PETITION FOR REHEARING EN BANC

David Zimmer
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Ave., 6th Floor
Boston, MA 02111
(617) 676-9421

*Counsel for Amicus Curiae*

October 16, 2026

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

***Parties and Amici***: All parties and intervenors appearing before the district court and this Court are listed in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc. The Association for Accessible Medicines is the only amicus to have appeared before this Court.

***Rulings Under Review***: References to the ruling at issue appear in the Opening Brief of Appellant Norwich Pharmaceuticals, Inc.

***Related Cases***: To amicus's knowledge, all related cases are listed in Plaintiff-Appellant's D.C. Circuit Rule 28(a)(1) certificate.

Date: October 16, 2026

*/s/ David Zimmer*
David Zimmer

## DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a), and D.C. Circuit Rule 26.1, counsel for amicus curiae states as follows: The Association for Accessible Medicines is a 501(c) nonprofit organization. It has no parent corporation and issues no stock, and no publicly held corporation owns a 10% or greater interest in it.

Date: October 16, 2026

*/s/ David Zimmer*
David Zimmer

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 4

I. The Panel's Decision Upends Settled Expectations, Diminishes Incentives To Challenge Patents, and Causes Administrability Concerns—All Harming Consumers. ........ 4

  A. A But-For Standard Diminishes the Incentives To Challenge Brand Patents ........ 5

  B. A But-For Standard Risks Serious Administrability Concerns. ........ 9

II. The Panel Improperly Gave No Weight To FDA Expertise. ........ 10

CONCLUSION ........ 11

CERTIFICATE OF COMPLIANCE ........ 13

CERTIFICATE OF SERVICE ........ 13

# TABLE OF AUTHORITIES

## Cases

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922 (D. Kan. 2021) ....7

*In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231 (D. Mass. 2014)....7

*In re Zetia (Ezetimibe) Antitrust Litig.*, 655 F. Supp. 3d 406 (E.D. Va. 2023) ....7

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123 (D.C. Cir. 2004)....11

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).... 4, 10, 11

*Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303 (D.C. Cir. 2010).... 3, 5, 6

## Statute

21 U.S.C. § 355(j)(5)(D)(i)(IV) .... 1, 2, 3, 4, 5, 6, 9

## Other Authorities

Tsakiridou et al., *Challenges in the Investigation of Therapeutic Equivalence of Locally Applied/Locally Acting Drugs in the Gastrointestinal Tract: The Rifaximin Case*, Pharmaceutics (2025), available at https://pubmed.ncbi.nlm.nih.gov/40733048/....8

## GLOSSARY

| | |
|---|---|
| AAM | Association for Accessible Medicines |
| ANDA | abbreviated new drug application |
| FDA | Food and Drug Administration |
| Hatch-Waxman Act | Drug Price Competition and Patent Term Restoration Act of 1984 |
| MMA | Medicare Prescription Drug, Improvement and Modernization Act of 2003 |

## INTEREST OF AMICUS CURIAE[1]

The Association for Accessible Medicines ("AAM") is a nonprofit, voluntary association representing manufacturers and distributors of generic and biosimilar medicines and bulk active pharmaceutical chemicals, as well as suppliers of other goods and services to the generic pharmaceutical industry. AAM's members provide patients with access to safe and effective generic and biosimilar medicines at affordable prices. AAM's core mission is to improve the lives of patients by providing timely access to safe, effective, and affordable prescription medicines. Generic drugs constitute more than 90% of all prescriptions dispensed in the United States, yet generics account for only 12% of total drug spending.

AAM regularly participates in litigation as an *amicus curiae*. AAM and its members have a significant interest in the questions presented in this appeal, which directly impact the incentives for generic drug manufacturers to develop and market generic drugs, providing patients with a diverse supply of safe, effective, and lower-cost medicines. Whether FDA is required to impose a but-for causation standard under 21 U.S.C. § 355(j)(5)(D)(i)(IV) will have a dramatic impact on the generic drug industry. Since Congress enacted the MMA in 2003, the generic drug industry has operated with the settled understanding that but-for causation is *not* required in

---

[1] No counsel for a party authored this brief in whole or in part, and no party, party's counsel, or person or entity other than AAM or its counsel contributed money that was intended to fund the preparation or submission of this brief.

determining whether a generic drug company's failure to obtain tentative approval (or final approval when tentative approval is not appropriate) within 30 months of ANDA submission was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV). The panel's new, but-for standard could significantly disrupt the generic drug industry.

A separate brief by AAM is appropriate. AAM is uniquely positioned to address the impact of this case on the generic marketplace and its amicus brief is addressed specifically to those issues where AAM's perspective will aid this Court.

AAM's perspective is particularly valuable because the question whether § 355(j)(5)(D)(i)(IV) requires but-for causation generally arises in disputes *between* generic drug companies. AAM therefore has members who have taken positions on both sides of this issue. The risks to the generic drug industry as a whole from a but-for standard have led AAM to submit this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The question presented in this en banc petition involves disputes between generic drug companies, and AAM therefore has members who have taken positions on both sides of that question. AAM nevertheless urges this Court to grant rehearing en banc because, while the panel's decision helps some generic drug companies and harms others in a given case, that decision poses a serious threat to the generic drug industry as a whole—and hence to the consumers who benefit from cheaper drugs.

The Hatch-Waxman Act's 180-day exclusivity period revolutionized the generic drug industry in the United States by creating "the promise of a reward for generics that stick out their necks (at the potential cost of a patent infringement suit) by claiming that patent law does not extend the brand maker's monopoly as long as the brand maker has asserted." *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1318 (D.C. Cir. 2010). While Congress subsequently determined that a generic drug manufacturer forfeits eligibility for that exclusivity if it does not obtain tentative approval within 30 months of submission of its application, Congress included a crucial limitation on that forfeiture: It does not apply if the generic's failure to obtain approval was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV).

Given the complexity and uncertainty inherent in FDA's process for approving the first generic drug product for a given brand drug, it is critical to ensure that generic drug companies can depend on retaining their exclusivity when FDA changes the review requirements. The more doubt about retaining exclusivity, the lower the incentives to challenge patents as Congress intended.

For more than a decade, FDA has applied a consistent causation standard that is faithful to the scheme Congress enacted. The panel in this case jettisoned that consistent agency interpretation and practice, holding that the phrase "caused by" requires that a generic drug company prove that a change in review requirements

was a but-for cause of FDA's failure to grant tentative approval within 30 months. That decision is not only wrong but also risks dramatically undermining the value of 180-day exclusivity—significantly disrupting the generic drug industry, potentially decreasing the incentives to develop the most complex generic drugs, and harming consumers.

## ARGUMENT

The panel's holding that § 355(j)(5)(D)(i)(IV) requires but-for causation upends settled incentives in the generic drug industry, significantly undermines the value of 180-day exclusivity, potentially limits incentives to develop generic drugs, and hence harms consumers. It also imposes a significant administrative burden on both generic drug companies invoking § 355(j)(5)(D)(i)(IV) and FDA itself, which will now have to resolve hundreds of complex factual disputes about what would have happened in a but-for world. These concerns weigh strongly in favor of granting rehearing en banc and adhering to FDA's settled understanding of the statute. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

### I. The Panel's Decision Upends Settled Expectations, Diminishes Incentives To Challenge Patents, and Causes Administrability Concerns—All Harming Consumers.

AAM agrees with Intervenor's arguments as to why the statute's text does not, on its own, require but-for causation. AAM submits this brief to explain just how disruptive the panel's decision will be for the generic drug industry and for the FDA

approval process. That disruption is relevant because, as the panel recognized, whether a phrase like "caused by" requires but-for causation turns on whether "textual or contextual indications suggest that but-for causation is inappropriate." Op. 19 (cleaned up). The context here weighs strongly against but-for causation.

### A. A But-For Standard Diminishes the Incentives To Challenge Brand Patents.

The Hatch-Waxman Act's 180-day exclusivity period has been a primary driver of the growth of the generic drug industry in the United States since Congress enacted that statute. While that exclusivity period limits full generic drug competition for 180 days, this Court has correctly recognized that the exclusivity provision is ultimately "a pro-consumer device" because it is needed "to induce challenges to patents claimed to support brand drugs." *Teva*, 595 F.3d at 1318. Absent the potential for some exclusivity period, there would be far less incentive to develop generic drugs in the first place.

In 2003, Congress limited the exclusivity provision by establishing that a generic drug company forfeits eligibility for exclusivity if it fails to obtain tentative approval (or final approval when tentative approval is not appropriate) within 30 months of ANDA submission—but it included a critical exception to forfeiture for situations in which that failure was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV). Since FDA first implemented this provision more than a decade ago, it has concluded that the phrase

"caused by" does *not* require but-for causation. *See* Teva Br. 48-49; FDA Br. 45-46. That has been FDA's settled (and sole) position since Congress enacted the statute.

The settled expectations of the generic drug industry are based on FDA's longstanding guidance and practice. In deciding whether to take on "the potential cost of a patent infringement suit," *Teva*, 595 F.3d at 1318, a generic drug manufacturer must understand the likelihood that it will remain eligible for exclusivity.

FDA's settled causation standard plays a critical role in evaluating that likelihood. FDA review of a generic drug application is always complex, time-consuming, and uncertain—and often involves FDA changing its requirements in its ongoing efforts to protect patients and consumers. That is particularly true in the context of the first application from a generic drug manufacturer to market a generic form of a particular brand drug. In the context of such a first application, FDA is often trying to work out the relevant science at the same time FDA evaluates the application, including sometimes issuing new product-specific guidance after application submission. As FDA's understanding of that science evolves, FDA necessarily (and appropriately) will "change" or "review" its "requirements for approval" after the first ANDA is submitted to the agency. 21 U.S.C. § 355(j)(5)(D)(i)(IV). As a result, generic drug companies will have to respond to

these evolving requirements, which can require time-consuming efforts to submit new data or analysis of existing data.

FDA's longstanding causation standard ensures that, where such a change or review has delayed the FDA process in a relevant way, and the generic drug applicant diligently seeks to address that potential change, the generic drug applicant will not lose eligibility for the exclusivity period on which its decision to develop the generic drug turned.

Imposing a but-for causation standard would upend these settled expectations and undermine the incentive to challenge brand patents. Identifying a but-for world is often incredibly complex and uncertain. In other contexts, like antitrust litigation, it involves detailed and highly contested expert reports and testimony to decide precisely when FDA approval might have occurred but for a particular development.[2] Given the inevitable complexities of developing a generic drug product (and especially a *first* generic drug product), there could be competing narratives as to why the first applicant would not have met the 30-month forfeiture deadline even absent FDA's change or review of its requirements for approval. Litigating that dispute before FDA will be costly and will add significant uncertainty

---

[2] *E.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922, 1025-28 (D. Kan. 2021); *In re Zetia (Ezetimibe) Antitrust Litig.*, 655 F. Supp. 3d 406, 430-34 (E.D. Va. 2023); *In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 286-90 (D. Mass. 2014).

to the first applicant's ability to obtain exclusivity—and, as a result, significantly diminish generic drug companies' incentives to challenge brand drug companies' patents in the first instance.

These problems will be the most severe in the context of the most complex drugs for which generics are most needed. Take, for instance, the context of complex generics that include a drug in a delivery system such as an asthma inhaler. Or even this case, in which the locally acting nature of the drug posed particular challenges for evaluating bioequivalence.[3] Tentative approval in that context is incredibly complex and is rarely completed within 30 months. Those delays are caused in part by FDA inevitably (and, again, appropriately) changing the requirements for approval as FDA understands the product and the relevant science. But delays can also be caused, in part, by obstacles that the generics face in developing these highly complex products.

A but-for standard dramatically increases uncertainty about the viability of an exclusivity award and makes it far less likely that a generic drug company would seek to market a complex generic in the first instance and incur the expense not only of development, but also of costly patent litigation. Ex ante, the generic drug

---

[3] *See* Tsakiridou et al., *Challenges in the Investigation of Therapeutic Equivalence of Locally Applied/Locally Acting Drugs in the Gastrointestinal Tract: The Rifaximin Case*, Pharmaceutics (2025), available at https://pubmed.ncbi.nlm.nih.gov/40733048/.

company knows that tentative approval is likely to take more than 30 months given the inevitability of significant changes in the requirements for approval in the context of a first, complex generic drug. The generic drug company therefore knows it will likely have to show that the delay was "caused by a change in or a review of the requirements for approval." 21 U.S.C. § 355(j)(5)(D)(i)(IV). Under FDA's settled rule, a generic drug manufacturer can be relatively confident that, if FDA moving the goalposts sufficed on its own to prevent approval within 30 months, the first applicant will retain its eligibility for exclusivity. Under a but-for standard, however, it could be far more difficult to predict the outcome as to exclusivity, even where, in reality, FDA's change in review criteria *was* the but-for cause of the failure to obtain approval within 30 months. That result risks fewer and less timely generic challenges to brand patents in the context of complex drugs—and significantly delayed access for patients.

### B. A But-For Standard Risks Serious Administrability Concerns.

As discussed, identifying what would have happened in a but-for world in which FDA made no changes in or reviews of the requirements for approval could be extremely difficult. In district court litigation, but-for causation issues in other contexts can be the subject of multiple expert reports, *Daubert* motions, and complex jury trials. *See* p. 7 n.2, *supra*. Adjudicating similarly complex disputes—with similarly high stakes—before FDA could impose a significant burden on generic

drug companies and the agency itself. Indeed, the supplemental briefs the parties submitted attempting to apply a but-for causation standard highlight just how fact-intensive and uncertain these questions can be. *See, e.g.*, Teva Supplemental Br. 3-11.

The panel wrote that it had "no basis to doubt the FDA's assertions that a but-for rule will present additional complexities," but brushed this off because the panel was "confident the agency's experience with such applications will enable it to devise an administrable framework." Op. 23. But the problem is not the lack of a framework. The problem is that but-for causation *itself* is inherently complex and does not lend itself to adjudication within FDA practice. In many cases, it will be difficult if not impossible for FDA to figure out exactly what would have happened and when absent a change in the requirements for approval—it is nothing like the panel's examples of deciding whether a solo home run was a but-for cause of a victory in a 3-0 baseball game.

## II. The Panel Improperly Gave No Weight To FDA Expertise.

This is exactly the type of case in which, under *Loper Bright*, the agency's "longstanding practice" is a particularly valuable "interpretive aid." 603 U.S. at 386. While *Loper Bright* rejected deference to the agency, it emphasized that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's

meaning." 603 U.S. at 394. An executive interpretation that "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time" is particularly important because "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Id.* at 386 (cleaned up).

Here, the statute's vague reference to causation does not automatically require but-for causation. *See, e.g.*, *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004). And FDA has consistently interpreted the statute to *not* require but-for causation. FDA's causation standard now forms a settled expectation on which generic drug companies routinely base their decisions. As discussed above, upending that settled expectation would create significant disruption to the generic drug industry and create administrability problems.

The panel dismissed all of this on the theory that the meaning of "caused by" does not turn on "the agency's technical subject matter expertise." Op. 22 (cleaned up). That is wrong: As the panel recognized, the meaning of a phrase like "caused by" turns entirely on what Congress would have intended given the relevant context, and FDA is in by far the best position to understand what meaning of "caused by" is contextually appropriate.

## CONCLUSION

AAM respectfully urges this Court to grant rehearing en banc.

Dated: October 16, 2026

Respectfully submitted,

*<u>/s/ David Zimmer</u>*
David Zimmer
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Ave., 6th Floor
Boston, MA 02111
(617) 676-9421

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief contains 2,587 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font for text and footnotes.

Dated: October 16, 2026 *_/s/ David Zimmer_*
David Zimmer

## CERTIFICATE OF SERVICE

I, David Zimmer, certify that, on this date, I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

Dated: October 16, 2026 *_/s/ David Zimmer_*
David Zimmer